# 15-4077

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

ESTATE OF ERNEST GOTTDIENER, ESTATE OF JUDIT GOTTDIENER, ERVIN TAUSKY, SUAN INVESTMENTS,

*Plaintiffs - Appellants,*

FREDERICK MARTIN OBERLANDER,

*Movant- Appellant,*

RICHARD E. LERNER,

*Appellant*

J. KRISS, J. KRISS, FOR BAYROCK MERRIMAC LLC, MICHAEL EJEKAM, ALONE, MICHAEL EJEKAM, FOR BAYROCK MERRIMAC LLC, BAYROCK GROUP, LLC, BAYROCK WHITESTONE, LLC, BAYROCK CAMELBACK, LLC,

*Plaintiffs,*

v.

BAYROCK GROUP, LLC, TEVFIK ARIF, JULIUS SCHWARZ, BRIAN HALBERG, SALVATORE LAURIA, ALEX SALOMON, JERRY WEINRICH, NIXON PEABODY, LLP, ROBERTS & HOLLAND, LLP, MARTIN DOMB, CRAIG H. BROWN, BAYROCK WHITESTONE, LLC, DUVAL & STACHENFELD, LLP, BRUCE STACHENFELD, MORGAN LEWIS & BOCKIUS, LLP, DAVID GRANIN, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, ADAM B. GILBERT, BAYROCK SPRING STREET, LLC, BAYROCK MERRIMAC, LLC, SATTERLEE STEPHENS BURKE & BURKE, LLP, BEYS STEIN & MOBARGHA, LLP, ELLIOT PISEM, MICHAEL SAMUELS, MEL DOGAN, JOHN DOES 1-100, BAYROCK CAMELBACK, LLC, BAYROCK GROUP, INC., TAMIR SAPIR, ALEX SAPIR, SAPIR DOES 1 THROUGH 100, WALTER SAURACK, KELLY ANNE MOORE, NADER MOBARGHA, MICHAEL PETROS BEYS, LENDER INVESTOR JOHN DOES 1-100, FELIX SATER, SALOMON & CO. PC, AKERMAN SENTERFITT, LLP,

*Defendants - Appellees,*

TODD KAMINSKY, CIM GROUP, DONALD TRUMP, IVANKA TRUMP, JOHN DOES 1-100,

*Defendants.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO. 13-CV-3905

# APPENDIX

Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
Counsel for plaintiffs-appellants
28 Sycamore Lane (Box 1870)
Montauk, New York 11954
(212) 826-0357
fred55@aol.com

Robert S. Wolf
Moses & Singer, LLP
Counsel for defendant-appellee
405 Lexington Avenue
New York, New York 10174
(212) 554-7825
rwolf@mosessinger.com

# TABLE OF CONTENTS

1. SDNY CM_ECF DOCKET FOR 13-CV-3905  A1

2. NOTICE OF REMOVAL  A32

3. AFFIRMATION IN OPPOSITION TO MOTION TO REMAND  A58

4. ORDER DENYING REMAND  A158

5. LETTER REQUESTING EMERGENCY RELIEF RE TAMPERING  A166

6. ORDER DIRECTING SATER TO RESPOND TO TAMPERING  A168

7. ORDER REFUSING COURT INVOLVEMENT IN TAMPERING  A169

8. ORDER DENYING MOTION TO RECONIDER SAID REFUSAL  A170

9. ORDER VACATING VOLUNTARY DISMISSAL AND DISMISSING WITH PREJUDICE  A173

CLOSED,APPEAL,CASREF,ECF,RELATED

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:13-cv-03905-LGS-FM

Kriss et al v. Bayrock Group LLC et al
Assigned to: Judge Lorna G. Schofield
Referred to: Magistrate Judge Frank Maas
Related Case: 1:10-cv-03959-LGS-FM
Case in other court: State Court-Supreme, 651715-13
Cause: 28:1442nr Notice of Removal

Date Filed: 06/07/2013
Date Terminated: 07/13/2015
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: U.S. Government Defendant

Plaintiff

J. Kriss
alone
TERMINATED: 06/23/2015

represented by **Frederick Martin Oberlander**
The Law Offices of Frederick M.
Oberlander, PC
P.O. Box 1870
28 Sycamore Lane
Montauk, NY 11954
(212)-826-0357
Fax: (212)-202-7624
Email: fred55@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
Wilson Elser Moskowitz Edelman &
Dicker LLP
150 East 42nd Street
New York, NY 10017
(212)-490-3000
Fax: (212)-490-3038
Email: richardlerner@msn.com
(Inactive)
*ATTORNEY TO BE NOTICED*

Plaintiff

J. Kriss
*for Bayrock Merrimac LLC*
TERMINATED: 06/23/2015

represented by **Frederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**A1**

Plaintiff

**Michael Ejekam**
alone
TERMINATED: 06/23/2015

represented by   Fr**ederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*


Plaintiff

**Michael Ejekam**
*for Bayrock Merrimac LLC*
TERMINATED: 06/23/2015

represented by   Fr**ederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*


Plaintiff

Bayr**ock Group LLC**

represented by   Fr**ederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*


Plaintiff

Bayr**ock Spring Street LLC**

represented by   Fr**ederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*


Plaintiff

Bayr**ock Whitestone LLC**

represented by   Fr**ederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

Case 15-4077, Document 72, 06/17/2016, 6796774, Page5 of 176

Plaintiff

**Bayrock Camelback LLC**                    represented by **Frederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

Plaintiff

**E/O Ernest Gottdiener**                    represented by **Frederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

Plaintiff

**E/O Judit Gottdiener**                     represented by **Frederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

Plaintiff

**Ervin Tausky**                             represented by **Frederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

Plaintiff

**Suan Investments**                         represented by **Frederick Martin Oberlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**A3**

V.

<u>Appellant</u>

**Richard E Lerner**　　　　　　represented by　**Richard E Lerner**
Law Office of Richard E. Lerner, PC
122 West 27th Street, 10th Fl.
NY, NY 10001
917-584-4864
Email: richardlerner@msn.com
PRO SE

V.

<u>Movant</u>

**Frederick Oberlander**　　　　　represented by　**Simon Joel Kasha Miller**
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174
212-885-5000
Fax: 212-885-5001
Email: sjkmiller@blankrome.com
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Frederick Oberlander**　　　　　represented by　**Simon Joel Kasha Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Bayrock Group LLC**

<u>Defendant</u>

**Tevfik Arif**

<u>Defendant</u>

**Julius Schwarz**

<u>Defendant</u>

**Felix Satter**
TERMINATED: 06/21/2013

<u>Defendant</u>

**Brian Halberg**

Defendant

Salvator **e Lauria**

Defendant

**Alex Salomon**

Defendant

**Jerry W**einrich

Defendant

**Salomon & Co. PC**

Defendant

**Akerman Senterfitt LLP**

Defendant

**Martin Domb**

Defendant

**Craig Br**own

Defendant

**Duval & Stachenfeld LLP**

Defendant

**Bruce Stachenfeld**

Defendant

**David Granin**

Defendant

**Nixon Peabody LLP**

Defendant

**Adam Gilbert**

Defendant

**Roberts & Holland LLP**

Defendant

**Elliot Pisem**

Defendant

**Michael Samuel**

Defendant

**Mel Dogan**

**A5**

Defendant

**Bayrock Spring Street LLC**

Defendant

**John Does 1-100**

Defendant

**Bayrock Whitestone LLC**

Defendant

**Bayrock Camelback LLC**

Defendant

**Bayrock Merrimac LLC**

Defendant

**Bayrock Group Inc.**

Defendant

**Tamir Sapir**

Defendant

**Alex Sapir**

Defendant

**Sapir Does 1-100**

Defendant

**Walter Saurack**

Defendant

**Satterlee Stephens Burke & Burke LLP**

Defendant

**Kelly Moore**

Defendant

**Morgan Lewis & Bockius LLP**

Defendant

**Nader Mobargha**

Defendant

**Michael Beys**

Defendant

**A6**

**Beys Stein & Mobargha LLP**

Defendant

**Todd Kaminsky**
*TERMINATED: 06/25/2013*

represented by **Jessica Jean Hu**
United States Attorney's Office
Southern District Of New York
86 Chambers Street, Third Floor
New York, NY 10007
212-637-2726
Fax: (212) 637-2717
Email: Jessica.Hu@usdoj.gov
*ATTORNEY TO BE NOTICED*

Defendant

**CIM Group**
*TERMINATED: 07/16/2013*

Defendant

**IStar Financial**

Defendant

**Lender Investor Does 1-100**

Defendant

**Donald Trump**
*TERMINATED: 07/16/2013*

Defendant

**Ivanka Trump**
*TERMINATED: 07/16/2013*

Defendant

**Trump Does 1-100**
*TERMINATED: 07/16/2013*

Defendant

**National Union Fire Insurance Co. of
Pittsburgh, PA**

Defendant

**Felix Sater**

represented by **Robert S. Wolf**
Moses & Singer LLP
405 Lexington Avenue
New York, NY 10174-1299
(212) 554-7800
Fax: (212) 554-7700
Email: rwolf@mosessinger.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A7**

**Joshua Donovan Liston**
Beys, Stein & Mobargha LLP
(LEXINGTON)
405 Lexington Avenue, 7th Floor
New York, NY 10174
(212) 387-8200
Fax: (212) 387-8229
Email: jliston@blmblaw.com
*ATTORNEY TO BE NOTICED*

**Michael Petros Beys**
Beys, Stein & Mobargha, LLP
405 Lexington Avenue
New York, NY 10174
(646)-755-3605
Fax: (646)-755-3599
Email: mbeys@blmblaw.com
*ATTORNEY TO BE NOTICED*

**Nader Mobargha**
Beys, Stein & Mobargha LLP
(LEXINGTON)
405 Lexington Avenue, 7th Floor
New York, NY 10174
(212) 387-8200
Fax: (212) 387-8229
Email: nmobargha@bsmlegal.net
*ATTORNEY TO BE NOTICED*

**Robert Barnes McFarlane**
Moses & Singer LLP
405 Lexington Avenue
New York, NY 10174-1299
(212)-554-7869
Fax: (917)-206-4369
Email: rmcfarlane@mosessinger.com
*ATTORNEY TO BE NOTICED*

<u>Inter **ested Party**</u>

Fr **ederick Oberlander**                    represented by  **Simon Joel Kasha Miller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/07/2013 | 1 R | NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 651715-13..Document filed by Todd Kaminsky.(jom) (Entered: |

**A8**

| | | 06/11/2013) |
|---|---|---|
| 06/07/2013 | | CASE REFERRED TO Judge Lorna G. Schofield as possibly related to 10-cv-3959. (jom) (Entered: 06/11/2013) |
| 06/07/2013 | | Case Designated ECF. (jom) (Entered: 06/11/2013) |
| 06/14/2013 | 2 | CERTIFICATE OF SERVICE of Notice of Removal served on All Parties Named in Summons on June 7, 2013. Service was made by Fed Ex. Document filed by Todd Kaminsky. (Hu, Jessica) (Entered: 06/14/2013) |
| 06/19/2013 | | CASE ACCEPTED AS RELATED. Create association to 1:10-cv-03959-LGS. Notice of Assignment to follow. (pgu) (Entered: 06/19/2013) |
| 06/19/2013 | 3 | NOTICE OF CASE ASSIGNMENT to Judge Lorna G. Schofield. Judge Unassigned is no longer assigned to the case. (pgu) (Entered: 06/19/2013) |
| 06/19/2013 | | Magistrate Judge Frank Maas is so designated. (pgu) (Entered: 06/19/2013) |
| 06/21/2013 | 8 | NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 651715-13. Document filed by Felix Sater. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(tro) (Entered: 06/25/2013) |
| 06/24/2013 | 4 R | LETTER addressed to Judge Lorna G. Schofield from Nader Mobargha dated 6/14/2013 re: We represent defendant Felix Sater in the above-referenced actions and write in response to the government's letter of this date seeking an order (1) dismissing Assistant U.S. Attorney Todd Kaminsky as a defendant; and (2) remanding the case, pursuant to 28 U.S.C. 1447(c), to the New York Supreme Court Although we do not oppose Mr. Kaminsky's dismissal as a defendant, we believe that Mr. Sater also has a valid basis to remove the action to federal court. Accordingly, we would request an opportunity to submit removal papers on his behalf and oppose the application to remand, by no later than June 21, 2013. Document filed by Felix Satter.(rsh) (Entered: 06/24/2013) |
| 06/24/2013 | 5 | LETTER addressed to Judge Lorna G. Schofield from Jessica Jean Gu dated 6/14/2013 re: This Office represents Assistant United States Attorney Todd Kaminsky (AUSA Kaminsky) of the Eastern District of New York who was named as a defendant in a Summons with Notice that was filed in the Supreme Court of the State of New York, County of New York on May 10, 2013. On June 7, 2013, this Office removed the case to this Court where it was assigned docket number 13 Civ. 3905. Although the case has yet to be assigned, it has been referred to Your Honor as potentially related to Kriss, et al. v. Bayrock Group LLC, et al., 10 Civ. 3959 (LGS). This Office writes to request that the Court endorse the attached proposed order which: (1) dismisses without prejudice AUSAKaminsky as a defendant to the instant action; and (2) pursuant to 28 U.S.C. 1447(c), remands the case to the Supreme Court of the State of New York, County of New York. Document filed by Todd Kaminsky. (rsh) (Entered: 06/24/2013) |
| 06/24/2013 | 6 | LETTER addressed to Judge Lorna G. Schofield from Nader Mobargha dated 6/21/2013 re: Counsel for defendant Felix Sater respectfully submit that this Court enter an order dismissing AUSA Kaminskly from the case. Any further consideration of remand is now moot, absent a formal motion addressing Sater's Notice of Removal. Document filed by Felix Satter.(rsh) (Entered: |

**A9**

| | | 06/24/2013) |
|---|---|---|
| 06/24/2013 | 7 | LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander dated 6/17/2013 re: Counsel for plaintiffs request that the Court sign our attached proposed order confirming the action has remained in state court, where since 2:30 p.m. June 5, 2013 Mr. Kaminsky has with finality ceased to be defendant by our voluntary dismissal of him as of right. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments.(rsh) (Entered: 06/24/2013) |
| 06/25/2013 | 9 | ORDER: that this action is dismissed without prejudice solely as against Defendant Kaminsky. This dismissal shall be without effect on Plaintiffs claims against any other defendant. SO ORDERED.Todd Kaminsky terminated. (Signed by Judge Lorna G. Schofield on 6/25/2013) (rsh) (Entered: 06/25/2013) |
| 07/02/2013 | 10 | AFFIDAVIT OF SERVICE served on Plaintiffs and co-Defendants on 6/24/13. Service was made by MAIL. Document filed by Felix Sater. (Mobargha, Nader) (Entered: 07/02/2013) |
| 07/02/2013 | 11 | ORDER: This case has been assigned to me for all purposes. It is hereby ORDERED that counsel for all parties appear for an initial pretrial conference with the Court at the time and place listed below. All pretrial conferences must be attended by the attorney who will serve as principal trial counsel. Any open legal issues can be addressed at the conference. DATE AND PLACE OF CONFERENCE: July 16, 2013, at 10:30 a.m., before Judge Lorna G. Schofield in Courtroom 1106 of the United States District Court for the Southern District of New York, Thurgood Marshall U.S. Courthouse at 40 Foley Square, New York, New York. SO ORDERED. (Signed by Judge Lorna G. Schofield on 7/2/2013) (rsh) (Entered: 07/03/2013) |
| 07/08/2013 | 12 | NOTICE OF APPEARANCE by Joshua Donovan Liston on behalf of Felix Sater. (Liston, Joshua) (Entered: 07/08/2013) |
| 07/08/2013 | 13 | FIRST MOTION for Reconsideration re; 1 R Notice of Removal *In Respect of ECF No. 9.*, FIRST MOTION to Remand to State Court *In Respect of ECF No. 1.* Document filed by E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 07/08/2013) |
| 07/09/2013 | 14 | AFFIDAVIT OF SERVICE of Order ECF 45 and Individual Rules served on Five (5) entity defendants through counsel Walter Saurack on July 9, 2013. Service was made by MAIL and electronic. Document filed by E/O Ernest Gottdiener, E/O Judit Gottdiener, J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 07/09/2013) |
| 07/09/2013 | 15 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Joshua D. Liston dated 7/8/2013 re: We respectfully request that the July 16, 2013 |

**A10**

Case 15-4077, Document 72, 06/01/2016, 1796774, Page13 of 176

| | | conference be adjourned and that the parties be relieved of submitting the Proposed Case Management Plan in advance of that date. ENDORSEMENT: With respect to Kriss et al. v. Bayrock Group LLC, et al., No. 13-cv-3905, it is hereby ORDERED that the parties need not submit a Proposed Case Management Plan and Scheduling Order prior to the scheduled initial pretrial conference, but should submit a joint status letter as previously ordered. It is further ORDERED that the initial pretrial conference will be held as scheduled, on July 16, 2013, at 10:30 a.m. Counsel for all parties who have been served are directed to enter an appearance on ECF prior to the conference. (Signed by Judge Lorna G. Schofield on 7/9/2013) (lmb) (Entered: 07/09/2013) |
|---|---|---|
| 07/09/2013 | 16 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard Lerner dated 7/8/2013 re: Request for pre-motion conference in re motion to remand or to sever. ENDORSEMENT: A pre-motion conference is not required for a motion to remand (see Individual Rule III.A.3). Plaintiffs' may raise the contemplated motion to remand at the initial pretrial conference scheduled for July 16, 2013. The parties are directed to review and comply with Individual Rule III.A.3, which requires the parties to exchange letters prior to the filing of a motion to remand. In addition, counsel for Plaintiffs are advised that letters to Chambers shall not exceed two pages in length, and pre-motion letters to Chambers shall not exceed three pages in length, including any attachments, per the Court's individual rules. (Signed by Judge Lorna G. Schofield on 7/9/2013) (lmb) (Entered: 07/09/2013) |
| 07/10/2013 | 17 | AFFIDAVIT OF SERVICE of Order dated July 2, 2013 (Dkt. 11) served on All Parties on 7/3/13. Service was made by MAIL. Document filed by Felix Sater. (Liston, Joshua) (Entered: 07/10/2013) |
| 07/10/2013 | 18 | NOTICE OF APPEARANCE by Frederick Martin Oberlander on behalf of E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 07/10/2013) |
| 07/16/2013 | | Minute Entry for proceedings held before Judge Lorna G. Schofield: Initial Pretrial Conference held on 7/16/2013. (See Order) (Court Reporter Rose Prater) (jcs) (Entered: 07/16/2013) |
| 07/16/2013 | 19 R | ORDER denying 13 Motion for Reconsideration ; denying 13 Motion to Remand to State Court. It is hereby, ORDERED that Plaintiffs' Motion for Reconsideration or for Remand (Dkt. No. 13) IS DENIED as moot as further set forth in this order. ORDERED that Defendants Donald Trump, Ivanka Trump, Trump Does 1-100 and CIM Group are DISMISSED pursuant to the Notice of Partial Discontinuance filed by Plaintiffs in state court on May 31, 2013. (Dkt. No. 8, Ex. B). ORDERED that Plaintiffs' contemplated motion for remand shall be filed no later than July 30, 2013. Defendants' response shall be filed no later than August 13, 2013. Plaintiffs' reply, if any, shall be filed no later than August 20, 2013. The Clerk is directed to close the motion at Docket Entry 13. The Clerk is also directed to remove Defendants Donald Trump, Ivanka Trump, Trump Does 1-100 and CIM Group as parties in this matter. (Signed by Judge Lorna G. Schofield on 7/16/2013) (lmb) (Entered: 07/16/2013) |

**A11**

| | | |
|---|---|---|
| 07/16/2013 | | Set/Reset Deadlines: Motions due by 7/30/2013. Responses due by 8/13/2013. Replies due by 8/20/2013. (lmb) (Entered: 07/16/2013) |
| 07/16/2013 | 20 | LETTER addressed to Judge Lorna G. Schofield from Richard E. Lerner dated 7/15/2013 re: Counsel submit this on behalf of Plaintiffs and Defendant Sater pursuant to this Court's 7/2/2013 and 7/8/2013 orders ECF Nos. 8 and 9. Document filed by Bayrock Camelback LLC, Bayrock Spring Street LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), Felix Sater, Suan Investments.(tro) (Entered: 07/17/2013) |
| 07/22/2013 | 21 R | INTERIM MOTION to Remand *In Respect of ECF No. 9*. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone).(Oberlander, Frederick) (Entered: 07/22/2013) |
| 07/24/2013 | 22 | TRANSCRIPT of Proceedings re: CONFERENCE held on 7/16/2013 before Judge Lorna G. Schofield. Court Reporter/Transcriber: Rose Prater, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/19/2013. Redacted Transcript Deadline set for 8/29/2013. Release of Transcript Restriction set for 10/25/2013.(McGuirk, Kelly) (Entered: 07/24/2013) |
| 07/24/2013 | 23 R | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 7/16/2013 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 07/24/2013) |
| 07/30/2013 | 24 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard E. Lerner dated 7/29/13 re: Counsel writes to request a two day extension of time to file their motion for remand. ENDORSEMENT: Application granted. Plaintiffs' motion for remand shall be filed no later than August 1, 2013. Any response is due August 15, 2013, and any reply is due August 22, 2013. ( Motions due by 8/1/2013., Responses due by 8/15/2013, Replies due by 8/22/2013.) (Signed by Judge Lorna G. Schofield on 7/30/2013) (mro) (Entered: 07/30/2013) |
| 08/02/2013 | 25 R | FINAL MOTION to Remand to State Court. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 08/02/2013) |
| 08/14/2013 | 26 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Joshua D. Liston dated 8/13/2013 re: We respectfully request that the Court modify the |

Case 15-4077, Document 72, 06/17/2016, 1796774, Page15 of 176

| | | |
|---|---|---|
| | | briefing schedule so that any opposition to the motion will be filed no later than August 16, 2013, and any reply will be due August 23, 2013. ENDORSEMENT: Application granted. Any opposition to the Motion for Remand shall be filed by August 16, 2013. Any reply shall be filed by August 23, 2013., ( Responses due by 8/16/2013., Replies due by 8/23/2013.) (Signed by Judge Lorna G. Schofield on 8/14/2013) (lmb) (Entered: 08/15/2013) |
| 08/16/2013 | 27 🆁 | MEMORANDUM OF LAW in Opposition re: 25 🆁 FINAL MOTION to Remand to State Court.. Document filed by Felix Sater. (Liston, Joshua) (Entered: 08/16/2013) |
| 08/19/2013 | 28 | FIRST MOTION Request for Judicial Notice, FRE 201 re: 27 🆁 Memorandum of Law in Opposition to Motion, 25 🆁 FINAL MOTION to Remand to State Court.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Attachments: # 1 Exhibit Document 100 in U.S. v. Sater, 98-CR-1101 EDNY (Glasser, J.))(Oberlander, Frederick) (Entered: 08/19/2013) |
| 08/20/2013 | 29 | LETTER addressed to Judge Lorna G. Schofield from Joshua D. Liston dated 8/19/2013 re: We represent defendant Felix Sater in the above-referenced action and write in response to Plaintiffs Request for Judicial Notice, filed this morning on ECF (Dkt. No. 28), which is a response to my e-mailed letter of August 16, 2013, asking for permission to file two documents either in redacted form or wholly under seal. Document filed by Felix Sater.(rdz) (Entered: 08/21/2013) |
| 08/20/2013 | 30 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Joshua D. Liston dated 8/16/2013 re: Defendant is granted leave to file Exhibit 1 in redacted form and Exhibit 5 as it appears in the public record. Plaintiff's Request for Judicial Notice (Dkt. No. 28) is DENIED as moot. The Clerk is directed to close the motion at docket number 28. Motion terminated. (Signed by Judge Lorna G. Schofield on 8/20/2013) (rdz) Modified on 8/23/2013 (rdz). (Entered: 08/21/2013) |
| 08/20/2013 | 31 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander dated 8/19/2013 re: Accordingly, we most respectfully reserve the right to move to unseal anything that has been sealed in response to counsel's request, and disclaim any waiver or implied consent to any such sealing. ENDORSEMENT: Plaintiff is granted leave to submit a reply in support of the Motion for Remand no later than August 27, 2013. (Signed by Judge Lorna G. Schofield on 8/20/2013) (rdz) (Entered: 08/21/2013) |
| 08/20/2013 | | Set/Reset Deadlines: Replies due by 8/27/2013. (rdz) (Entered: 08/21/2013) |
| 08/21/2013 | 32 | AFFIRMATION of Joshua D. Liston in Opposition re: 25 🆁 FINAL MOTION to Remand to State Court.. Document filed by Felix Sater. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15)(Liston, Joshua) (Entered: 08/21/2013) |

**A13**

| 08/28/2013 | 33 **R** | FIRST REPLY MEMORANDUM OF LAW in Support re: 25 **R** FINAL MOTION to Remand to State Court.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 08/28/2013) |
|---|---|---|
| 08/30/2013 | 34 | LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard E. Lerner dated 8/28/2013 re: Pursuant to this Court's Rules of Individual Practice III(B)7, as all briefs have now been ECF filed, thus automatically served, we request oral argument. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(lmb) (Entered: 08/30/2013) |
| 08/30/2013 | 35 | AMENDED REPLY MEMORANDUM OF LAW in Support re: 25 **R** FINAL MOTION to Remand to State Court. *This is a CORRECTED filing to remedy errors in PDF creation re initial upload including inability to attach all exhibits because of file sizes.*. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Attachments: # 1 Exhibit Felix Sater's October 23, 2009 Sentencing Transcript, # 2 Exhibit Felix Sater's December 10, 1998 Cooperation Agreement, # 3 Exhibit USAO, FBI, NYPD Joint March 2, 2000 Press Release Publicizing Felix Sater's RICO Conviction, # 4 Exhibit Material from US v Coppa Confirming Public Disclosure of Felix Sater as Cooperator Over a Decade Ago, # 5 Exhibit Transcript of Hearing Before the Hon. I. Leo Glasser in which the court states Felix Sater was never under any court order to hide his cooperation, # 6 Exhibit Material From US v Gushlak wherein Government Withheld 5K1 Because Gushlak fraudulently concealed his conviction as Felix Sater did, # 7 Exhibit Deposition March 9 2010 of Felix Sater in which he states he was advised not to answer whether he had been convicted of crime besides First Degree Assault on grounds that answering (and presumably telling the truth about his RICO conviction) might incriminate him)(Oberlander, Frederick) (Entered: 08/30/2013) |
| 09/02/2013 | 36 | FIRST MOTION for Discovery *** *THIS IS REQUEST TO TAKE JUDICIAL NOTICE THERE IS NO PACER CODE CORRESPONDING TO THAT* ***. Document filed by Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone). (Attachments: # 1 Exhibit Transcript of sentencing of Felix Sater, October 23, 2009, # 2 Exhibit Cooperation agreement, 1998, of Felix Sater., # 3 Exhibit Press release of March 2, 2000 publicizing conviction of Felix Sater, # 4 Exhibit Material from US v Coppa Confirming Public Disclosure of Felix Sater as Cooperator Over a Decade |

**A14**

| | | |
|---|---|---|
| | | Ago, # 5 Exhibit July 20, 2010 transcript of hearing in 98-cr-1101, # 6 Exhibit Material From US v Gushlak wherein Government Withheld 5K1 Because Gushlak fraudulently concealed his conviction as Felix Sater did, # 7 Exhibit Deposition of Felix Sater March 9, 2010 in Bernstein v Bayrock Group LLC Westchester Supreme Court, # 8 Exhibit Material from US v Lauria, 98-cr-1102., # 9 Exhibit Material from US v Felix Sater 98-CR-1101 as to Plea and Sentencing, # 10 Exhibit Order of Judge Glasser March 15, 2010 confirming Sater's Oct 23, 2009 sentencing was held in open court where his name was read aloud., # 11 Exhibit Press Coverage on and after March 2, 2012,, # 12 Exhibit Entire docket of 98-CR-1101.)(Oberlander, Frederick) (Entered: 09/02/2013) |
| 09/04/2013 | 37 | FIRST LETTER addressed to Judge Lorna G. Schofield from Oberlander and Lerner dated September 4, 2013 re: Compliance with Individual Rules re filing a document non-publicly. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Oberlander, Frederick) (Entered: 09/04/2013) |
| 09/09/2013 | 38 | LETTER addressed to Judge Lorna G. Schofield from Oberlander and Lerner dated September 9, 2013 re: Enlargement of time to file and serve complaint; request for pre-motion conference re FRCP 21; request to preserve the status quo ante while the court is deciding jurisdiction.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 09/09/2013) |
| 10/01/2013 | 39 R | STANDING ORDER M10-468: Stay of Certain Civil Cases Pending the Restoration of Department of Justice Funding. (Signed by Judge Loretta A. Preska on 10/1/2013) ***Original Standing Order docketed in case no. 1:13-mc-00334-LAP, document no. 2 on 10/1/2013.***(tro) (Entered: 10/01/2013) |
| 02/25/2014 | 40 R | OPINION AND ORDER re: 21 R INTERIM MOTION to Remand *In Respect of ECF No. 9* filed by Bayrock Group LLC, E/O Judit Gottdiener, J. Kriss, Bayrock Whitestone LLC, E/O Ernest Gottdiener, Bayrock Spring Street LLC, Bayrock Camelback LLC, Michael Ejekam, 25 R FINAL MOTION to Remand to State Court filed by Ervin Tausky, Bayrock Group LLC, E/O Judit Gottdiener, J. Kriss, Suan Investments, Bayrock Whitestone LLC, E/O Ernest Gottdiener, Bayrock Spring Street LLC, Bayrock Camelback LLC, Michael Ejekam. For the reasons set forth above, Plaintiffs motion to remand is DENIED. The Clerk of Court is directed to close the motions at docket numbers 21 and 25. Plaintiffs are ordered to file their complaint in this case by March 26, 2014. (Signed by Judge Lorna G. Schofield on 2/24/2014) (cd) (Entered: 02/25/2014) |
| 03/26/2014 | 41 | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard E. Lerner dated 3/25/2014 re: The plaintiffs request a 10-day enlargement of time to file the complaint, pursuant to FRCP 6. Good |

| | | |
|---|---|---|
| | | cause is shown. ENDORSEMENT: Application granted. Plaintiffs shall file the complaint no later than April 7, 2014. No further extensions will be granted absent extraordinary circumstances. (Signed by Judge Lorna G. Schofield on 3/26/2014) (ft) (Entered: 03/26/2014) |
| 03/26/2014 | | Set/Reset Deadlines: Amended Pleadings due by 4/7/2014. (ft) (Entered: 03/26/2014) |
| 04/07/2014 | 42 R | EMERGENCY LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard E. Lerner dated 4/7/14 re: Addendum to Emergency Ex Parte Request to Stay or Enlarge and for Other Relief. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone). (Oberlander, Frederick) (Entered: 04/07/2014) |
| 04/08/2014 | 43 R | ORDER: WHEREAS, on April 8, 2014, the Court received an ex parte letter from Plaintiffs seeking emergency relief. It is hereby ORDERED that the deadline to file a complaint in this action is adjourned sine die, pending the Courts resolution of the issues raised in Plaintiffs ex parte letter. It is further ORDERED that Plaintiffs shall immediately serve a copy of the ex parte letter upon Defendants. Within five days of receipt, Defendants shall file a letter response addressing the issues raised in Plaintiffs letter. (Signed by Judge Lorna G. Schofield on 4/8/2014) (cd) (Entered: 04/08/2014) |
| 04/10/2014 | 44 | MEMO ENDORSEMENT on re: 42 R Letter, filed by Bayrock Group LLC, E/O Judit Gottdiener, J. Kriss, Bayrock Whitestone LLC, E/O Ernest Gottdiener, Bayrock Spring Street LLC, Bayrock Camelback LLC, Michael Ejekam. ENDORSEMENT: Because defense counsel needs to be able to discuss the substance of Plaintiffs' April 7, 2014, ex parte letter with their client in order to meaningfully respond, Plaintiffs' application to designate the ex parte letter "attorneys eyes only" is DENIED. Defense counsel may discuss and show the letter to their client, but shall not provide a copy of the letter. In accordance with the Court's April 8, 2014, order, Plaintiffs shall serve a copy of the April 7 letter upon Defendants immediately, or may serve and file a copy of the Complaint as previously ordered. Within five days of receipt, Defendants shall file a letter response addressing the issues raised in Plaintiff's letter. (Signed by Judge Lorna G. Schofield on 4/10/2014) (ajs) Modified on 4/11/2014 (ajs). (Entered: 04/10/2014) |
| 04/10/2014 | 45 R | STATUS REPORT. AFFIRM*ATION OF SERVICE OF* Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone).(Oberlander, Frederick) (Entered: 04/10/2014) |
| 04/17/2014 | 46 R | LETTER addressed to Judge Lorna G. Schofield from Nader Mobargha dated 4/14/2014 re: On behalf of Defendants Felix Sater and Salvatore Lauria, we respectfully submit this letter in response to your order, dated April 8, 2014, directing us to "address[] the issues raised in Plaintiffs' [April 7, 2014] ex-parte |

**A16**

| | | |
|---|---|---|
| | | letter.". Document filed by Salvatore Lauria, Felix Sater.(kgo) (Entered: 04/17/2014) |
| 04/17/2014 | 47 | LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander dated 4/14/2014 re: We have received opposing counsels response to our request for emergency relief. Unfortunately, we are now shutting down for religious observance and so will not be able to respond in more detail until Thursday morning. Document filed by Plaintiffs.(kgo) (Entered: 04/17/2014) |
| 04/17/2014 | 48 R | LETTER addressed to Judge Lorna G. Schofield from Nader Mobargha dated 4/15/2014 re: On behalf of Defendants Felix Sater and Salvatore Lauria, we respectfully object to Plaintiffs' letter, dated April 14, 2014, in which they state that they intend to submit yet another unauthorized letter on a non-issue. Document filed by Salvatore Lauria, Felix Sater.(kgo) (Entered: 04/17/2014) |
| 04/17/2014 | 49 R | ORDER: WHEREAS, the Court has reviewed Plaintiffs' ex parte letter of April 7, 2014; Plaintiffs' publicly filed letter of April 7, 2014 (Dkt. No. 42); Defendants' letter of April 14, 2014; Plaintiffs letter of April 14, 2014; and Defendants' letter of April 15, 2014. It is hereby ORDERED that the allegations raised in Plaintiffs' ex parte letter shall be raised, if at all, with the appropriate authorities, and not with the Court. It is further ORDERED that Plaintiffs' request for a further stay sine die is DENIED. It is further ORDERED that Plaintiffs shall file a complaint in this action no later than April 23, 2014. Should Plaintiffs fail to do so, the Court will entertain any motions to dismiss for failure to prosecute, which Defendants may file without exchanging letters with Plaintiffs pursuant to the Court's Individual Rule III.A.3. It is further ORDERED that the parties shall file all future written communications with the Court via ECF. They are not to exceed two pages, and shall be double-spaced, in 12-point font, and have one-inch margins. Any communications submitted in violation of this paragraph will be rejected unread. (Signed by Judge Lorna G. Schofield on 4/17/2014) (kgo) (Entered: 04/17/2014) |
| 04/23/2014 | 51 | CLASS ACTION COMPLAINT against Akerman Senterfitt LLP, Tevfik Arif, Bayrock Camelback LLC, Bayrock Group Inc., Bayrock Group LLC, Bayrock Merrimac LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, Michael Beys, Beys Stein & Mobargha LLP, Craig Brown, John Does 1-100, Sapir Does 1-100, Mel Dogan, Martin Domb, Duval & Stachenfeld LLP, Adam Gilbert, David Granin, Brian Halberg, IStar Financial, Salvatore Lauria, Lender Investor Does 1-100, Nader Mobargha, Kelly Moore, Morgan Lewis & Bockius LLP, National Union Fire Insurance Co. of Pittsburgh, PA, Nixon Peabody LLP, Elliot Pisem, Roberts & Holland LLP, Alex Salomon, Salomon & Co. PC, Michael Samuel, Alex Sapir, Tamir Sapir, Felix Sater, Satterlee Stephens Burke & Burke LLP, Walter Saurack, Julius Schwarz, Bruce Stachenfeld, Jerry Weinrich. Document filed by Bayrock Whitestone LLC, J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), E/O Judit Gottdiener, Ervin Tausky, Bayrock Spring Street LLC, Michael Ejekam(alone), E/O Ernest Gottdiener, Suan Investments, Bayrock Camelback LLC, Michael Ejekam(for Bayrock Merrimac LLC), Bayrock Group LLC.(laq) (laq). (Entered: 04/25/2014) |

**A17**

| | | |
|---|---|---|
| 04/28/2014 | 52 | **Vacated as per Judges Order dated 6/6/2014, Doc. #75** ORDER: Initial Conference set for 6/10/2014 at 10:45 AM in Courtroom 1106 of the United States District Court for the Southern District of New York, Thurgood Marshall U.S. Courthouse at 40 Foley Square, New York, NY 10007 before Judge Lorna G. Schofield. (Signed by Judge Lorna G. Schofield on 4/28/2014) (kgo) Modified on 6/9/2014 (kgo). (Entered: 04/28/2014) |
| 05/01/2014 | 53 Ⓡ | MOTION for Reconsideration *of order 49*. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Attachments: # 1 Ⓡ Exhibit Exh. 1, # 2 Ⓡ Exhibit Exh. 2, # 3 Ⓡ Exhibit Exh. 3, # 4 Ⓡ Exhibit Exh. 4, # 5 Ⓡ Affidavit Exh. 5 Affidavit of Ejekam, # 6 Ⓡ Exhibit Exh. 6)(Oberlander, Frederick) (Entered: 05/01/2014) |
| 05/02/2014 | 54 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - MOTION to Amend/Correct *This is a correction to Exh. 3 of ECF 53. This is the correct document the previously uploaded document was in erro*r.. Document filed by Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Attachments: # 1 Exhibit Corrected Exh. 3 to ECF 53)(Oberlander, Frederick) Modified on 5/2/2014 (db). (Entered: 05/02/2014) |
| 05/02/2014 | 55 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - AFFIDAVIT of Michael Chudi Ejekam in Support re: 53 Ⓡ MOTION for Reconsideration of or*der 49*.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) Modified on 5/2/2014 (db). (Entered: 05/02/2014) |
| 05/02/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Frederick Martin Oberlander to RE-FILE Document 55 Affidavit in Support of Motion. ERROR(S): Incomplete Document (i.e., No Court Type, No Parties, No Case Number). (db)** (Entered: 05/02/2014) |
| 05/02/2014 | 56 Ⓡ | NOTICE OF APPEARANCE by Robert S. Wolf on behalf of Felix Sater. (Wolf, Robert) (Entered: 05/02/2014) |
| 05/02/2014 | 57 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR** - LETTER addressed to Judge Lorna G. Schofield from Robert S. Wolf dated May 2, 2014 re: newly filed class action complaint. Document filed by Bayrock Group LLC.(Wolf, Robert) Modified on 5/6/2014 (lb). (Entered: 05/02/2014) |
| 05/02/2014 | 58 | LETTER addressed to Judge Lorna G. Schofield from Robert S. Wolf dated May 2, 2014 re: newly filed class action complaint. Document filed by Felix |

**A18**

Sater.(Wolf, Robert) (Entered: 05/02/2014)

| 05/02/2014 | 59 | AMENDED MOTION for Reconsideration re; 49 🅁 Order,,,, 53 🅁 MOTION for Reconsideration *of order 49. THIS IS A CORRECTING FILING (UPLOAD) PURSUANT TO REJECTION BY ECF QUALITY ASSURANCE. THIS IS THE MOTION FOR RECONSIDERATION FILED MAY 1, 2014 WHICH HAD NON-SUBSTANTIVE ERRORS INCLUDING A PDF TRANSLATION OR CONVERSION ERROR IN EXHIBIT 5 DUE TO EUROPEAN/AMERICAN PAGING DIFFERENCES WHICH TRIGGERED A DEFECTIVE FILING NOTICE UPON INITIAL CORRECTION AND AN OMISSION FROM EXH. 3..* Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Ervin Tausky. (Attachments: # 1 Exhibit Exh. 1 Original Version of QueensPolitics.com May 13, 2014, # 2 Exhibit Exh. 2 Complaint in Lauria v. Kriss (N.Y.Sup.Ct. 152324/2014), # 3 Exhibit Exh. 3 Screen capture of jodykrissthief.com plus ICANN registration showing site owned by Felix Sater, # 4 Exhibit Exh. 4 Attachment to email sent Ejekam et al. April 5-7 2014 listing all sites caused to republish, # 5 Affidavit Exh. 5 Affidavit of Ejekam (motion requests leave to file same pursuant to Local Rule 6.3), # 6 Exhibit Exh. 6 Cover Sheet to original state court action herein)(Oberlander, Frederick) (Entered: 05/02/2014) |
| 05/05/2014 | 60 🅁 | LETTER addressed to Judge Lorna G. Schofield from Counsels Frederick M. Oberlander and Richard E. Lerner dated May 5, 2014 re: May 2, 2014 letter from counsel for Sater.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Oberlander, Frederick) (Entered: 05/05/2014) |
| 05/07/2014 | 61 | ORDER finding as moot 36 Motion for Discovery (HEREBY ORDERED by Judge Lorna G. Schofield)(Text Only Order) (Schofield, Lorna) (Entered: 05/07/2014) |
| 05/08/2014 | 62 🅁 | ORDER denying 53 🅁 Motion for Reconsideration ; denying 59 Motion for Reconsideration. For the reasons stated above, Plaintiffs' Motion for Reconsideration is DENIED. The Clerk of the Court is directed to close the motion at Docket Nos. 53 and 59. Plaintiffs assert that the Complaint they filed to comply with the April 17 Order is not the complaint they would have filed, but for Defendants' alleged criminal misconduct. It is ORDERED that no later than May 21, 2014, Plaintiffs shall file either: (i) an amended complaint that Plaintiffs believe is sufficient for purposes of Rules 8 and 9(b) of the Federal Rules of Civil Procedure; or (ii) a letter advising the Court of their intent to stand by their currently operative Complaint at Docket No. 51. It is further ORDERED that Defendants' application for the June 10, 2014, conference to be advanced to an earlier date is DENIED. Counsel are directed to confer with each other prior to the conference regarding each of the matters to be considered at a Fed. R. Civ. P. 16 conference. Additionally, in accordance with the Court's Individual Rules, the parties are hereby ORDERED to file via ECF |

**A19**

| | | a Joint Proposed Civil Case Management Plan and Scheduling Order in PDF format no later than June 3, 2014, using the form available at the Court's website (http://nysd.uscourts.gov/judge/Schofield). The Court declines Plaintiffs' suggestion that it sua sponte recuse itself. (Signed by Judge Lorna G. Schofield on 5/8/2014) (kgo) (Entered: 05/08/2014) |
|---|---|---|
| 05/13/2014 | 63 **R** | ORDER OF REFERENCE TO A MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive Motion/Dispute (including discovery dispute): Issue raised in Bayrock Defendants' May 12 letter. Referred to Magistrate Judge Frank Maas. (Signed by Judge Lorna G. Schofield on 5/13/2014) (kgo) Modified on 5/14/2014 (kgo). (Entered: 05/13/2014) |
| 05/13/2014 | 64 | LETTER addressed to Judge Lorna G. Schofield from Counsels for Plaintiffs Frederick M. Oberlander and Richard E. Lerner dated May 13, 2014 re: Reponse to improperly undocketed non-ECF letter of May 12, 2014 by non-party non-intervenor Walter Saurack seeking relief although devoid of standing to do so by his refusal to appear.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Oberlander, Frederick) (Entered: 05/13/2014) |
| 05/22/2014 | 66 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT - MOTION** to Seal Document *Substitute Complaint filed by dropbox and time stamp pending further direction of the Court*. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Oberlander, Frederick) Modified on 5/23/2014 (db). (Entered: 05/22/2014) |
| 05/22/2014 | 67 **R** | INTERIM LETTER addressed to Judge Lorna G. Schofield from Counsels for Plaintiffs Oberlander and Lerner dated May 22, 2014 re: Completion of Filing Substitute Complaint under seal with redacted version for public upload. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Oberlander, Frederick) (Entered: 05/22/2014) |
| 05/22/2014 | 68 | ORDER REFERRING CASE TO A MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive Motion/Dispute: Issue raised in Plaintiff's May 22, 2014 letter (Dkt. Nos. 66-67). Referred to Magistrate Judge Frank Maas. Motions referred to Frank Maas. (Signed by Judge Lorna G. Schofield on 5/22/2014) (kgo) Modified on 5/22/2014 (kgo). (Entered: 05/22/2014) |
| 05/23/2014 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Frederick Martin Oberlander. Document No. 66 Letter. This document is not filed via ECF. The Court** |

**A20**

| | | permits the filing of letters including certain types of letter motions, a **Motion to Seal Document must be formally filed. (db)** (Entered: 05/23/2014) |
|---|---|---|
| 05/29/2014 | 69 R | MEMORANDUM DECISION AND ORDER. For the reasons set forth in my memorandum decision and order dated May 29, 2014, in Kriss, et al. v. Bayrock Group LLC, et al., No. 10 Civ. 3959, the Clerk of the Court is directed to seal the Complaint in this action (ECF No. 51). (Signed by Magistrate Judge Frank Maas on 5/29/2014) Copies Sent By Chambers to all counsel via ECF. (rjm) (Entered: 05/30/2014) |
| 05/29/2014 | | Transmission to Sealed Records Clerk. Transmitted re: 69 R Order to the Sealed Records Clerk for the sealing or unsealing of document or case. (rjm) (Entered: 05/30/2014) |
| 05/30/2014 | 70 | SEALED DOCUMENT placed in vault.(nm) (Entered: 05/30/2014) |
| 06/03/2014 | 71 | LETTER addressed to Judge Lorna G. Schofield from Robert S. Wolf dated 6/3/2014 re: Compliance with April 28, 2014 Order. Document filed by Felix Sater.(Wolf, Robert) (Entered: 06/03/2014) |
| 06/04/2014 | 72 R | FIRST LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard E. Lerner dated June 3,2014 re: Status Conference of June 10, 2014. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Lerner, Richard) (Entered: 06/04/2014) |
| 06/06/2014 | 73 R | LETTER addressed to Judge Lorna G. Schofield from Frederick M. Oberlander and Richard E. Lerner dated June 6, 2014 re: Status Conference set for June 10, 2014. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone).(Oberlander, Frederick) (Entered: 06/06/2014) |
| 06/06/2014 | 74 R | ORDER OF REFERENCE TO A MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Referred to Magistrate Judge Frank Maas. (Signed by Judge Lorna G. Schofield on 6/6/2014) (kgo) (Entered: 06/06/2014) |
| 06/06/2014 | 75 | ORDER re: 52 Order for Initial Pretrial Conference. It is hereby ORDERED that the Court's April 28, 2014 Order (Dkt. # 52) is hereby vacated so that Judge Maas may hold the Rule 16 conference at the time and in the manner that he sees fit. The conference scheduled for June 10, 2014 is adjourned sine die. SO ORDERED. (Signed by Judge Lorna G. Schofield on 6/6/2014) (kgo) (Entered: 06/06/2014) |
| 06/11/2014 | 76 | LETTER addressed to Magistrate Judge Frank Maas from Robert S. Wolf dated 06/11/2014 re: service of existing amended complaint and briefing schedule for defendant's motion to dismiss. Document filed by Felix Sater. |

**A21**

| 06/16/2014 | 77 R | MOTION to Set Aside *Magistrate's order on 10-cv-3905 ECF 68 insofar as it seals the initial complaint in this action*. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, Suan Investments, Ervin Tausky.(Oberlander, Frederick) (Entered: 06/16/2014) |
|---|---|---|
| 06/16/2014 | 78 R | LETTER addressed to Judge Lorna G. Schofield from Counsels Oberlander and Lerner (for Plaintiffs) dated June 16, 2014 re: Cancellation of Filing by Email in case of sealing. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Whitestone LLC, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments.(Oberlander, Frederick) (Entered: 06/16/2014) |
| 06/16/2014 | 79 R | ORDER: WHEREAS, Plaintiffs filed a motion for relief from Magistrate Judge Maas's orders in each of the above cases, on June 15, 2014, and June 16, 2014, respectively. It is hereby ORDERED that no later than June 23, 2014, Defendants shall file a response to Plaintiffs' motion. ( Responses due by 6/23/2014) (Signed by Judge Lorna G. Schofield on 6/16/2014) (mro) (Entered: 06/17/2014) |
| 06/23/2014 | 80 R | RESPONSE in Opposition to Motion re: 77 R MOTION to Set Aside *Magistrate's order on 10-cv-3905 ECF 68 insofar as it seals the initial complaint in this action*. . Document filed by Felix Sater. (Wolf, Robert) (Entered: 06/23/2014) |
| 06/23/2014 | 81 | AFFIRMATION of Robert S. Wolf in Opposition re: 77 R MOTION to Set Aside *Magistrate's order on 10-cv-3905 ECF 68 insofar as it seals the initial complaint in this action.*. Document filed by Felix Sater. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Wolf, Robert) (Entered: 06/23/2014) |
| 06/24/2014 | 82 R | LETTER addressed to Judge Lorna G. Schofield from Counsels for Plaintiffs Frederick M. Oberlander and Richard E. Lerner dated June 24, 2014 re: Proposed expedited schedule for filing and serving reply to defendants' response in opposition to non-dispositive magistrate's order by June 27, 2014. Document filed by Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone).(Oberlander, Frederick) (Entered: 06/24/2014) |
| 06/25/2014 | 83 R | LETTER addressed to Judge Lorna G. Schofield from Robert S. Wolf dated 6/25/2014 re: Plaintiffs' Counsel's June 24th letter. Document filed by Felix Sater.(Wolf, Robert) (Entered: 06/25/2014) |
| 06/25/2014 | 84 R | LETTER addressed to Judge Lorna G. Schofield from Counsels for Plaintiffs Frederick M. Oberlander and Richard E. Lerner dated June 25, 2014 re: Response to Defendant Sater's allegation that voluntarily filing in expedited timing a reply to a motion is sanctionable abuse of process.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, |

**A22**

| | | Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments. (Oberlander, Frederick) (Entered: 06/25/2014) |
|---|---|---|
| 06/25/2014 | 85 R | MEMO ENDORSEMENT on re: (82 in 1:13-cv-03905-LGS-FM) Letter,, filed by Bayrock Group LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Bayrock Spring Street LLC, J. Kriss, Michael Ejekam, (77 in 1:10-cv-03959-LGS-FM) Letter, filed by BayRock Spring Street LLC, Jody Kriss, BayRock Whitestone LLC, Michael Ejekam. ENDORSEMENT: Plaintiffs may file one reply in support of its motion in both actions, not to exceed five pages double-spaced, with 12-point font and at least one-inch margins. Any reply shall be filed no later than June 27, 2014. (Signed by Judge Lorna G. Schofield on 6/25/2014) (kgo) (Entered: 06/25/2014) |
| 06/25/2014 | | Set/Reset Deadlines: Replies due by 6/27/2014. (kgo) (Entered: 06/25/2014) |
| 06/25/2014 | 86 R | REPLY MEMORANDUM OF LAW in Opposition re: 66 MOTION to Seal Document *Substitute Complaint filed by dropbox and time stamp pending further direction of the Court. There is a PACER/ECF defect here. Defendant Sater improperly filed a motion as a letter on June 11, 2014, ECF 76, and ECF will not allow upload of this document, which is a combined affirmation and memorandum of law in opposition thereto, because it was not coded as a motion.* Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone). (Oberlander, Frederick) (Entered: 06/25/2014) |
| 06/27/2014 | 87 R | REPLY MEMORANDUM OF LAW in Support re: 77 R MOTION to Set Aside *Magistrate's order on 10-cv-3905 ECF 68 insofar as it seals the initial complaint in this action.* . Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone). (Oberlander, Frederick) (Entered: 06/27/2014) |
| 06/28/2014 | 88 R | REPLY AFFIRMATION of counsels for plaintiffs in Support re: 77 R MOTION to Set Aside *Magistrate's order on 10-cv-3905 ECF 68 insofar as it seals the initial complaint in this action.*. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Attachments: # 1 R Exhibit Video of Access to 3905 docket mirror site., # 2 R Exhibit Items filed in Delaware Chancery by Bayrock defendants 4154-vcs, # 3 R Exhibit Document 51)(Oberlander, Frederick) (Entered: 06/28/2014) |
| 07/01/2014 | 89 R | LETTER addressed to Judge Lorna G. Schofield from Counsels for Plaintiffs Frederick M. Oberlander and Richard E. Lerner dated July 1, 2014 re: Reply to Bayrock defendants' letter of June 30, 2014 objecting to plaintiffs' use of public documents in ECF 83 and elsewhere.. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone |

**A23**

| 08/13/2014 | 90 R | LETTER addressed to Magistrate Judge Frank Maas from Robert S. Wolf dated 8/13/2014 re: Access to Amended Complaint. Document filed by Felix Sater.(Wolf, Robert) (Entered: 08/13/2014) |
|---|---|---|
| 08/15/2014 | 91 | NOTICE OF APPEARANCE by Richard E. Lerner on behalf of Bayrock Camelback LLC. (Lerner, Richard) (Entered: 08/15/2014) |
| 08/15/2014 | 92 | NOTICE OF APPEARANCE by Richard E. Lerner on behalf of Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky. (Lerner, Richard) (Entered: 08/15/2014) |
| 08/15/2014 | 93 | LETTER MOTION for Extension of Time *to serve a summons and complaint in this matter, as otherwise provided by FRCP 4,* addressed to Magistrate Judge Frank Maas from Richard E. Lerner, Esq. for Plaintiffs dated August 15, 2014. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Lerner, Richard) (Entered: 08/15/2014) |
| 08/19/2014 | 94 R | LETTER RESPONSE to Motion addressed to Magistrate Judge Frank Maas from Robert S. Wolf dated 8/19/2014 re: 93 LETTER MOTION for Extension of Time *to serve a summons and complaint in this matter, as otherwise provided by FRCP 4,* addressed to Magistrate Judge Frank Maas from Richard E. Lerner, Esq. for Plaintiffs dated August 15, 2014. . Document filed by Felix Sater. (Wolf, Robert) (Entered: 08/19/2014) |
| 08/19/2014 | 95 | LETTER MOTION for Extension of Time *reply as to ECF 93, in reply to Robert Wolf's letter of 8/19/14* addressed to Magistrate Judge Frank Maas from Richard E. Lerner dated 8/19/14. Document filed by Bayrock Camelback LLC, Bayrock Group LLC, Bayrock Spring Street LLC, Bayrock Whitestone LLC, E/O Ernest Gottdiener, E/O Judit Gottdiener, Michael Ejekam(alone), Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC), J. Kriss(alone), Suan Investments, Ervin Tausky.(Lerner, Richard) (Entered: 08/19/2014) |
| 08/20/2014 | 96 R | ORDER granting 93 Letter Motion for Extension of Time. Application granted. The time for service of the summons and complaint is extended sine die. (Signed by Magistrate Judge Frank Maas on 8/19/2014) (lmb) (Entered: 08/20/2014) |
| 12/02/2014 | 98 R | LETTER addressed to Judge Lorna G. Schofield from Robert Wolf dated 12/02/2014 re: Request for Immediate Conference. Document filed by Felix Sater.(Wolf, Robert) (Entered: 12/02/2014) |

| 12/02/2014 | | **\*\*\*DELETED DOCUMENT. Deleted document number 97 LETTER. The document was incorrectly filed in this case. (ldi)** (Entered: 12/03/2014) |
|---|---|---|
| 12/03/2014 | 99 | ORDER denying 95 Letter Motion for Extension of Time because the text demonstrates that this letter is not, in fact, a separate motion, but a reply in further support of the letter motion previously docketed as ECF No. 93, which motion was granted by memo endorsement on August 19, 2014. (See ECF No. 96). Counsel should also note that my Individual Practices permit the filing of letters, but not the electronic filing of Letter Motions. (See paragraph 1.A.) (Maas, Frank) (Entered: 12/03/2014) |
| 12/03/2014 | 100 R | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Robert S. Wolf dated 12/2/2014 re: This Court can no longer indulge Plaintiffs' counsel, who are also the subject of civil contempt proceedings and a separate criminal investigation for contempt. The pendency of these frivolous incendiary claims against Mr. Sater continues to cause him to suffer substantial harm, financial and otherwise. We respectfully request the Court's immediate intervention. ENDORSEMENT: Application denied. This case has been referred to Judge Maas for all general non-dispositive pre-trial matters, and all correspondence should directed to Judge Maas, unless they pertain to issues beyond the scope of Judge Maas' jurisdiction, pursuant to 26 U.S.C. 636. (Signed by Judge Lorna G. Schofield on 12/3/2014) (djc) (Entered: 12/04/2014) |
| 12/04/2014 | 101 | LETTER addressed to Magistrate Judge Frank Maas from Robert S. Wolf dated December 4, 2014 re: Request for Immediate Conference. Document filed by Felix Sater.(Wolf, Robert) (Entered: 12/04/2014) |
| 03/23/2015 | 102 R | ORDER denying 77 R Motion to Set Aside: ORDERED that the Motion to unseal the Complaint in Kriss II is DENIED pending Judge Maas order or recommendation on how the matter should proceed, consistent with this Courts adoption of the Report and Recommendation dated January 14, 2015, in Kriss I. The Clerk of Court is directed to close the motion at Dkt. No. 77. (Signed by Judge Lorna G. Schofield on 03/23/2015) (jcs) (Entered: 03/23/2015) |
| 03/27/2015 | 103 R | ORDER: It is hereby ORDERED that a status conference shall be held on April 14, 2015, at 11:30 a.m., in Courtroom 20A. Procedural and scheduling issues for both matters will be addressed at the conference. In the interim, no further papers shall be served or filed., ( Status Conference set for 4/14/2015 at 11:30 AM in Courtroom 20A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Frank Maas.) (Signed by Magistrate Judge Frank Maas on 3/27/2015) (lmb) (Entered: 03/27/2015) |
| 04/29/2015 | 104 R | LETTER addressed to Magistrate Judge Frank Maas from Robert S. Wolf, Esq. dated April 29, 2015 re: Objection to Frederick Oberlander's Request for Extension of Time to Comply with Court's Order. Document filed by Felix Sater.(Wolf, Robert) (Entered: 04/29/2015) |
| 04/30/2015 | 105 | ORDER: In accordance with my rulings during the conference held on April 14, 2015, and recognizing that some time has elapsed before the entry of this formal order, it is hereby ORDERED that: 1. Frederick M. Oberlander and Richard E. Lerner are relieved as counsel for Plaintiffs for all purposes in Kriss I. 2. By June 5, 2015, Plaintiffs shall file under seal their second amended |

**A25**

complaint in Kriss I. 3. A telephone conference shall be held on June 15, 2015, at 3 p.m., in Kriss I. Counsel for the Plaintiffs shall initiate that call. 4. By May 1, 2015, Messrs Oberlander and Lerner shall identify the Plaintiffs, if any, that they represent in Kriss II. Messrs Oberlander and Lerner further shall specify the capacity in which each such Plaintiff intends to proceed. If counsel fail to comply with this order the Court will recommend that Kriss II be dismissed with prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute. 5. By May 1, 2015, Mr. Simon shall ensure that the Plaintiffs return to the Defendants all documents in their possession, custody, or control, that Messrs Oberlander and Lerner furnished to them, and that were obtained from Bernstein or his counsel, including but not limited to documents downloaded from the Bernstein hard drive. 6. By May 1, 2015, Messrs Oberlander and Lerner shall surrender to the Court, to be placed under seal, all documents in their possession, custody, or control, and any work product derived therefrom, that they obtained from Bernstein or his counsel, including but not limited to documents downloaded from the Bernstein hard drive. Messrs Oberlander and Lerner shall neither maintain a copy of, nor disseminate, any of these documents. 7. Provided that they timely comply with paragraph 6, by May 5, 2015, Messrs Oberlander and Lerner may explain, in writing, why the materials surrendered should be returned. Opposing counsel may respond to any such submission by May 12, 2015. 8. By May 14, 2015, any objections to this order shall be submitted to Judge Schofield. Counsel are cautioned, however, that any objections will not stay the deadlines stated herein, nor shall the Court grant any such stays or extensions. (Signed by Magistrate Judge Frank Maas on 4/30/2015) (lmb) (Entered: 04/30/2015)

| 05/01/2015 | 106 | LETTER MOTION for Conference (Pre-Motion Conference) addressed to Judge Lorna G. Schofield from Simon Miller dated 5/1/15. Document filed by Frederick Oberlander.(Miller, Simon) (Entered: 05/01/2015) |
| 05/01/2015 | 107 | ORDER granting in part and denying in part 106 Letter Motion for Conference. Application GRANTED in part. The deadlines stated in Paragraphs 6 and 7 of Judge Maas' Order dated April 30, 2015 (Dkt. No. 142 in Kriss I, and Dkt. No. 105 in Kriss II), are hereby STAYED. No later than May 14, 2015, Counsel for Mr. Oberlander may file formal objections to those paragraphs, in twelve-point double spaced Times New Roman font and not in excess of 15 pages. Any responses shall follow the same formatting and page restrictions, and shall be filed no later than May 29, 2015. Any reply, formatted in the same way and not to exceed 8 pages, shall be filed no later than June 5, 2015. The remaining deadlines in Judge Maas' April 30 Order remain in effect. All future submissions must be filed on ECF in accordance with the Court's Individual rules. The Clerk of Court is directed to file this Order in 10 Civ. 3959 and 13 Civ. 3905. (Signed by Judge Lorna G. Schofield on 5/1/2015) (kgo) (Entered: 05/01/2015) |
| 05/02/2015 | 108 R | LETTER addressed to Magistrate Judge Frank Maas from Frederick M. Oberlander, Counsel for Plaintiffs dated 5/1/15 re: Status. Document filed by Ervin Tausky.(Oberlander, Frederick) (Entered: 05/02/2015) |
| 05/06/2015 | 109 | LETTER addressed to Magistrate Judge Frank Maas from Robert S. Wolf, Esq. dated May 5, 2015 re: Requesting Dismissal with Prejudice on behalf of |

| | | |
|---|---|---|
| | | Defendant, Felix Sater. Document filed by Felix Sater.(Wolf, Robert) (Entered: 05/06/2015) |
| 05/14/2015 | [110](#) | MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas*. Document filed by Frederick Oberlander.(Miller, Simon) (Entered: 05/14/2015) |
| 05/14/2015 | [111](#) | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** MOTION to Set Aside [110](#) MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas*. *Declaration in Support of Motion to Set Aside April 30, 2015 Or*der. Document filed by Frederick Oberlander. (Attachments: # [1](#) Exhibit Exhibit A to Miller Dec., # [2](#) Exhibit Exhibit B to Miller Dec., # [3](#) Exhibit Exhibit C to Miller Dec., # [4](#) Exhibit Exhibit D to Miller Dec., # [5](#) Exhibit Exhibit E to Miller Dec., # [6](#) Exhibit Exhibit F to Miller Dec.)(Miller, Simon) Modified on 5/19/2015 (db). (Entered: 05/14/2015) |
| 05/14/2015 | [112](#) | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** MOTION to Set Aside [110](#) MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas*. *Memorandum of Law in Support*. Document filed by Frederick Oberlander.(Miller, Simon) Modified on 5/19/2015 (db). (Entered: 05/14/2015) |
| 05/15/2015 | [113](#) | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** NOTICE OF VOLUNTARY DISMISSAL Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, against the defendant(s) All Defendants. Document filed by J. Kriss(alone). (Simon, Bradley) Modified on 5/18/2015 (dt). (Entered: 05/15/2015) |
| 05/15/2015 | [114](#) Ⓡ | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** NOTICE OF VOLUNTARY DISMISSAL Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, against the defendant(s) All Defendants. Document filed by Michael Ejekam(alone). (Simon, Bradley) Modified on 5/18/2015 (dt). (Entered: 05/15/2015) |
| 05/18/2015 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Bradley Simon to E-MAIL Document No. [113](#) Notice of Voluntary Dismissal to Judgments@nysd.uscourts.gov This document is not filed via ECF. (dt)** (Entered: 05/18/2015) |
| 05/18/2015 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Bradley Simon to E-MAIL Document No. [114](#) Ⓡ Notice of Voluntary Dismissal to Judgments@nysd.uscourts.gov This document is not filed via ECF. (dt)** (Entered: 05/18/2015) |
| 05/19/2015 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Simon Joel Kasha Miller to RE-FILE Document [111](#) MOTION to Set Aside [110](#) MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas*. *Declaration in Support of Motion to Set Aside April 30, 2015 Order*. Use the event type Declaration in Support of Motion found under the event list Replies, Opposition and Supporting** |

| | | |
|---|---|---|
| | | **Documents. (db)** (Entered: 05/19/2015) |
| 05/19/2015 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Simon Joel Kasha Miller to RE-FILE Document 112 MOTION to Set Aside 110 MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas. Memorandum of Law in Support*. Use the event type Memorandum in Support of Motion found under the event list Replies, Opposition and Supporting Documents. (db)** (Entered: 05/19/2015) |
| 05/19/2015 | 115 R | MEMORANDUM OF LAW in Support re: 110 MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas*. . Document filed by Frederick Oberlander. (Miller, Simon) (Entered: 05/19/2015) |
| 05/19/2015 | 116 R | DECLARATION of Simon Miller in Support re: 110 MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas*.. Document filed by Frederick Oberlander. (Attachments: # 1 Exhibit A to Miller Declaration, # 2 Exhibit B to Miller Delcaration, # 3 Exhibit C to Miller Declaration, # 4 Exhibit D to Miller Declaration, # 5 Exhibit E to Miller Delcaration, # 6 Exhibit F to Miler Delcaration)(Miller, Simon) (Entered: 05/19/2015) |
| 06/03/2015 | 117 R | LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Lorna G. Schofield from Simon Miller dated 6/3/15. Document filed by Frederick Oberlander.(Miller, Simon) (Entered: 06/03/2015) |
| 06/03/2015 | 118 R | ENDORSED LETTER addressed to Judge Lorna G. Schofield from Simon Miller dated 6/3/2015 re: Counsel states that the Court extended defendant Felix Sater's time to submit response from May 29, 2015 to June 2, 2015 with our reply due on June 9, 2015. Accordingly, our reply to the Bayrock Defendants' Response is currently due on June 5, 2015 and to Defendant Sater's on June 9, 2015. Since we believe that it is more efficient for the Court to receive a single reply addressing the arguments raised by both defendant groups rather than two separate submissions, we respectfully submit that it makes sense to make the deadlines for our replies the same. ENDORSEMENT: Application DENIED as unnecessary. The memo endorsement dated June 1, 2015, already provides that any replies shall be filed by June 9, 2015. For clarity: the controlling deadline for all replies is June 9, 2015. The Clerk of Court shall file this order in 10 Civ. 3959 and 13 Civ. 3905. (Signed by Judge Lorna G. Schofield on 6/3/2015) (mro) (Entered: 06/04/2015) |
| 06/09/2015 | 119 | REPLY MEMORANDUM OF LAW in Support re: 112 MOTION to Set Aside 110 MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas. Memorandum of Law in Support*. . Document filed by Frederick Oberlander. (Miller, Simon) (Entered: 06/09/2015) |
| 06/09/2015 | 120 | DECLARATION of Simon Miller in Support re: 112 MOTION to Set Aside 110 MOTION to Set Aside *April 30, 2015 Order of Magistrate Judge Maas. Memorandum of Law in Support*.. Document filed by Frederick Oberlander. (Attachments: # 1 Exhibit G)(Miller, Simon) (Entered: 06/09/2015) |
| 06/09/2015 | 121 | LETTER addressed to Judge Lorna G. Schofield from Simon Miller dated June 9, 2015 re: requesting oral argument on motion to set aside April 30, 2015 order by Magistrate Maas. Document filed by Frederick Oberlander.(Miller, Simon) (Entered: 06/09/2015) |

**A28**

| 06/15/2015 | 122 ℝ | MEMO ENDORSEMENT on re: (168 in 1:10-cv-03959-LGS-FM) Letter, filed by Richard E Lerner. ENDORSEMENT: Application DENIED. (Signed by Judge Lorna G. Schofield on 6/15/2015) (lmb) (Entered: 06/15/2015) |
| 06/19/2015 | 123 ℝ | ORDER. A conference in the above referenced matter shall be held on July 13, 2015, at 3:30 p.m., in Courtroom 20A, 500 Pearl Street, New York 10007. All plaintiffs are directed to appear or be available by telephone. (Conference set for 7/13/2015 at 03:30 PM in Courtroom 20A, U.S. Courthouse, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Frank Maas.) (Signed by Magistrate Judge Frank Maas on 6/19/2015) Copies Sent By Chambers via ECF. (rjm) (Entered: 06/19/2015) |
| 06/23/2015 | 124 ℝ | PLAINTIFFS' NOTICE OF VOLUNTARY DISMISSAL: Plaintiff's Jody Kriss and Michael Chu'di Ejekam hereby provide notice that they voluntarily dismiss the above-titled action ("Kriss II") as to all defendants herein, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Application GRANTED. The Clerk of Court is directed to terminate Plaintiffs Jody Kriss and Michael Ejekam from this action. (Signed by Judge Lorna G. Schofield on 6/23/2015) (kgo) (Entered: 06/24/2015) |
| 07/10/2015 | 125 ℝ | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - NOTICE OF VOLUNTARY DISMISSAL Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, WITHOUT prejudice against the defendant(s) Felix Sater, Felix Satter. Document filed by All Plaintiffs. (Oberlander, Frederick) Modified on 7/13/2015 (km). (Entered: 07/10/2015) |
| 07/10/2015 | 126 ℝ | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - NOTICE OF VOLUNTARY DISMISSAL Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, WITHOUT prejudice against the defendant(s) All Defendants. Document filed by All Plaintiffs. (Oberlander, Frederick) Modified on 7/13/2015 (km). (Entered: 07/10/2015) |
| 07/13/2015 | | **\*\*\*NOTE TO ATTORNEY TO EMAIL DOCUMENTS - NON-ECF DOCUMENT ERROR. Note to Attorney Frederick Oberlander to E-MAIL Document Nos. [125 & 126] Notice of Voluntary Dismissal to judgments@nysd.uscourts.gov . These documents are not filed via ECF. (km)** (Entered: 07/13/2015) |
| 07/13/2015 | 127 ℝ | NOTICE OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i): Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiffs Estate of Ernest Gottdiener, Estate of Judit Gottdiener, Ervin Tausky, Suan Investments, by and through their counsel, give notice that the above-captioned action, having been previously dismissed without prejudice as to and against defendant Felix Sater aka Felix Satter, is voluntarily dismissed, without prejudice, as to and against all other remaining defendants. The Clerk of Court is directed to close this case. (Signed by Judge Lorna G. Schofield on 7/13/2015) (kgo) (Entered: 07/13/2015) |

**A29**

| 07/13/2015 | | Terminate Transcript Deadlines (kgo) (Entered: 07/13/2015) |
|---|---|---|
| 10/01/2015 | 128 | NOTICE OF APPEARANCE by Robert Barnes McFarlane on behalf of Felix Sater. (McFarlane, Robert) (Entered: 10/01/2015) |
| 10/09/2015 | 129 **R** | MOTION to Vacate *Plaintiff's Notices of Voluntary Dismissal.*, MOTION to Dismiss W*ith Pr*ejudice. Document filed by Felix Sater.(Wolf, Robert) (Entered: 10/09/2015) |
| 10/09/2015 | 130 **R** | MEMORANDUM OF LAW in Support re: 129 **R** MOTION to Vacate *Plaintiff's Notices of Voluntary Dismissal.* MOTION to Dismiss With Prejudice. . Document filed by Felix Sater. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P) (Wolf, Robert) (Entered: 10/09/2015) |
| 10/16/2015 | 131 **R** | LETTER addressed to Judge Lorna G. Schofield from Bradley D. Simon, Simon & Partners LLP, Counsel for Non-Parties Jody L. Kriss and Michael Ch'udi Ejekam dated October 15, 2015 re: Objection to Defedant Felix Sater's Filing of ECF Nos. 129 and 130 Motion to Vacate & Dismiss with Prejudice based on Failure to Effect Proper Service and Failure to Comply with the Court's Individual Practices in Civil Cases III. Motion Rules & Procedures A. 1.. Document filed by Michael Ejekam(alone), J. Kriss(for Bayrock Merrimac LLC).(Simon, Bradley) (Entered: 10/16/2015) |
| 10/21/2015 | 132 **R** | LETTER addressed to Judge Lorna G. Schofield from Robert S. Wolf dated October 21, 2015 re: Response in Opposition to Plaintiffs' October 16, 2015 Letter (ECF No. 131). Document filed by Felix Sater.(Wolf, Robert) (Entered: 10/21/2015) |
| 10/22/2015 | 133 **R** | LETTER MOTION for Extension of Time to File Response/Reply as to 131 **R** Letter,, 132 **R** Letter, 130 **R** Memorandum of Law in Support of Motion,, 129 **R** MOTION to Vacate *Plaintiff's Notices of Voluntary Dismissal.* MOTION to Dismiss W*ith Pr*ejudice. addressed to Judge Lorna G. Schofield from Frederick M. Oberlander dated October 22, 2013. Document filed by E/O Ernest Gottdiener, E/O Judit Gottdiener, Suan Investments, Ervin Tausky. (Oberlander, Frederick) (Entered: 10/22/2015) |
| 10/23/2015 | 134 | ORDER granting 133 **R** Letter Motion for Extension of Time to File Response/Reply. APPLICATION GRANTED. The Clerk of Court is directed to close the motion at Docket No. 133. Responses due by 11/9/2015. (Signed by Judge Lorna G. Schofield on 10/23/2015) (kgo) (Entered: 10/23/2015) |
| 11/09/2015 | 135 **R** | MEMORANDUM OF LAW in Opposition re: 129 **R** MOTION to Vacate *Plaintiff's Notices of Voluntary Dismissal.* MOTION to Dismiss With Prejudice. . Document filed by Michael Ejekam(for Bayrock Merrimac LLC), J. Kriss(for Bayrock Merrimac LLC). (Simon, Bradley) (Entered: 11/09/2015) |
| 11/10/2015 | 136 | MEMORANDUM OF LAW in Opposition re: 129 **R** MOTION to Vacate *Plaintiff's Notices of Voluntary Dismissal.* MOTION to Dismiss With Prejudice. *Filing is requested to be acknowledged as nunc pro tunc, timely made on November 9, 2015, as ECF filing failed and subsitute filing and service of these exact documents was made that date by email to the court and* |

**A30**

| | | |
|---|---|---|
| | | *all counsels.* Document filed by E/O Ernest Gottdiener, E/O Judit Gottdiener, Suan Investments, Ervin Tausky. (Attachments: # 1 Exhibit August 20, 2014 order of Magistrate Maas allowing indefinite time to serve a summons and complaint)(Oberlander, Frederick) (Entered: 11/10/2015) |
| 11/16/2015 | 137 R | ORDER denying without prejudice 129 R Motion to Vacate ; denying without prejudice 129 R Motion to Dismiss. It is hereby ORDERED that Kriss II is dismissed with prejudice, but without prejudice to the continued litigation of Kriss I. It is further ORDERED that Plaintiffs' request for leave to seek Rule 11 sanctions is DENIED without prejudice to renewal at the conclusion of Kriss I. The Clerk of Court is directed to close the motion at Dkt. No. 129. (As further set forth in this Order.) (Signed by Judge Lorna G. Schofield on 11/16/2015) (kgo) (Main Document 137 replaced on 11/16/2015) (kgo). Modified on 11/16/2015 (kgo). (Entered: 11/16/2015) |
| 12/16/2015 | 138 R | NOTICE OF APPEAL from 49 R Order,,,, 137 R Order on Motion to Vacate, Order on Motion to Dismiss,,,, 40 R Memorandum & Opinion,,, 62 R Order on Motion for Reconsideration,,,,,,,,,,,,, 102 R Order on Motion to Set Aside,. Document filed by E/O Ernest Gottdiener, E/O Judit Gottdiener, Frederick Oberlander, Suan Investments, Ervin Tausky, Richard E Lerner. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Oberlander, Frederick) (Entered: 12/16/2015) |
| 12/16/2015 | | Appeal Fee Due: for 138 R Notice of Appeal,. $505.00 Appeal fee due by 12/30/2015. (nd) Modified on 12/17/2015 (nd). (Entered: 12/17/2015) |
| 12/17/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 138 R Notice of Appeal,. (nd) (Entered: 12/17/2015) |
| 12/17/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 138 R Notice of Appeal, filed by Ervin Tausky, Richard E Lerner, E/O Ernest Gottdiener, Frederick Oberlander, E/O Judit Gottdiener, Suan Investments were transmitted to the U.S. Court of Appeals. (nd) (Entered: 12/17/2015) |
| 12/31/2015 | | Appeal Fee Payment: for 138 R Notice of Appeal,. Filing fee $ 505.00, receipt number 0208-11789746. (Oberlander, Frederick) (Entered: 12/31/2015) |
| 04/08/2016 | 139 | SEALED DOCUMENT placed in vault.(rz) (Entered: 04/08/2016) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/20/2016 09:26:02 | | |
| PACER Login: | RichardLerner:3994622:0 | Client Code: |
| Description: | Docket Report | Search Criteria: | 1:13-cv-03905-LGS-FM |
| Billable Pages: | 25 | Cost: | 2.50 |

**A31**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

J. KRISS and MICHAEL EJEKAM alone and for
BAYROCK MERRIMAC LLC; BAYROCK
GROUP LLC, BAYROCK SPRING STREET LLC;
BAYROCK WHITESTONE LLC; and BAYROCK
CAMELBACK LLC; and E/O ERNEST and
E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and
SUAN INVESTMENTS

                **Plaintiffs,**

          **v.**

BAYROCK GROUP LLC; TEVFIK ARIF;
JULIUS SCHWARZ; FELIX SATTER;
BRIAN HALBERG; SALVATORE LAURIA;
ALEX SALOMON; JERRY WEINRICH;
SALOMON & CO. PC; AKERMAN SENTERFITT
LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFELD LLP;
BRUCE STACHENFELD; DAVID GRANIN;
NIXON PEABODY LLP; ADAM GILBERT;
ROBERTS & HOLLAND LLP; ELLIOT PISEM;
MICHAEL SAMUEL; MEL DOGAN; BAYROCK
SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK
CAMELBACK LLC; BAYROCK MERRICAM LLC;
BAYROCK GROUP INC.; TAMIR SAPIR; ALEX
SAPIR; "SAPIR DOES"

              **Group I Defendants**

WALTER SAURACK; SATTERLEE STEPHENS
BURKE & BURKE LP; KELLY MOORE;
MORGAN LEWIS & BOCKIUS LLP; NADER
MOBARGHA; MICHAEL BEYS; BEYS STEIN &
MOBARGHA LLP;

             **Group II Defendants**

TODD KAMINSKY;

             **Group III Defendants**

CIM GROUP; ISTAR FINANCIAL; "LENDER
INVESTOR DOES" 1-100; DONALD TRUMP;
IVANKA TRUMP; "TRUMP DOES" 1-100;
NATIONAL UNION FIRE INSURANCE CO.
OF PITTSBURGH, PA.;

             **Group IV Defendants**

---------------------------------------------------------------x

**DEFENDANT FELIX SATER'S
NOTICE OF REMOVAL**

13 Civ. 3905 (LGS)

from the Supreme Court of the
State of New York
County of New York

Index No.: 651715/2013

Defendant Felix Sater (misidentified in the caption as "Felix Satter") ("Sater"), by his attorneys, Beys, Stein & Mobargha LLP, hereby removes this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. ¶¶ 1441(a) & 1442(a)(1). The grounds for removal are as follows:

    1.    On or about May 10, 2013, Plaintiffs filed a Summons with Notice (Index. No. 651715/2013) naming Sater as a defendant in an action commenced in the Supreme Court of the State of New York, New York County (the "State Court Summons with Notice"). The notice that accompanies the summons purports to assert various claims against Sater, including claims of malicious prosecution, fraud, negligence, defamation, unjust enrichment, and conversion. Pursuant to 28 U.S.C. ¶ 1446, a true and correct copy of the State Court Summons with Notice is attached hereto as Exhibit A.

    2.    On or about May 31, 2013, Plaintiffs filed a Notice of Partial Discontinuance, which states that "this action is discontinued without prejudice as to defendants (1) Donald Trump; (2) Ivanka Trump; (3) Trump Does 1-100; and (4) CIM Group, and for emphasis as to only those defendants, and no other." A true and correct copy of the Notice of Partial Discontinuance is attached hereto as Exhibit B.

    3.    On or about June 5, 2013, Plaintiffs filed a Second Notice of Partial Discontinuance, which states that "this action is discontinued without prejudice as to defendant Todd Kaminsky, and for emphasis as to only that defendant, and no other." A true and correct copy of the Notice of Partial Discontinuance is attached hereto as Exhibit C.

    4.    On or about June 7, 2013, Defendant Todd Kaminsky ("AUSA Kaminsky"), by his attorney, Preet Bharara, United States Attorney for the Southern District of New York, filed a

Notice of Removal purporting to remove this action to this Court. A true and correct copy of AUSA Kaminsky's Notice of Removal is attached hereto as Exhibit D.

5. On or about June 14, 2013, AUSA Kaminsky submitted a proposed order to this Court seeking to (a) dismiss without prejudice AUSA Kaminsky as a defendant; and (b) remanding the case to the Supreme Court of the State of New York, County of New York ("New York Supreme Court").

6. On or about June 14, 2013, Sater submitted a letter to this Court requesting an opportunity to submit removal papers and oppose the application to remand, by no later than today, June 21, 2013.

7. On or about June 17, 2013, Plaintiffs submitted a proposed order to this Court seeking confirmation that this action has remained in New York Supreme Court due to the fact that Plaintiffs' voluntary dismissal of AUSA Kaminsky on June 5 rendered his June 7 Notice of Removal a nullity.

8. Irrespective of AUSA Kaminsky's Notification of Removal, the instant action may be removed to this Court pursuant to 28 U.S.C. ¶ 1442(a)(1) because Sater is a "person acting under" the direction of a federal agency or officer.

9. In the State Court Summons and Notice, Plaintiffs assert their intention to bring claims against Sater arising from "the illegal concealment of Felix Sater's 1998 . . . federal racketeering conviction, and subsequent 2009 sentencing." Plaintiffs further state that they "seek relief against those directly and vicariously responsible for the fraud in the three years of litigation on dockets 98-CR-1101, 12-MC-150, and 12-MC-558, EDNY, and 10-CV-3959, SDNY, such litigation was in bad faith, purportedly to protect the safety of Sater by maintaining

under legal seal and closure information of and concerning the nature and existence of his conviction, cooperation and sentence . . . ."

10.    The crux of Plaintiffs' claims against Sater arise from Sater's status as a cooperating witness for the federal government and Sater's compliance with orders and directives from the federal government.

11.    In 1998, pursuant to a cooperation agreement, Sater pleaded guilty to racketeering crimes. His cooperation agreement, which remains under seal today, restricts Sater from revealing his cooperation, or any information derived therefrom. The Eastern District of New York ordered that Sater's case – including all documents and transcripts – be sealed.

12.    Subsequent to his guilty plea, Sater provided extraordinary cooperation to the federal government for over a decade. During that time, Sater continued to comply with the Eastern District's sealing order, and he complied with directives from FBI agents (to whom he reported daily for many years), federal prosecutors, and the Probation Office.

13.    In 2009, Sater was sentenced for his 1998 conviction.

14.    Sater's case remained under seal until Plaintiffs' attorneys Frederick Oberlander and Richard Lerner illicitly obtained documents from Sater's sealed criminal case. They then began a scorched-earth campaign to publicly out Sater as a cooperating witness as a penalty for Sater's refusal to settle a different civil case brought by many of the same plaintiffs herein. *See Kriss et al. v. Bayrock Group LLC, et al.*, No. 10 Civ. 3959 (LGS). Oberlander's and Lerner's activities – which include this action – has jeopardized Sater's safety and will undoubtedly change the calculus for witnesses deciding whether to cooperate with the federal government in the future.

15.     Oberlander's and Lerner's egregious conduct has touched off a tremendous amount of litigation, and judges of the Second Circuit, the Eastern District of New York, and the Southern District of New York have rebuked Oberlander and Lerner for their brazen contempt of court orders and the actions they have taken to publicize Sater's cooperation. Judge Brian Cogan of the Eastern District has referred a possible criminal contempt investigation of Oberlander and Lerner.

16.     Sater is entitled to invoke federal agent jurisdiction under 28 U.S.C. ¶ 1442(a)(1). This statute confers an "absolute" right of removal because federal jurisdiction rests on the federal interest in enforcing federal law and protecting individuals who act pursuant to that law. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). The federal officer removal statute is not "narrow" or "limited." *Id.* Rather, it is broadly construed to protect the federal interests at stake. *Id.*; *Jefferson County v. Acker*, 527 U.S. 423 (1999); *Guarda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841, 843 (S.D.N.Y. 1973) ("[A] cursory survey of the application of [section 1442(a)] reveals it has been construed broadly, and its 'persons acting under' provision particularly so.").

17.     A private party may satisfy ¶ 1442(a)(1) if three elements are met: (1) it acted under the direction of a federal agency or officer; (2) it has a colorable federal defense; and (3) there is a causal nexus between the federal directive and the conduct in question. *Jefferson County*, 527 U.S. at 431.

18.     Sater satisfies each of the three elements of federal agent jurisdiction. First, Sater's actions not to publicize his conviction and cooperation with the government were taken under the direction of a federal agency or officer, namely the Department of Justice, the FBI, federal prosecutors, the Probation Office, and federal courts. *See, e.g.*, *State of Texas v. Heaton*,

58 F.2d 656 (N.D. Tex. 1932) (upholding removal of a murder prosecution against an informer working for federal prohibition agents and against the agents themselves), *cited in Guarda Farms*, 358 F. Supp. at 841.

19. Second, Sater has colorable federal defenses. As the Supreme Court stated in *Jefferson County*, "One of the most important reasons for removal is to have the defense of official immunity tried in a federal court. We therefore do not require the officer virtually to win the case before he can have it removed." 527 U.S. at 431. Accordingly, this element is broadly construed.

20. Sater's federal defenses include:

- Federal common-law immunity. Plaintiffs seek to punish Sater for honoring federal court orders and his agreements (*e.g.*, his cooperation agreement) with the United States. These are matters of unique federal interest because the United States has an overriding and paramount interest in protecting cooperators and in ensuring that cooperators do not face adverse consequences merely for adhering to federal directives. Sater's compliance with specific federal directives provides a defense sufficiently similar to existing federal common-law defenses. *See, e.g., Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

- Sovereign immunity. To the extent Plaintiffs seek recompense from Sater for his actions taken as an agent of the federal government, Plaintiffs' claims are barred by the doctrine of sovereign immunity, and Plaintiffs have not pleaded any basis for overcoming the doctrine.

- Miscellaneous defenses. Because Plaintiffs have not yet filed a complaint, their causes of action are not fully developed. Yet it appears that Sater has additional defenses to certain individual claims; for example, compliance with federal court orders as a defense to unjust enrichment, and the protections of the First Amendment as a defense to defamation, abuse of process, and malicious prosecution.

21. Finally, there is a "causal nexus" between the federal directive and the conduct in question. Plaintiffs' allegations that Sater has violated the law by adhering to directives from federal agents and orders of federal courts to maintain the confidentiality of his conviction and cooperation with the government is precisely such a causal nexus.

22.     Pursuant to 28 U.S.C. ¶ 1446(d), Sater has contemporaneously filed a copy of this Notice with the Clerk of the Court in New York Supreme Court and served a copy on Plaintiffs.

23.     The submission of this Notice is solely for the special purpose of removing this action to the appropriate federal court and is not a general appearance by Sater. This submission does not constitute a waiver of any defense available to Sater, including any defense under Rule 12 of the Federal Rules of Civil Procedure.

Dated: New York, New York
       June 21, 2013

                                    BEYS STEIN MOBARGHA & BERLAND LLP

                        By:    _____
                               Michael P. Beys
                               Nader Mobargha
                               The Chrysler Building
                               405 Lexington Avenue, 7th Floor
                               New York, New York 10174
                               Tel.: (646) 755-3600
                               Fax: (646) 755-3599
                               Email: mbeys@beysstein.com
                                       nmobargha@beysstein.com

                               *Attorneys for Defendant Felix Sater*

-7-
**A38**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| J. KRISS and MICHAEL EJEKAM alone and for BAYROCK MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK CAMELBACK LLC; and E/O ERNEST and E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and SUAN INVESTMENTS **Plaintiffs**,<br><br>v. | **INDEX NO.** |
| BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100;<br>**Group I Defendants** | **SUMMONS WITH NOTICE** |
| WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP;<br>**Group II Defendants** | |
| TODD KAMINSKY;<br>**Group III Defendants** | |
| CIM GROUP; ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100; DONALD TRUMP; IVANKA TRUMP; "TRUMP DOES" 1-100; NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;<br>**Group IV Defendants** | |

**DEFENDANTS PLEASE TAKE NOTICE** YOU ARE HEREBY SUMMONED TO APPEAR in this action by serving a notice of appearance on Counsel for Plaintiffs, address below, within 20 days after service of this summons (not counting the day of service), or within 30 days after service is complete if the summons is not delivered personally to you within New York State.

May 10, 2013

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
*Counsel for Plaintiffs*
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Tel 212-826-0357  Fax 212-202-7624  Email fred55@aol.com

/s/ Richard E. Lerner, Esq.
The Law Office of Richard E. Lerner, P.C.
*Co-Counsel*

**NOTICE**

Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing, as well as related and other unrelated relief, and declaratory relief against those persons, primarily financial institution, insofar as to affix by liquidating judgment thereof such liability is owed to them.

* * * * *

"Bayrock," as used herein, refers to that certain association of juridical entities including, for example and without limitation, Bayrock Group LLC, Bayrock Camelback LLC, Bayrock Whitestone LLC, Bayrock Spring Street LLC, and Bayrock Merrimac LLC, in the last ten years variously engaged in the businesses of financial institution fraud, tax fraud, partnership fraud, insurance fraud, litigation fraud, bankruptcy fraud, mail fraud, wire fraud, money laundering, human trafficking, child prostitution, statutory rape, and, on occasion, real estate.

One of the overarching, dominant themes of those Bayrock lines of business has been the fraudulent concealment of the substantial degree to which it was owned directly or equitably by Felix Sater, who was represented at various times at least during the period 2002 to 2008 to be its Chief Operating Officer and at times as its Managing Director.

Another overarching, dominant theme of Bayrock's lines has been the fraudulent concealment of Felix Sater's conviction for racketeering, to which he secretly pled guilty in 1998, admitting to participating in the operation of a pump-and-dump stock fraud, along with members of Russian and Mafia organized crime, which defrauded investors, many of them senior citizens, including Holocaust survivors, of at a minimum $40,000,000, now in today's dollars some $150,000,000 of stolen wealth as measured by the "well managed account" theory.

The Estates of Ernest and Judit Gottdiener; Ervin Tausky, a natural person, and Suan Investments, a Gottdiener family holding company, are some of those victims, survivors of the Nazi extermination of the Jews of Hungary and federally protected crime victims of Mr. Sater's racketeering, as such his creditors. They were defrauded of their rights to restitution and, because the government illegally concealed Sater's entire case, their rights to sue him. The Gottdieners claim damages for the fraud on them against everyone responsible for the 15-year delay and deprivation of their civil rights.

Insofar as Sater used Bayrock as a personal piggybank to skim millions upon millions of its assets and hide them out of the reach (for now) of these and all the other hundreds if not thousands of victims to whom he now is liable over $500,000,000 in RICO damages, and would not have been able to do so without the facilitation of his concealment frauds by others, the Gottdieners sue all those for the damage they caused.

**A40**

Among those are corrupt attorneys who used fraudulent and sham court processes to hide Sater and his frauds for their own gain, as many of them did so with the specific intent, *inter alia*, of raking in fees from him, essentially taking the Gottdiener's and all the others' money for themselves by keeping it out of the hands of the victims, where it should have gone; they are sued, inter alia, for vicarious liability of all damages caused and for forfeiture of all such fees.

Plaintiffs seek relief against those directly and vicariously responsible for the fraud in the three years of litigation on dockets 98-CR-1101, 12-MC-150, and 12-MC-557, EDNY, and 10-CV-3959, SDNY, such litigation was in bad faith, purportedly to protect the safety of Sater by maintaining under legal seal and closure information of and concerning the nature and existence of his conviction, cooperation and sentence which had in fact been public for up to a decade, as was known to those defendants involved, that had in fact never been legally sealed, as was known to those defendants involved, where there was no actual threat and in fact presentation of evidence of actual threat later claimed was a pure fraud on the court including by subornation, such fraud actionable statutorily as well as at common law. *Inter alia*, insofar as they committed divers frauds and deceits in the context of those litigations, they are sued under Jud. Law §487.

Kriss and Ejekam are natural persons who claim damages, including without limitation in respect of their rights as members and creditors of, as to Kriss, Bayrock Group LLC, Bayrock Spring Street, LLC, Bayrock Whitestone LLC, Bayrock Camelback LLC, and Bayrock Merrimac, as to Ejekam Bayrock Spring Street LLC and Bayrock Whitestone LLC. Kriss and Ejekam also claim damages derivatively, in behalf of those same limited liability companies.

Finally, as Sater admitted at his sentencing he knew no banks would lend to Bayrock if they knew about his concealed conviction, a judicial estoppel and admission against penal interest, lenders and investors who were fraudulently induced to provide $1,000,000,000 or so to Bayrock by this concealment ought to get their money back, so they are sued in declaratory judgment to fix the liability of Bayrock and all those liable to them through Bayrock to them.

All defendants except as noted are sued for all liability, that is, for example only, Kelly Moore, who stood in Sater's sentencing as his attorney knowing it was illegally hidden, hearing him admit that he had been using that illegal concealment to perpetrate bank fraud, and without privilege to do so committed fraud and other actionable wrongs in maintaining sham litigation to stop those who learned of this from revealing it for years, thus knowingly facilitating the cover-ups, shall expect to have plenary liability asserted against her by every Plaintiff in every theory for every cause in the scope of the overarching conspiracy. It is the express intent of Plaintiffs to assert all liability to the fullest scope of the state law vicarious liability equivalent of civil federal *Pinkerton* liability against everyone participating in any identifiable and well-pled conspiracy. Those who thought nothing of helping Sater and his co-conspirators defraud, the littlest senior citizens and Holocaust survivors or the biggest banks and lenders, who thought nothing of helping him and others steal those victims' money, must be made to pay with their own.

And, in that Bayrock was used to commit, or was the mediating agent as, or the victim of, various and divers other wrongs for which Plaintiffs have standing to sue, Bayrock itself as well as those in conspiracy or aid and abettance therewith, will be claimed liable for such, including without limitation fraud on partners as well as third parties, breach of contract.

The above notice is a courtesy only; it is not limiting in any way the claims to be asserted. It is certainly accurate, but is not limiting. Plaintiffs reserve the right to make any and all claims in which the minimal notice of simply listing the causes of action would enable them to make.

In addition, Plaintiffs seek relief for causes of action in and related to the underlying facts of the above but where liability is or may be predicated on less than the scienter of intent or recklessness, thus claiming in gross negligence, negligence, and breach of fiduciary duty; and where liability is or may be predicated on contract or quasi-contract, for example and without limitation, where one defendant shall have failed to perform contractual obligations to Plaintiff, causing economic injury, by reason of his participation with another defendant in fraud, whether directed at a Plaintiff or at a third party but proximately injuring Plaintiff, thus entitling Plaintiff to claim in contract against the one and in fraud against the other.

Plaintiffs, demanding $1billion in damages, and all other relief as is just and proper in law or equity, will allege the following and related state law causes of action in the complaint, whether concomitant liability be found directly, vicariously, or by reason of aid and abettance,

**Group I Defendants:**

Liability in fraud, negligence, gross negligence, recklessness, quasi-contract, conversion, breach of fiduciary duty, negligent misrepresentation, Jud. Law §487, disgorgement, restitution, constructive trust, defamation, contribution, indemnification, state securities fraud, breach of contract, rescission, declaratory relief, tortious interference, unjust enrichment, prima facie tort, trespass to chattel, interference with contract, abuse of process, and malicious prosecution.

**Group II Defendants:**

Liability in any or every theory, cause, or right of action listed under Group I Defendants, whether direct or vicarious, as well as liability under Judiciary Law §487 as herein.

**Group III Defendants:**

Liability in Jud. Law §487.

**Group IV Defendants:**

Declaratory relief, as to National Union including for declarations of coverage and as to all declarations of liability of all those in respect of which Kriss and Ejekam have the direct or derivate standing to assert and adjudicate as due such defendants from other defendants.

**A42**

**WHEREBY, DEMAND IS HEREBY MADE OF SUCH DEFENDANTS FOR $1 BILLION. SHOULD DEFENDANTS NOT APPEAR, JUDGMENT MAY BE ENTERED IN DEFAULT IN THE AMOUNT SPECIFIED, OR SUCH AS MAY BE PROVEN.**


## VENUE

Plaintiffs designate New York County as the place of trial. The basis of this designation is CPLR § 503(a), to wit, Plaintiff J. Kriss now, at time of commencement, resides in the county.


## DEFENDANTS

DUVAL & STACHENFELD LLP
BRUCE M. STACHENFELD
CRAIG L. BROWN

Bruce M. Stachenfeld
Duval & Stachenfeld LLP
555 Madison Avenue 6th Floor
New York, NY 10022
212-883-1700
bstachenfeld@dsllp.com

NIXON PEABODY
ADAM GILBERT

Adam Gilbert, Esq.
Nixon Peabody
437 Madison Avenue
New York, NY 10022
212-940-3000
agilbert@nixonpeabody.com

ROBERTS & HOLLAND LLP
ELLIOT PISEM

Elliot Pisem, Esq.
Roberts & Holland LLP
825 Eight Avenue, 37th Floor
New York, NY 10019
212-903-8700
episem@rhtax.com

AKERMAN SENTERFITT LLP
MARTIN DOMB

Martin Domb, Esq.
Akerman Senterfitt LLP
335 Madison Avenue, 26th Floor
New York, NY 10017
212-880-3800
martin.domb@akerman.com

NATIONAL UNION FIRE INS. CO.
Alexander S. Lorenzo Esq.
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
212-210-9528
alexander.lorenzo@alston.com

FELIX SATER
NADER MOBARGHA
MICHAEL BEYS

Nader Mobargha Esq.
Beys, Stein & Mobargha LLP
405 Lexington Avenue 7th Floor
New York, NY 10174
212-755-3603
nmobargha@beysstein.com

SALOMON & COMPANY PC
ALEX SALOMON
JERRY WEINRICH

Stephen Jacobs, Esq.
Landman Corsi Ballaine & Ford PC
120 Broadway
New York, NY 10271
(212) 238-4810
sjacobs@lcbf.com

TEVFIK ARIF
JULIUS SCHWARZ
BRIAN HALBERG
BAYROCK GROUP LLC
BAYROCK WHITESTONE LLC
BAYROCK SPRING STREET LLC
BAYROCK CAMELBACK LLC
BAYROCK MERRIMAC LLC
WALTER SAURACK

Walter Saurack, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 404-8703
wsaurack@ssbb.com

KELLY MOORE

Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
212-309-6000

TODD KAMINSKY

United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

CIM GROUP

515 Madison Avenue
New York, NY 10022
646-783-4602

ISTAR FINANCIAL
1114 Avenue of the Americas
New York, NY 10036
(212) 930-9400

DONALD TRUMP
IVANKA TRUMP

The Trump Organization
Trump Tower
725 Fifth Avenue
New York, NY 10022
212-832-2000

MEL DOGAN

Mel Dogan, Esq.
Dogan & Associates
5 East 59th Street, Suite 750
New York, NY 10022
212-755-1550

V. DAVID GRANIN

V. David Granin
445 Eastgate Road
Ridgewood, NJ 07450
201-652-9091

BAYROCK GROUP INC.

The Company Corporation
2711 Centerville Road Suite 400
Wilmington, Del 19808
For Delivery to File #4385369

MICHAEL SAMUEL

Michael Samuel
1000 South Pointe Drive
MTH #1
Miami Beach, FL 33139

SALVATORE LAURIA

Salvatore Lauria
91 Georgetown Road
Weston, CT 06883

Case 15-4077, Document 72, 06/17/2016, 1796774, Page47 of 176

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| J. KRISS and MICHAEL EJEKAM alone and for BAYROCK MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK CAMELBACK LLC; and E/O ERNEST and E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and SUAN INVESTMENTS<br>**Plaintiffs,**<br><br>v.<br><br>BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100;<br>**Group I Defendants**<br><br>WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP;<br>**Group II Defendants**<br><br>TODD KAMINSKY;<br>**Group III Defendants**<br><br>CIM GROUP; ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100; DONALD TRUMP; IVANKA TRUMP; "TRUMP DOES" 1-100; NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;<br>**Group IV Defendants** | **INDEX NO.**<br>**651715 / 2013**<br><br><br><br>**NOTICE**<br>**OF PARTIAL**<br>**DISCONTINUANCE** |

**PLEASE TAKE NOTICE:** Pursuant to CPLR §3217(a)(1) this action is discontinued without prejudice as to defendants (1) Donald Trump; (2) Ivanka Trump; (3) Trump Does 1-100; and (4) CIM Group, and for emphasis as to only those defendants, and no other.

May 20, 2013

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
*Counsel for Plaintiffs*
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Tel 212-826-0357  Fax 212-202-7624  Email fred55@aol.com

/s/ Richard E. Lerner, Esq.
The Law Office of Richard E. Lerner, P.C.
*Co-Counsel*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| J. KRISS and MICHAEL EJEKAM alone and for BAYROCK MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK CAMELBACK LLC; and E/O ERNEST and E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and SUAN INVESTMENTS | **INDEX NO.**<br>**651715 / 2013** |

**Plaintiffs,**

v.

| | |
|---|---|
| BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100; | **SECOND NOTICE**<br>**OF PARTIAL**<br>**DISCONTINUANCE** |

**Group I Defendants**

WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP;

**Group II Defendants**

TODD KAMINSKY;

**Group III Defendants**

CIM GROUP; ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100; DONALD TRUMP; IVANKA TRUMP; "TRUMP DOES" 1-100; NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

**Group IV Defendants**

**PLEASE TAKE NOTICE:** Pursuant to CPLR §3217(a)(1) this action is discontinued without prejudice as to defendant Todd Kaminksy, and for emphasis as to only that defendant, and no other.

June 5, 2013

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
*Counsel for Plaintiffs*
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Tel 212-826-0357  Fax 212-202-7624  Email fred55@aol.com

/s/ Richard E. Lerner, Esq.
The Law Office of Richard E. Lerner, P.C.
*Co-Counsel*

**A46**

Case 15-4077, Document 72, 06/17/2016, 1796774, Page49 of 176

PREET BHARARA
United States Attorney for the
Southern District of New York
By: JESSICA JEAN HU
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel. No.: (212) 637-2726
Fax No.: (212) 637-2717
Email: Jessica.Hu@usdoj.gov

**ORIGINAL**

**13 CV 3905**

RECEIVED
JUN 0 7 2013
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

J. KRISS and MICHAEL EJEKAM alone and for
BAYROCK MERRIMAC LLC; BAYROCK
GROUP LLC, BAYROCK SPRING STREET LLC;
BAYROCK WHITESTONE LLC; and BAYROCK
CAMELBACK LLC; and E/O ERNEST and
E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and
SUAN INVESTMENTS

                         **Plaintiffs,**

        **v.**

BAYROCK GROUP LLC; TEVFIK ARIF;
JULIUS SCHWARZ; FELIX SATTER;
BRIAN HALBERG; SALVATORE LAURIA
ALEX SALOMON; JERRY WEINRICH;
SALOMON & CO. PC; AKERMAN SENTERFITT
LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFELD LLP;
BRUCE STACHENFELD; DAVID GRANIN;
NIXON PEABODY LLP; ADAM GILBERT
ROBERTS & HOLLAND LLP; ELLIOT PISEM;
MICHAEL SAMUEL; MEL DOGAN; BAYROCK
SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK
CAMELBACK LLC; BAYROCK MERRIMAC LLC;
BAYROCK GROUP INC. TAMIR SAPIR; ALEX
SAPIR; "SAPIR DOES" 1-100;
             **Group I Defendants**
WALTER SAURACK; SATTERLEE STEPHENS
BURKE & BURKE LLP; KELLY MOORE;
MORGAN LEWIS & BOCKIUS LLP; NADER
MOBARGHA; MICHAEL BEYS; BEYS STEIN &

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**NOTICE OF REMOVAL**

13 Civ. _____ ( )

from the Supreme Court of the
State of New York
County of New York

Index No.: 651715/2013

MOBARGHA LLP;                                          :
     **Group II Defendants** :
TODD KAMINSKY;                                        :
     **Group III Defendants** :
CIM GROUP; ISTAR FINANCIAL; "LENDER :
INVESTOR DOES" 1-100; DONALD TRUMP; :
IVANKA TRUMP; "TRUMP DOES" 1-100;  :
NATIONAL UNION FIRE INSURANCE CO.  :
OF PITTSBURGH, PA.;                                  :
     **Group IV Defendants** :
-----------------------------------------------------------------x

  Defendant Todd Kaminsky ("AUSA Kaminsky"), by his attorney, Preet Bharara, United

States Attorney for the Southern District of New York, hereby removes this action to the United

States District Court for the Southern District of New York[1] pursuant to 28 U.S.C. §§ 1441(a) &

1442(a)(1). The grounds for removal are as follows:

  1.  On or about May 10, 2013, Plaintiffs filed a Summons with Notice (Index No.

651715/2013) naming AUSA Kaminsky as a defendant in an action commenced in the Supreme

Court of the State of New York, New York County (the "State Court Summons with Notice").

The notice which accompanies the summons purports to assert various claims against AUSA

Kaminsky, including claims of malicious prosecution, fraud, negligence, defamation, unjust

enrichment, and conversion. Pursuant to 28 U.S.C. § 1446, true and correct copies of the State

Court Summons with Notice is attached hereto as Exhibit A.

  2.  The instant action may be removed to this Court pursuant to 28 U.S.C. §§

1442(a)(1) because AUSA Kaminsky is an officer of the United States Attorney's Office for the

Eastern District of New York which is an agency of the United States.

---

[1] The Summons and Notice in this action does not state whether Plaintiffs intend to sue AUSA
Kaminsky in his individual or official capacity. The United States Department of Justice
("DOJ") has approved representation AUSA Kaminsky to the extent Plaintiffs' claims are
against him in his individual capacity. Accordingly, the undersigned counsel represents AUSA
Kaminsky in both his official capacity and his individual capacity.

3.      Removal pursuant to §§ 1442(a)(1) and 1442(a)(1) is timely under 28 U.S.C. §

1446(b).  Section 1446(b)(1) authorizes removal "within 30 days after the receipt by the

defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim

for relief upon which such action or proceeding is based, or within 30 days after the service of

summons upon the defendant if such initial pleading has then been filed in court and is not

required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b).

AUSA Kaminsky received notification of the State Court Summons with Notice on May 10,

2013.  The State Court Summons with Notice does not indicate any method of service, and this

Office has no knowledge of any affidavit of service or other indication that AUSA Kaminsky

received the complaint or the summons with notice before that date.

4.      To the extent the State Court Summons and Notice can be construed as asserting

common law tort claims against AUSA Kaminsky, any such tort claims must be brought

pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and

2671-2680, and must name the United States, and not AUSA Kaminsky as the defendant.  See 28

U.S.C. § 2679.

5.      Pursuant to 28 U.S.C. § 2679(d), AUSA Kaminsky was an employee of the

United States and acting within the scope of his office or employment in connection with his

actions as an Assistant United States Attorney.  Accordingly, AUSA Kaminsky is eligible for

FTCA coverage in connection with any allegations regarding actions he undertook as part of the

duties of his office.

6.      The FTCA provides the exclusive remedy with respect to any common law tort

claims against the Federal Defendants.  See 42 U.S.C. § 2679.

3

**A49**

7.     Thus, this action may also be removed to this Court pursuant to 28 U.S.C. § 2679(d) because: (i) trial has not yet been had of this action; and (ii) this is a civil action brought against an individual deemed to be an employee of the United States government for purposes of the FTCA.

8.     The submission of this notice of removal is solely for the special purpose of removing this action to the appropriate federal court and is not a general appearance by AUSA Kaminsky.  This submission does not constitute a waiver of any defense available AUSA Kaminsky, including any defense under Rule 12 of the Federal Rules of Civil Procedure.

Dated: June 7, 2013
       New York, NY

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
JESSICA JEAN HU
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2726
Fax: (212) 637-2717
Email: Jessica.Hu@usdoj.gov

4

**A50**

# Exhibit A

FILED: NEW YORK COUNTY CLERK 05/10/2013

NYSCEF DOC. NO. 1

INDEX NO. 651715/2013

RECEIVED NYSCEF: 05/10/2013

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

| | |
|---|---|
| J. KRISS and MICHAEL EJEKAM alone and for BAYROCK MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK CAMELBACK LLC; and E/O ERNEST and E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and SUAN INVESTMENTS **Plaintiffs,** | INDEX NO. |
| **v.** | |
| BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100; **Group I Defendants** | SUMMONS WITH NOTICE |
| WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP; **Group II Defendants** | |
| TODD KAMINSKY; **Group III Defendants** | |
| CIM GROUP; ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100; DONALD TRUMP; IVANKA TRUMP; "TRUMP DOES" 1-100; NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.; **Group IV Defendants** | |

**DEFENDANTS PLEASE TAKE NOTICE** YOU ARE HEREBY SUMMONED TO APPEAR in this action by serving a notice of appearance on Counsel for Plaintiffs, address below, within 20 days after service of this summons (not counting the day of service), or within 30 days after service is complete if the summons is not delivered personally to you within New York State.

May 10, 2013

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
*Counsel for Plaintiffs*
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Tel 212-826-0357  Fax 212-202-7624  Email fred55@aol.com

/s/ Richard E. Lerner, Esq.
The Law Office of Richard E. Lerner, P.C.
*Co-Counsel*

**A52**

## NOTICE

Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing, as well as related and other unrelated relief, and declaratory relief against those persons, primarily financial institution, insofar as to affix by liquidating judgment thereof such liability is owed to them.

\* \* \* \* \*

"Bayrock," as used herein, refers to that certain association of juridical entities including, for example and without limitation, Bayrock Group LLC, Bayrock Camelback LLC, Bayrock Whitestone LLC, Bayrock Spring Street LLC, and Bayrock Merrimac LLC, in the last ten years variously engaged in the businesses of financial institution fraud, tax fraud, partnership fraud, insurance fraud, litigation fraud, bankruptcy fraud, mail fraud, wire fraud, money laundering, human trafficking, child prostitution, statutory rape, and, on occasion, real estate.

One of the overarching, dominant themes of those Bayrock lines of business has been the fraudulent concealment of the substantial degree to which it was owned directly or equitably by Felix Sater, who was represented at various times at least during the period 2002 to 2008 to be its Chief Operating Officer and at times as its Managing Director.

Another overarching, dominant theme of Bayrock's lines has been the fraudulent concealment of Felix Sater's conviction for racketeering, to which he secretly pled guilty in 1998, admitting to participating in the operation of a pump-and-dump stock fraud, along with members of Russian and Mafia organized crime, which defrauded investors, many of them senior citizens, including Holocaust survivors, of at a minimum $40,000,000, now in today's dollars some $150,000,000 of stolen wealth as measured by the "well managed account" theory.

The Estates of Ernest and Judit Gottdiener; Ervin Tausky, a natural person, and Suan Investments, a Gottdiener family holding company, are some of those victims, survivors of the Nazi extermination of the Jews of Hungary and federally protected crime victims of Mr. Sater's racketeering, as such his creditors. They were defrauded of their rights to restitution and, because the government illegally concealed Sater's entire case, their rights to sue him. The Gottdieners claim damages for the fraud on them against everyone responsible for the 15-year delay and deprivation of their civil rights.

Insofar as Sater used Bayrock as a personal piggybank to skim millions upon millions of its assets and hide them out of the reach (for now) of these and all the other hundreds if not thousands of victims to whom he now is liable over $500,000,000 in RICO damages, and would not have been able to do so without the facilitation of his concealment frauds by others, the Gottdieners sue all those for the damage they caused.

Among those are corrupt attorneys who used fraudulent and sham court processes to hide Sater and his frauds for their own gain, as many of them did so with the specific intent, *inter alia*, of raking in fees from him, essentially taking the Gottdiener's and all the others' money for themselves by keeping it out of the hands of the victims, where it should have gone; they are sued, inter alia, for vicarious liability of all damages caused and for forfeiture of all such fees.

Plaintiffs seek relief against those directly and vicariously responsible for the fraud in the three years of litigation on dockets 98-CR-1101, 12-MC-150, and 12-MC-557, EDNY, and 10-CV-3959, SDNY, such litigation was in bad faith, purportedly to protect the safety of Sater by maintaining under legal seal and closure information of and concerning the nature and existence of his conviction, cooperation and sentence which had in fact been public for up to a decade, as was known to those defendants involved, that had in fact never been legally sealed, as was known to those defendants involved, where there was no actual threat and in fact presentation of evidence of actual threat later claimed was a pure fraud on the court including by subornation, such fraud actionable statutorily as well as at common law. *Inter alia*, insofar as they committed divers frauds and deceits in the context of those litigations, they are sued under Jud. Law §487.

Kriss and Ejekam are natural persons who claim damages, including without limitation in respect of their rights as members and creditors of, as to Kriss, Bayrock Group LLC, Bayrock Spring Street, LLC, Bayrock Whitestone LLC, Bayrock Camelback LLC, and Bayrock Merrimac, as to Ejekam Bayrock Spring Street LLC and Bayrock Whitestone LLC. Kriss and Ejekam also claim damages derivatively, in behalf of those same limited liability companies.

Finally, as Sater admitted at his sentencing he knew no banks would lend to Bayrock if they knew about his concealed conviction, a judicial estoppel and admission against penal interest, lenders and investors who were fraudulently induced to provide $1,000,000,000 or so to Bayrock by this concealment ought to get their money back, so they are sued in declaratory judgment to fix the liability of Bayrock and all those liable to them through Bayrock to them.

All defendants except as noted are sued for all liability, that is, for example only, Kelly Moore, who stood in Sater's sentencing as his attorney knowing it was illegally hidden, hearing him admit that he had been using that illegal concealment to perpetrate bank fraud, and without privilege to do so committed fraud and other actionable wrongs in maintaining sham litigation to stop those who learned of this from revealing it for years, thus knowingly facilitating the cover-ups, shall expect to have plenary liability asserted against her by every Plaintiff in every theory for every cause in the scope of the overarching conspiracy. It is the express intent of Plaintiffs to assert all liability to the fullest scope of the state law vicarious liability equivalent of civil federal *Pinkerton* liability against everyone participating in any identifiable and well-pled conspiracy. Those who thought nothing of helping Sater and his co-conspirators defraud, the littlest senior citizens and Holocaust survivors or the biggest banks and lenders, who thought nothing of helping him and others steal those victims' money, must be made to pay with their own.

**A54**

And, in that Bayrock was used to commit, or was the mediating agent as, or the victim of, various and divers other wrongs for which Plaintiffs have standing to sue, Bayrock itself as well as those in conspiracy or aid and abettance therewith, will be claimed liable for such, including without limitation fraud on partners as well as third parties, breach of contract.

The above notice is a courtesy only; it is not limiting in any way the claims to be asserted. It is certainly accurate, but is not limiting. Plaintiffs reserve the right to make any and all claims in which the minimal notice of simply listing the causes of action would enable them to make.

In addition, Plaintiffs seek relief for causes of action in and related to the underlying facts of the above but where liability is or may be predicated on less than the scienter of intent or recklessness, thus claiming in gross negligence, negligence, and breach of fiduciary duty; and where liability is or may be predicated on contract or quasi-contract, for example and without limitation, where one defendant shall have failed to perform contractual obligations to Plaintiff, causing economic injury, by reason of his participation with another defendant in fraud, whether directed at a Plaintiff or at a third party but proximately injuring Plaintiff, thus entitling Plaintiff to claim in contract against the one and in fraud against the other.

Plaintiffs, demanding $1 billion in damages, and all other relief as is just and proper in law or equity, will allege the following and related state law causes of action in the complaint, whether concomitant liability be found directly, vicariously, or by reason of aid and abettance,

**Group I Defendants:**

Liability in fraud, negligence, gross negligence, recklessness, quasi-contract, conversion, breach of fiduciary duty, negligent misrepresentation, Jud. Law §487, disgorgement, restitution, constructive trust, defamation, contribution, indemnification, state securities fraud, breach of contract, rescission, declaratory relief, tortious interference, unjust enrichment, prima facie tort, trespass to chattel, interference with contract, abuse of process, and malicious prosecution.

**Group II Defendants:**

Liability in any or every theory, cause, or right of action listed under Group I Defendants, whether direct or vicarious, as well as liability under Judiciary Law §487 as herein.

**Group III Defendants:**

Liability in Jud. Law §487.

**Group IV Defendants:**

Declaratory relief, as to National Union including for declarations of coverage and as to all declarations of liability of all those in respect of which Kriss and Ejekam have the direct or derivate standing to assert and adjudicate as due such defendants from other defendants.

**WHEREBY, DEMAND IS HEREBY MADE OF SUCH DEFENDANTS FOR $1 BILLION. SHOULD DEFENDANTS NOT APPEAR, JUDGMENT MAY BE ENTERED IN DEFAULT IN THE AMOUNT SPECIFIED, OR SUCH AS MAY BE PROVEN.**

## VENUE

Plaintiffs designate New York County as the place of trial. The basis of this designation is CPLR § 503(a), to wit, Plaintiff J. Kriss now, at time of commencement, resides in the county.

## DEFENDANTS

DUVAL & STACHENFELD LLP
BRUCE M. STACHENFELD
CRAIG L. BROWN

Bruce M. Stachenfeld
Duval & Stachenfeld LLP
555 Madison Avenue 6th Floor
New York, NY 10022
212-883-1700
bstachenfeld@dsllp.com

NIXON PEABODY
ADAM GILBERT

Adam Gilbert, Esq.
Nixon Peabody
437 Madison Avenue
New York, NY 10022
212-940-3000
agilbert@nixonpeabody.com

ROBERTS & HOLLAND LLP
ELLIOT PISEM

Elliot Pisem, Esq.
Roberts & Holland LLP
825 Eight Avenue, 37th Floor
New York, NY 10019
212-903-8700
episem@rhtax.com

AKERMAN SENTERFITT LLP
MARTIN DOMB

Martin Domb, Esq.
Akerman Senterfitt LLP
335 Madison Avenue, 26th Floor
New York, NY 10017
212-880-3800
martin.domb@akerman.com

NATIONAL UNION FIRE INS. CO.
Alexander S. Lorenzo Esq.
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
212-210-9528
alexander.lorenzo@alston.com

FELIX SATER
NADER MOBARGHA
MICHAEL BEYS

Nader Mobargha Esq.
Beys, Stein & Mobargha LLP
405 Lexington Avenue 7th Floor
New York, NY 10174
212-755-3603
nmobargha@beysstein.com

SALOMON & COMPANY PC
ALEX SALOMON
JERRY WEINRICH

Stephen Jacobs, Esq.
Landman Corsi Ballaine & Ford PC
120 Broadway
New York, NY 10271
(212) 238-4810
sjacobs@lcbf.com

TEVFIK ARIF
JULIUS SCHWARZ
BRIAN HALBERG
BAYROCK GROUP LLC
BAYROCK WHITESTONE LLC
BAYROCK SPRING STREET LLC
BAYROCK CAMELBACK LLC
BAYROCK MERRIMAC LLC
WALTER SAURACK

Walter Saurack, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 404-8703
wsaurack@ssbb.com

KELLY MOORE

Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
212-309-6000

TODD KAMINSKY

United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

CIM GROUP

515 Madison Avenue
New York, NY 10022
646-783-4602

ISTAR FINANCIAL
1114 Avenue of the Americas
New York, NY 10036
(212) 930-9400

DONALD TRUMP
IVANKA TRUMP

The Trump Organization
Trump Tower
725 Fifth Avenue
New York, NY 10022
212-832-2000

MEL DOGAN

Mel Dogan, Esq.
Dogan & Associates
5 East 59th Street, Suite 750
New York, NY 10022
212-755-1550

V. DAVID GRANIN

V. David Granin
445 Eastgate Road
Ridgewood, NJ 07450
201-652-9091

BAYROCK GROUP INC.

The Company Corporation
2711 Centerville Road Suite 400
Wilmington, Del 19808
For Delivery to File #4385369

MICHAEL SAMUEL

Michael Samuel
1000 South Pointe Drive
MTH #1
Miami Beach, FL 33139

SALVATORE LAURIA

Salvatore Lauria
91 Georgetown Road
Weston, CT 06883

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
JODY KRISS, *et al.*,                                            x
                                                                 :
                              Plaintiffs,                        :
                                                                 :
                                                                 :
            -against-                                            :        13 Civ. 3905 (LGS)
                                                                 :
                                                                 :        **Affirmation of Joshua D. Liston in**
BAYROCK GROUP LLC, *et al.*,                                     :        **Opposition to Plaintiffs' Motion**
                                                                 :        **for Remand and for Enlargement**
                              Defendants.                        :        **of Time**
                                                                 :
                                                                 :
-----------------------------------------------------------------x

I, Joshua D. Liston, being of lawful age, state the following:

1.      I am an attorney admitted to practice before the United States District Court for the

Southern District of New York and am a partner of the firm of Beys Stein Mobargha & Berland

LLP, counsel for Defendant Felix Sater in this action.  I submit this affirmation in Opposition to

Plaintiffs' Motion for Remand and for Enlargement of Time.

2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the transcript of the

February 14, 2011 oral argument before the U.S. Court of Appeals for the Second Circuit.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Summons with Notice,

filed May 10, 2013.

4.      Attached hereto as Exhibit 3 is a true and correct copy of an Opinion and Order, filed

August 27, 2012.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a Notice of Appeal, filed June

14, 2013.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a Letter from T. Kaminsky to

Hon. I. Leo Glasser, dated Mar. 17, 2011.

**A58**

7.     Attached hereto as Exhibit 6 is a true and correct copy of an Affidavit from J. Bernstein, dated Sept. 19, 2011.

8.     Attached hereto as Exhibit 7 is a true and correct copy of an Email from F. Oberlander to J. Bernstein et al., dated March 4, 2010.

9.     Attached hereto as Exhibit 8 is a true and correct copy of an Email from F. Oberlander to R. Kriss, dated May 12, 2010.

10.    Attached hereto as Exhibit 9 is a true and correct copy of a Summary Order, dated June 29, 2011 and filed December 20, 2011.

11.    Attached hereto as Exhibit 10 is a true and correct copy of a Letter from F. Oberlander to B. Herman, dated Nov. 9, 2010.

12.    Attached hereto as Exhibit 11 is a true and correct copy of a Summary Order, filed February 14, 2011.

13.    Attached hereto as Exhibit 12 is a true and correct copy of *By Revealing Man's Past, Lawyer Tests Court Secrecy*, N.Y. Times, February 5, 2012.

14.    Attached hereto as Exhibit 13 is a true and correct copy of a Scheduling Order, filed March 23, 2011.

15.    Attached hereto as Exhibit 14 is a true and correct copy of an Order, filed May 13, 2011.

16.    Attached hereto as Exhibit 15 is a true and correct copy of the transcript of the April 1, 2011 hearing before Judge Cogan.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 16, 2013

/s Joshua D. Liston

# Exhibit 1

1
2                    UNITED STATES COURT OF APPEALS
                        FOR THE SECOND CIRCUIT

3    ------------------------------x

4    UNITED STATES OF AMERICA,

5                    Petitioner,          New York, N.Y.

6              v.                         10-2095-cr

7

8    JOHN DOE.

9                    Respondent.

10   ------------------------------x

11                                       February 14, 2011
                                         1:30 p.m.
12
     Before:
13

14              HON. JOSE A. CABRANES, Presiding
                HON. ROSEMARY S. POOLER
15              HON. DENNY CHIN

16
                                            Circuit Judges
17
                         APPEARANCES
18
     TODD KAMINSKY
19   PETER A. NORLING
     MARSHALL MILLER
20   ELIZABETH KRAMER
          Attorneys  for Petitioner
21
     RICHARD E. LERNER
22        Attorney for Respondent

23   KELLY ANN MOORE
          Attorney for John Doe
24

25

2

X12endoen                    SEALED

1

2                          APPEARANCES (Continued)

3    ALSO PRESENT:

4    RICHARD ROE
     JUDY SELMECI
5    DAVID SNYDER
     NADER MOBARGHA
6    MICHAEL BEYS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

X12endoen                    SEALED

1    cannot be accessed publicly at this time.

2            The Eastern District docket, currently being presided

3    over by the Honorable Judge Glasser, is completely under seal.

4    There are no accessible documents at this time.

5            JUDGE CABRANES:  Can you describe in general terms why

6    these documents are so sensitive, particularly since some of

7    them seem to be somewhat antique, and there have been in the

8    past some news accounts of the activities or purported

9    activities of John Doe?

10           MR. KAMINSKY:  Yes, your Honor.

11           Mr. Doe's cooperation was of an extraordinary depth

12   and breadth, almost unseen, at least in this United States

13   Attorney's Office.

14   

15   

16   

17   

18   

19   

20   

21   

22   

23   

24           The reason why I bring that up, your Honor, is that

25   all of the documents that are currently within the 1998 docket

# Exhibit 2

Case 1:13-cv-09195-LGS Document 33-2 Filed 08/21/14 Page 2 of 7

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF NEW YORK

| | |
|---|---|
| J. KRISS and MICHAEL EJEKAM alone and for BAYROCK MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK CAMELBACK LLC; and E/O ERNEST and E/OJUDIT GOTTDIENER; ERVIN TAUSKY; and SUAN INVESTMENTS **Plaintiffs,** | **INDEX NO.** |
| v. | |
| BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100; **Group I Defendants** | **SUMMONS WITH NOTICE** |
| WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP; **Group II Defendants** | |
| TODD KAMINSKY; **Group III Defendants** | |
| CIM GROUP; ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100; DONALD TRUMP; IVANKA TRUMP; "TRUMP DOES" 1-100; NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.; **Group IV Defendants** | |

**DEFENDANTS PLEASE TAKE NOTICE** YOU ARE HEREBY SUMMONED TO APPEAR in this action by serving a notice of appearance on Counsel for Plaintiffs, address below, within 20 days after service of this summons (not counting the day of service), or within 30 days after service is complete if the summons is not delivered personally to you within New York State.

May 10, 2013

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
*Counsel for Plaintiffs*
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Tel 212-826-0357 Fax 212-202-7624 Email fred55@aol.com

/s/ Richard E. Lerner, Esq.
The Law Office of Richard E. Lerner, P.C.
*Co-Counsel*

**NOTICE**

Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing, as well as related and other unrelated relief, and declaratory relief against those persons, primarily financial institution, insofar as to affix by liquidating judgment thereof such liability is owed to them.

\* \* \* \* \*

"Bayrock," as used herein, refers to that certain association of juridical entities including, for example and without limitation, Bayrock Group LLC, Bayrock Camelback LLC, Bayrock Whitestone LLC, Bayrock Spring Street LLC, and Bayrock Merrimac LLC, in the last ten years variously engaged in the businesses of financial institution fraud, tax fraud, partnership fraud, insurance fraud, litigation fraud, bankruptcy fraud, mail fraud, wire fraud, money laundering, human trafficking, child prostitution, statutory rape, and, on occasion, real estate.

One of the overarching, dominant themes of those Bayrock lines of business has been the fraudulent concealment of the substantial degree to which it was owned directly or equitably by Felix Sater, who was represented at various times at least during the period 2002 to 2008 to be its Chief Operating Officer and at times as its Managing Director.

Another overarching, dominant theme of Bayrock's lines has been the fraudulent concealment of Felix Sater's conviction for racketeering, to which he secretly pled guilty in 1998, admitting to participating in the operation of a pump-and-dump stock fraud, along with members of Russian and Mafia organized crime, which defrauded investors, many of them senior citizens, including Holocaust survivors, of at a minimum $40,000,000, now in today's dollars some $150,000,000 of stolen wealth as measured by the "well managed account" theory.

The Estates of Ernest and Judit Gottdiener; Ervin Tausky, a natural person, and Suan Investments, a Gottdiener family holding company, are some of those victims, survivors of the Nazi extermination of the Jews of Hungary and federally protected crime victims of Mr. Sater's racketeering, as such his creditors. They were defrauded of their rights to restitution and, because the government illegally concealed Sater's entire case, their rights to sue him. The Gottdieners claim damages for the fraud on them against everyone responsible for the 15-year delay and deprivation of their civil rights.

Insofar as Sater used Bayrock as a personal piggybank to skim millions upon millions of its assets and hide them out of the reach (for now) of these and all the other hundreds if not thousands of victims to whom he now is liable over $500,000,000 in RICO damages, and would not have been able to do so without the facilitation of his concealment frauds by others, the Gottdieners sue all those for the damage they caused.

Among those are corrupt attorneys who used fraudulent and sham court processes to hide Sater and his frauds for their own gain, as many of them did so with the specific intent, *inter alia*, of raking in fees from him, essentially taking the Gottdiener's and all the others' money for themselves by keeping it out of the hands of the victims, where it should have gone; they are sued, inter alia, for vicarious liability of all damages caused and for forfeiture of all such fees.

Plaintiffs seek relief against those directly and vicariously responsible for the fraud in the three years of litigation on dockets 98-CR-1101, 12-MC-150, and 12-MC-557, EDNY, and 10-CV-3959, SDNY, such litigation was in bad faith, purportedly to protect the safety of Sater by maintaining under legal seal and closure information of and concerning the nature and existence of his conviction, cooperation and sentence which had in fact been public for up to a decade, as was known to those defendants involved, that had in fact never been legally sealed, as was known to those defendants involved, where there was no actual threat and in fact presentation of evidence of actual threat later claimed was a pure fraud on the court including by subornation, such fraud actionable statutorily as well as at common law. *Inter alia*, insofar as they committed divers frauds and deceits in the context of those litigations, they are sued under Jud. Law §487.

Kriss and Ejekam are natural persons who claim damages, including without limitation in respect of their rights as members and creditors of, as to Kriss, Bayrock Group LLC, Bayrock Spring Street, LLC, Bayrock Whitestone LLC, Bayrock Camelback LLC, and Bayrock Merrimac, as to Ejekam Bayrock Spring Street LLC and Bayrock Whitestone LLC. Kriss and Ejekam also claim damages derivatively, in behalf of those same limited liability companies.

Finally, as Sater admitted at his sentencing he knew no banks would lend to Bayrock if they knew about his concealed conviction, a judicial estoppel and admission against penal interest, lenders and investors who were fraudulently induced to provide $1,000,000,000 or so to Bayrock by this concealment ought to get their money back, so they are sued in declaratory judgment to fix the liability of Bayrock and all those liable to them through Bayrock to them.

All defendants except as noted are sued for all liability, that is, for example only, Kelly Moore, who stood in Sater's sentencing as his attorney knowing it was illegally hidden, hearing him admit that he had been using that illegal concealment to perpetrate bank fraud, and without privilege to do so committed fraud and other actionable wrongs in maintaining sham litigation to stop those who learned of this from revealing it for years, thus knowingly facilitating the cover-ups, shall expect to have plenary liability asserted against her by every Plaintiff in every theory for every cause in the scope of the overarching conspiracy. It is the express intent of Plaintiffs to assert all liability to the fullest scope of the state law vicarious liability equivalent of civil federal *Pinkerton* liability against everyone participating in any identifiable and well-pled conspiracy. Those who thought nothing of helping Sater and his co-conspirators defraud, the littlest senior citizens and Holocaust survivors or the biggest banks and lenders, who thought nothing of helping him and others steal those victims' money, must be made to pay with their own.

And, in that Bayrock was used to commit, or was the mediating agent as, or the victim of, various and divers other wrongs for which Plaintiffs have standing to sue, Bayrock itself as well as those in conspiracy or aid and abettance therewith, will be claimed liable for such, including without limitation fraud on partners as well as third parties, breach of contract.

The above notice is a courtesy only; it is not limiting in any way the claims to be asserted. It is certainly accurate, but is not limiting. Plaintiffs reserve the right to make any and all claims in which the minimal notice of simply listing the causes of action would enable them to make.

In addition, Plaintiffs seek relief for causes of action in and related to the underlying facts of the above but where liability is or may be predicated on less than the scienter of intent or recklessness, thus claiming in gross negligence, negligence, and breach of fiduciary duty; and where liability is or may be predicated on contract or quasi-contract, for example and without limitation, where one defendant shall have failed to perform contractual obligations to Plaintiff, causing economic injury, by reason of his participation with another defendant in fraud, whether directed at a Plaintiff or at a third party but proximately injuring Plaintiff, thus entitling Plaintiff to claim in contract against the one and in fraud against the other.

Plaintiffs, demanding $1billion in damages, and all other relief as is just and proper in law or equity, will allege the following and related state law causes of action in the complaint, whether concomitant liability be found directly, vicariously, or by reason of aid and abettance,

**Group I Defendants:**

Liability in fraud, negligence, gross negligence, recklessness, quasi-contract, conversion, breach of fiduciary duty, negligent misrepresentation, Jud. Law §487, disgorgement, restitution, constructive trust, defamation, contribution, indemnification, state securities fraud, breach of contract, rescission, declaratory relief, tortious interference, unjust enrichment, prima facie tort, trespass to chattel, interference with contract, abuse of process, and malicious prosecution.

**Group II Defendants:**

Liability in any or every theory, cause, or right of action listed under Group I Defendants, whether direct or vicarious, as well as liability under Judiciary Law §487 as herein.

**Group III Defendants:**

Liability in Jud. Law §487.

**Group IV Defendants:**

Declaratory relief, as to National Union including for declarations of coverage and as to all declarations of liability of all those in respect of which Kriss and Ejekam have the direct or derivate standing to assert and adjudicate as due such defendants from other defendants.

**WHEREBY, DEMAND IS HEREBY MADE OF SUCH DEFENDANTS FOR $1 BILLION. SHOULD DEFENDANTS NOT APPEAR, JUDGMENT MAY BE ENTERED IN DEFAULT IN THE AMOUNT SPECIFIED, OR SUCH AS MAY BE PROVEN.**

## VENUE

Plaintiffs designate New York County as the place of trial. The basis of this designation is CPLR § 503(a), to wit, Plaintiff J. Kriss now, at time of commencement, resides in the county.

## DEFENDANTS

DUVAL & STACHENFELD LLP
BRUCE M. STACHENFELD
CRAIG L. BROWN

Bruce M. Stachenfeld
Duval & Stachenfeld LLP
555 Madison Avenue 6th Floor
New York, NY 10022
212-883-1700
bstachenfeld@dsllp.com

NIXON PEABODY
ADAM GILBERT

Adam Gilbert, Esq.
Nixon Peabody
437 Madison Avenue
New York, NY 10022
212-940-3000
agilbert@nixonpeabody.com

ROBERTS & HOLLAND LLP
ELLIOT PISEM

Elliot Pisem, Esq.
Roberts & Holland LLP
825 Eight Avenue, 37th Floor
New York, NY 10019
212-903-8700
episem@rhtax.com

AKERMAN SENTERFITT LLP
MARTIN DOMB

Martin Domb, Esq.
Akerman Senterfitt LLP
335 Madison Avenue, 26th Floor
New York, NY 10017
212-880-3800
martin.domb@akerman.com

NATIONAL UNION FIRE INS. CO.
Alexander S. Lorenzo Esq.
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
212-210-9528
alexander.lorenzo@alston.com

FELIX SATER
NADER MOBARGHA
MICHAEL BEYS

Nader Mobargha Esq.
Beys, Stein & Mobargha LLP
405 Lexington Avenue 7th Floor
New York, NY 10174
212-755-3603
nmobargha@beysstein.com

SALOMON & COMPANY PC
ALEX SALOMON
JERRY WEINRICH

Stephen Jacobs, Esq.
Landman Corsi Ballaine & Ford PC
120 Broadway
New York, NY 10271
(212) 238-4810
sjacobs@lcbf.com

TEVFIK ARIF
JULIUS SCHWARZ
BRIAN HALBERG
BAYROCK GROUP LLC
BAYROCK WHITESTONE LLC
BAYROCK SPRING STREET LLC
BAYROCK CAMELBACK LLC
BAYROCK MERRIMAC LLC
WALTER SAURACK

Walter Saurack, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 404-8703
wsaurack@ssbb.com

KELLY MOORE

Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
212-309-6000

TODD KAMINSKY

United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

CIM GROUP

515 Madison Avenue
New York, NY 10022
646-783-4602

ISTAR FINANCIAL
1114 Avenue of the Americas
New York, NY 10036
(212) 930-9400

DONALD TRUMP
IVANKA TRUMP

The Trump Organization
Trump Tower
725 Fifth Avenue
New York, NY 10022
212-832-2000

MEL DOGAN

Mel Dogan, Esq.
Dogan & Associates
5 East 59th Street, Suite 750
New York, NY 10022
212-755-1550

V. DAVID GRANIN

V. David Granin
445 Eastgate Road
Ridgewood, NJ 07450
201-652-9091

BAYROCK GROUP INC.

The Company Corporation
2711 Centerville Road Suite 400
Wilmington, Del 19808
For Delivery to File #4385369

MICHAEL SAMUEL

Michael Samuel
1000 South Pointe Drive
MTH #1
Miami Beach, FL 33139

SALVATORE LAURIA

Salvatore Lauria
91 Georgetown Road
Weston, CT 06883

# Exhibit 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re Application to Unseal 98 Cr. 1101 (ILG),                    OPINION AND ORDER
United States of America v. John Doe
                                                                12 Mc. 150 (ILG)

-----------------------------------------------------------x

GLASSER, Senior United States District Judge:

      Intervenors the Miami Herald Media Company (the "Herald"), Lorienton N.A.

Palmer ("Palmer"), and Linda Strauss, a member of the public proceeding pro se, have

moved this Court to unseal United States of America v. John Doe, Case Number 98 Cr.

1101, in its entirety.[1] Non-party respondent in 98 Cr. 1101, Richard Roe ("Roe"), also

previously moved to unseal the case.[2] As of December 10, 1998, the docket sheet of the

case and all documents filed in the case have been sealed. The issue currently before the

Court is whether, as an initial matter, any portion of the case's docket sheet must be

unsealed. For the reasons set forth below, the motion to unseal the docket sheet is

hereby GRANTED.

## BACKGROUND

      On December 10, 1998, John Doe ("Doe") pleaded guilty, pursuant to a

cooperation agreement, to an information charging him with participating in a

racketeering enterprise in violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962. The Court sealed the case and its docket

sheet at Doe's December 10, 1998 guilty plea. No transcript of the proceeding was

---

[1] Linda Strauss and Yoav Bitter ("Bitter") on February 7, 2012 and February 9,
2012, respectively, in identical letters each "demand that [the Court] unseal the docket
entries, and all documents and transcripts with respect to the EDNY matter of U.S. v.
'John Doe,' 98-cr-1101, and the related appeals." Letter dated Feb. 7, 2012 from Linda
Strauss to the Court (Dkt. No. 3); Letter dated Feb. 9, 2012 from Yoav Bitter to the Court
(Dkt. No. 4). On April 17, 2012, Bitter withdrew his motion.

[2] Roe's motions to unseal were filed under 98 Cr. 1101.

found, and the notes of the court reporter present at that proceeding, who has long since died, cannot be located and have, in all likelihood, been discarded.[3]  However, the Court has located a minute entry made on that day by the courtroom deputy that states "all documents sealed" and "transcripts sealed."  Given that absent authorization by statute or rule, permission to seal must be given by a judge[4] before a clerk may do so, the inescapable conclusion to be drawn from that minute entry is that given Doe's cooperation, the Government made an oral application that the transcript of the proceeding be sealed which the Court granted as essential to protect the safety of Doe and narrowly tailored to serve that interest.  It was undisputed at Wednesday's hearing that those were the underlying considerations for sealing the case initially and maintaining its sealing thereafter.

Doe's entire case has remained sealed since December 10, 1998.  On May 10, 2010, a complaint in a civil action was filed in the Southern District of New York, annexed to which were sealed documents of this case:  (1) Doe's 2004 presentence investigation report in its entirety and also excerpts from the report; (2) two proffer agreements, one dated October 2 and October 5, 1998 and the other October 29, 1998;

---

[3] Reporter's notes are required by law to be kept by the Clerk of Court for at least ten years.  See  28 U.S.C. § 753(b) ("The reporter or other individual designated to produce the record shall attach his official certificate to the original shorthand notes or other original records so taken and promptly file them with the clerk who shall preserve them in the public records of the court for not less than ten years.").

[4] See, e.g., R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 12 (1st Cir. 2009) ("Placing court records out of public sight is a serious step, which should be undertaken only rarely and for good cause.  Sealing orders are not like party favors, available upon request or as a mere accommodation.  In the first instance, however, decisions about whether or not to seal are committed to the sound discretion of the district court." (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-99, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005); In re Globe Newspaper Co., 920 F.2d 88, 96 (1st Cir. 1990))).

2

**A74**

and (3) Doe's cooperation agreement dated December 10, 1998. That event provoked a proceeding in this Court to enjoin the dissemination of those documents and to maintain their confidentiality, and the extensive proceedings, of which this one is only a part, followed.

Relevant to these proceedings are the Government's acknowledgement of Doe's cooperation on two occasions and the public acknowledgement of his conviction and identity on a third. In 2001, on the eve of the trial of one of the defendants against whom Doe cooperated, the Government provided that information to the defendant as it was required to do pursuant to 18 U.S.C. § 3500. The Court is not aware that it was disseminated by the defendants beyond that. In 2009, the Government inadvertently unsealed the docket of a Doe co-conspirator that contained a letter filed by the Government mentioning Doe's cooperation. Finally, the Government on March 2, 2000 inadvertently disclosed Doe's identity and the fact of his conviction in a press release that was subsequently reprinted in the Congressional Record. See, e.g., Roe v. United States, 428 F. App'x 60, 65 (2d Cir. 2011) (summary order). After learning of that inadvertent disclosure, the Government on March 17, 2011, moved this Court "for a limited unsealing of the docket and certain documents in Doe's underlying criminal case. The [G]overnment explicitly sought to unseal only those docket entries and documents that did not refer to Doe's cooperation with the government." Id. The Government thereafter, on August 24, 2011, withdrew that motion without prejudice. 98 Cr. 1101, Dkt. No. 120.

Doe's conviction and cooperation has also been the subject of intense and continued speculation by the media including the New York Times and, most recently, the Miami Herald. In addition, due to an unfortunate series of events in the office of the

3

Clerk of Court, the docket sheet of 98 Cr. 1101—which revealed Doe's identity and the fact of his conviction and cooperation—was inadvertently unsealed for several days and then subsequently resealed. During the period in which it was publicly available, several members of the media, Lexis, Westlaw, and others accessed it. Copies of the docket sheet remain available on Lexis and Westlaw today.

## ANALYSIS

The principles at issue in this motion are well known. "[D]ocket sheets enjoy a presumption of openness and . . . the public and the media possess a qualified First Amendment right to inspect them." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004). But this presumption is "rebuttable upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest." Hartford Courant, 380 F.3d at 96 (citation and internal quotation marks omitted). "Danger to persons or property," and ensuring the integrity of an ongoing investigation, this Circuit has explained, constitute such higher values or compelling interests. United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995). The parties seeking to maintain sealing—here, the Government and Doe—bear the burden of establishing that continued sealing is warranted. See, e.g., United States v. Zazi, No. 10 Cr. 0019 (RJD), 2010 WL 2710605, at *2 (E.D.N.Y. June 30, 2010). This burden is a heavy one, Press-Enter. Co. v. Superior Court, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984), and the burden "increases the more extensive the closure sought," Doe, 63 F.3d at 129. It is a burden that the Government has previously met.

In deciding whether to unseal the docket sheet, the Court would, in the normal course, balance two competing concerns: (1) the press and the public's presumptive right of access to docket sheets; and (2) the compelling interests that would be

4

prejudiced by public access the Government and Doe may convincingly advance

rebutting that presumption. And it would do so by applying the four-factor test this

Circuit articulated in United States v. Doe:

> First, the district court must determine, in specific findings made on the
> record, if there is a substantial probability of prejudice to a compelling
> interest of the defendant, government, or third party, which closure would
> prevent. Second, if a substantial probability of prejudice is found, the
> district court must consider whether reasonable alternatives to closure
> cannot adequately protect the compelling interest that would be
> prejudiced by public access. Third, if such alternatives are found wanting,
> the district court should determine whether, under the circumstances of
> the case, the prejudice to the compelling interest override[s] the qualified
> First Amendment right of access. Fourth, if the court finds that closure is
> warranted, it should devise a closure order that, while not necessarily the
> least restrictive means available to protect the endangered interest, is
> narrowly tailored to that purpose.

63 F.3d 121, 128 (2d Cir. 2005) (internal citations, quotation marks and punctuation

marks omitted).

Any balancing of the interests here, however, would be academic as the

information the Government and Doe seek to maintain sealed has already been publicly

revealed; the cat is out of the bag, the genie is out of the bottle. Doe's identity and the

fact of his conviction was publicly revealed by the Government in a press release, and

the docket sheet revealing Doe's identity, conviction, and cooperation is accessible on

Westlaw and Lexis.

The Second Circuit has noted that a court lacks power to seal information that,

although once sealed, has been publicly revealed. In Gambale v. Deutsche Bank AG, 377

F.3d 133, 144 (2d Cir. 2004), it stated:

> [H]owever confidential it may have been beforehand, subsequent to
> publication it was confidential no longer. It now resides on the highly
> accessible databases of Westlaw and Lexis and has apparently been
> disseminated prominently elsewhere. We simply do not have the power,
> even were we of the mind to use it if we had, to make what has thus

5

become public private again. The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.

Id. (citing SmithKline Beecham Corp. v. Pentech Pharms., Inc., 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (Posner, J., sitting by designation)). It went on to note this "is generally so when information that is supposed to be confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb—is publicly disclosed. Once it is public, it necessarily remains public." Id. at 144 n.11 (citations omitted); see also United States v. Strevell, No. 05 Cr. 477 (GLS), 2009 WL 577910, at * (N.D.N.Y. Mar. 4, 2009) (applying Gambale and refusing to maintain under seal documents referring to the defendant's cooperation generally where the fact of his cooperation had already been publicly revealed); cf. Zazi, 2010 WL 2710605, at *4 (where media had already heavily reported suspected cooperation of two members of an al-Qaeda terrorist plot to blow up New York City subways based in part on anonymous law enforcement sources, alleged safety risk to one of the plotters and his family did not justify continued sealing of documents confirming defendants' cooperation absent proof of "enhanced risk" to their safety if cooperation is formally disclosed).

Accordingly, because any continued sealing of the docket sheet of 98 Cr. 1101 would be futile, the movants' motion to unseal that docket sheet is hereby GRANTED.

6

A hearing will be held on October 2, 2012 at 2:00 p.m. for the purpose of determining whether unsealing any document that has been filed in 98 Cr. 1101 is required. The Government and Doe will bear the burden of establishing that there are compelling interests that override the qualified First Amendment and common law rights of access.

SO ORDERED.

Dated:      Brooklyn, New York
            August 27, 2012

*S/ I. Leo Glasser*

I. Leo Glasser
Senior United States District Judge

7

**A79**

# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application to Unseal the Docket And Contents Thereof in 98 CR 1101 | 12 MC 150 (ILG) **NOTICE OF APPEAL** |

**First**, notice is hereby given that movants Frederick M. Oberlander and Lorienton Palmer appeal to the United States Court of Appeals for the Second Circuit from that order apparently issued on March 15, 2013 but not properly entered on the public docket as document #106 pursuant to, and as required by, FRCP 58 and FRCP 79, until March 28, 2013[1].

**Second**, notice is hereby given that movants Frederick M. Oberlander and Lorienton Palmer appeal to the United States Court of Appeals for the Second Circuit from that certain order, if any, issued, if ever, on or about March 15, 2013, but never properly entered pursuant to, and as required by, FRCP 58 and FRCP 79, such order apparently, to the extent it exists at all, purporting to justify and lawfully cause the "sealng" of document #106 and further apparently, to the extent it exists at all, purporting to justify and lawfully cause the withholding of that order from movants/appellants.

**Third**, notice is hereby given that movants Frederick M. Oberlander and Lorienton Palmer appeal to the United States Court of Appeals for the Second Circuit from that order issued on May 15, 2013, entered on the public docket as document #118, denying their FRCP 59 motion to amend (reconsider) the March 15, 2013 order, filed on April 19, 2013 as document #113 and amended on April 22, 2013 by document #114.

**Fourth**, notice is hereby given that movants Frederick M. Oberlander and Lorienton Palmer appeal to the United States Court of Appeals for the Second Circuit from that certain order issued on May 17, 2013 entered on the public docket as document #120 denying their letter motion for relief filed on May 15, 2013 and entered on May 17, 2013 as document #121.

Dated: New York, New York      Respectfully submitted,

June 14, 2013      THE LAW OFFICE OF RICHARD E. LERNER, P.C.

By:      /s/ Richard E. Lerner
       The Law Office of Richard E. Lerner, P.C.
       255 West 36th Street Suite 800
       New York, NY 10018
       917-584-4864
       richardlerner@msn.com
       Counsel for movant/appellant Oberlander
       Appellate Counsel for movant/appellant Palmer

To:      ECF Registered Filers

       Linda Strauss (Movant *pro se*)
       25 Anchorage Road
       Port Washington, NY 11050

---

[1] The order was apparently issued March 15, 2013, purportedly under seal, without an entry on the public docket, and issued intentionally without notice to, service on, or transmission to counsel for movants/appellants, who first became aware of it on March 22, 2013 when a copy was served on him by the United States Solicitor General, after he filed it under seal on March 20, 2013 in a matter before the U.S. Supreme Court, *viz. Roe v. U.S. v. Doe,* 12-112. Subsequently, on request of movant/appellant Oberlander, the district court first caused its proper docketing on March 28, 2013. See document #109. Movants/appellants then on April 19, 2013, within the 28 day rule required by FRCP 59, timely filed a joint motion to reconsider, thus tolling the time to appeal until disposition of that motion. That motion was denied on May 15, 2013, see document #118 which began the time in which to appeal, in this case 60 days because the United States is a party/co-respondent.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application to Unseal the Docket And Contents Thereof in 98 CR 1101 | 12 MC 150 (ILG) **CERTIFICATE OF SERVICE** |

The undersigned affirms under penalty of perjury, pursuant to 26 U.S.C. §1746, that he caused service of the attached Notice of Appeal to be made by means of United States mail to the below address on *pro se* movant

> Linda Strauss
> 25 Anchorage Road
> Port Washington, New York 11050

-----

Dated: New York, New York

June 14, 2013

Respectfully submitted,

THE LAW OFFICE OF RICHARD E. LERNER, P.C.

By:     /s/ Richard E. Lerner
        The Law Office of Richard E. Lerner, P.C.
        255 West 36th Street Suite 800
        New York, NY 10018
        917-584-4864
        richardlerner@msn.com
        Counsel for movant/appellant Oberlander
        Appellate Counsel for movant/appellant Palmer

**A82**

# Exhibit 5



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MM:EK:TK
F.#1998R01996

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 17, 2011

**TO BE FILED UNDER SEAL**

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

            Re:   United States v. Felix Sater
                  Criminal Docket No. 98 CR 1101 (ILG)

Dear Judge Glasser:

        The government writes in response to Mr. Lerner's
letter, dated February 3, 2011, demanding that the Court
"immediately docket all events that have occurred in this case,
from its inception."  For the reasons stated below, the
government believes that specific docket entries and documents
that do not directly reference the defendant's cooperation may be
unsealed at this time.  However, those documents in which the
defendant's cooperation is made plain should remain sealed in
order to ensure the defendant's safety, among other reasons.  The
government will submit a separate, sealed letter, available to
the defendant but not to the intervenors or the public, detailing
each docket entry and related document and making specific
recommendations as to each.[1]

---

        [1]  Although an appeal of this Court's permanent injunction
with respect to the Presentence Report (the "PSR") is currently
pending before the Second Circuit Court of Appeals, this Court
nevertheless has the jurisdiction to issue rulings with respect
to sealing that do not concern the PSR.  "[T]he filing of a notice
of appeal only divests the district court of jurisdiction
respecting the questions raised and decided in the order that is
on appeal."  New York State Nat. Org. for Women v. Terry, 886 F.2d
1339, 1350 (2d Cir. 1989).  If an appeal is taken from a judgment
that "does not determine the entire action," the district court
"may proceed with those matters not involved in the appeal."  Id.

**A84**

## Factual Background

As the Court is well aware, the defendant worked with prosecutors from the United States Attorney's Offices from the Eastern and Southern Districts of New York and law enforcement agents for over 10 years, providing information crucial to the conviction of over 20 individuals, including those responsible for committing massive financial fraud, members of La Cosa Nostra ("LCN")

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

However, the fact of the defendant's conviction – as well as speculation and discussion about that fact – has been in the public realm for some time.  Articles in both the *New York Times* and *BusinessWeek* – which relied on statements from a co-conspirator and a copy of the defendant's sealed complaint, respectively – mentioned the defendant by name, discussed his role in the RICO conspiracy and speculated about his conviction.  More importantly, the government recently learned that on March 2, 2000, the government, in a press release announcing the indictment of 19 other defendants on RICO charges, referred to the defendant by his real name and stated that he had been convicted of related crimes.  This press release was reprinted in the Congressional Record, where it can be located today, both on-line and in hard copy.[2]  Nothing in the press release references the defendant's cooperation with the government.

## Legal Standard

Under the common law, the public has a "general right to inspect and copy public records and documents, including judicial records and documents."  <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597 (1978).  Similarly, under the First Amendment, the public has a "qualified . . . right to attend

---

<u>See also</u> <u>Sokol Holdings, Inc., v. BMB Munai, Inc.</u>, 2009 WL 3467756, at *4-*5 (S.D.N.Y. 2009) (where issue on appeal was "whether an arbitration clause warrants a stay or dismissal of any of Plaintiffs' claims," district court found jurisdiction over "aspects of [the] litigation not implicated by the appeal").

[2] The press release was attached to statements that were made in 2000 before a House of Representatives subcommittee that was investigating the mafia's influence on Wall Street.

judicial proceedings and to access certain judicial documents." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004); see also Press-Enterprise Co. v. Superior Court of Cal., 478 U.S. 1, 9 (1986). According to the Second Circuit, "[t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence," though it "must at times yield to more compelling interests." United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008).

In applying the common law right of access to determine whether an item can be filed under seal, the district court must (1) determine whether the item is a "judicial document," (2) determine the weight of the presumption of access to any judicial document and (3) balance countervailing interests against the presumption of access. Lugosch v. Pyramid Co., 435 F.3d 110, 119-20 (2d Cir. 2006). The test for whether an item is a "judicial document" is not whether it is filed with the court, United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"), but rather whether the item is "relevant to the performance of the judicial function and useful in the judicial process," id.[3] The weight of the presumption of access to a judicial

---

[3] Courts in the Second Circuit have found the following items to be "judicial documents" triggering a common law presumption of access: documents submitted in connection with sentencing, United States v. Tangorra, 542 F. Supp.2d 233, 237 (E.D.N.Y. 2008) (Wexler, J.), items entered into evidence at trial, In re Application of National Broadcasting Co., Inc., 635 F.2d 945, 952 (2d Cir. 1980) ("In re NBC"), audio recordings played during a bail hearing, United States v. Graham, 257 F.3d 143, 151-53 (2d Cir. 2001), submissions relating to conditions of a pretrial detainee's confinement, United States v. Basciano, Nos. 03-CR-929, 05-CR-060, 2010 WL 1685810 (E.D.N.Y. April 23, 2010) (Garaufis, J.), and search warrant applications (at least upon completion of the investigation), In re Application of Newsday, Inc., 895 F.2d 74, 79 (2d Cir. 1990). On the other hand, courts in the Second Circuit have rejected claims that documents turned over in discovery are "judicial documents," Dorsett v. County of Nassau, No. CV 10-1258, 2011 WL 130324 (E.D.N.Y. Jan. 14, 2011) (Tomlinson, M.J.), and have questioned whether scheduling submissions qualify as such, United States v. Sattar, 471 F. Supp.2d 380, 389-90 (S.D.N.Y. 2006). It should also be noted that the Second Circuit has indicated that Presentence Reports are confidential documents, United States v. Charmer Industries, 711 F.2d 1164, 1171 (2d Cir. 1983), and that Congressional statutes mandating confidentiality can overcome the common law presumption of access, In re Application of New York Times Co., 577 F.3d 401, 408 (2d Cir. 2009) (applying Title III

3

document, which falls along a "continuum," is determined by "the
role of the material at issue in the exercise of Article III
judicial power and the resultant value of such information to
those monitoring the federal courts." United States v. Amodeo,
71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II").

   In assessing whether the public's qualified First
Amendment right to access attaches to a particular item, courts
in the Second Circuit have applied two approaches.  The first is
the "experience and logic" test, which assesses "whether the
[items] have historically been open to the press and general
public and whether public access plays a significant positive
role in the functioning of the particular process in question."
Lugosch, 435 F.3d at 120 (internal quotation omitted).  The
second approach considers the extent to which the items are
derived from, or a necessary corollary of, the capacity to attend
the relevant proceedings.  Id.  Even where the First Amendment
right applies to an item,[4] it is not automatically made public,
but may be sealed "if specific, on the record findings are made
demonstrating that closure is essential to preserve higher values
and is narrowly tailored to serve that interest."  Id. (internal
quotation marks omitted).  Such findings "may be entered under
seal, if appropriate."  Aref, 533 F.3d at 82.

   Countervailing factors and higher values that must be
balanced against the common law and First Amendment rights of
access are case-specific, but have been found to include danger
to individuals, United States v. Haller, 837 F.2d 84, 87 (2d Cir.
1988); see also United States v. Doe, 63 F.3d 121, 128 (2d Cir.
1995) (countervailing factor in courtroom closure context), and
the danger of impairing law enforcement, Amodeo II, 71 F.3d at
1050.  In assessing the danger of impairing law enforcement,
courts have considered the need to protect law enforcement
techniques and procedures, Amodeo I, 44 F.3d at 147, the safety
of witnesses and law enforcement personnel, id., grand jury

---

standard for disclosure of wiretap documents rather than common
law).

   [4] Courts in the Second Circuit have found that the qualified
First Amendment right to public access applies to docket sheets,
Hartford Courant, 380 F.3d at 93, plea agreements, United States
v. Haller, 837 F.2d 84, 86-87 (2d Cir. 1988), and papers
submitted in connection with suppression and in limine motions,
In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987), but
not to wiretap applications, In re Application of New York Times
Co., 577 F.3d at 411.

4

secrecy, <u>Haller</u>, 837 F.2d at 87-88 (2d Cir. 1988), the integrity of ongoing investigations to prevent interference, flight and other obstruction, <u>Amodeo I</u>, 44 F.3d at 147; <u>Haller</u> at 88, and the ability of law enforcement to secure current and future cooperation from persons desiring confidentiality, <u>Amodeo II</u>, 71 F.3d at 1050.

## **Analysis**

In essence, the Second Circuit's cases concerning sealing require the Court to balance the public's qualified First Amendment and common law right to judicial documents against other compelling factors. Here, the compelling factors at issue are the safety of the defendant and his family and law enforcement's interest in procuring cooperation from other defendants now and in the future. That the government revealed the defendant's criminal conviction in the March 2, 2000 press release necessarily influences that balancing test. The government has no information that any person has sought to harm the defendant or his family since the press release was issued, nor that the government's ability to secure cooperation has been negatively affected. Therefore, there is not a compelling need for the continued sealing of those docket entries and documents that reveal no more information than was disclosed in the press release. Thus, the government advocates the unsealing of those docket entries and documents that merely reflect the fact that Mr. Sater was a defendant in the Eastern District of New York who pleaded guilty to participating in a RICO conspiracy and was sentenced for the commission of that offense. However, those docket entries and documents that disclose the fact that the defendant cooperated with law enforcement authorities should remain under seal.

### I. Documents and Entries to be Unsealed

Accordingly, the following entries and documents should be unsealed: 1) the docket itself should be unsealed as a necessary prerequisite to the disclosure of all other items listed below; 2) the defendant's name on the docket sheet should be changed from John Doe to Felix Sater; 3) the fact of the defendant's conviction, including the date of his guilty plea, the crime to which he pleaded guilty and the criminal information should all be unsealed. These entries and items do not mention the defendant's cooperation and reveal little more than that which was previously revealed in the press release. In addition, the public docket should reflect the date of the defendant's sentencing and the sentence issued by the Court. As will be discussed below, while several aspects of the defendant's sentencing should remain sealed, the public's understanding of how a particular defendant is sentenced is "important to the proper functioning of . . . judicial proceedings" and the

5

**A88**

public's understanding of whether justice was properly meted out.
See <u>United States v. Alcantara</u>, 369 F.3d 189, 198 (2d Cir. 2005).
Also, while there is little support for the proposition that
scheduling orders enjoy a presumption of access under the First
Amendment, <u>see United States v. Sattar</u>, 471 F. Supp.2d 380, 389-
90 (S.D.N.Y. 2006), the government does not object in this case
to the unsealing of those entries and documents that merely
reflect the scheduling of the case and other ministerial requests
and orders made and issued by the parties and the Court.

II.  <u>Documents and Entries that Should Remain Sealed</u>

The continued sealing of a limited number of documents
is essential to preserve the defendant's safety and the
government's ability to secure cooperation from other
individuals.  The defendant cooperated against members of violent
criminal organizations, including several families of LCN, among
others, that have a demonstrated record of bringing harm to those
who assist law enforcement.  <u>See</u>, <u>e.g.</u>, <u>United States v. Mancuso</u>,
2008 WL 2884397, *2 (E.D.N.Y. July 23, 2008)("[T]he Bonanno
family's willingness to interfere with the judicial process,
particularly by perpetrating violence against cooperating
witnesses, is well-documented."); <u>United States v. Cirillo</u>, 2005
WL 2300217, *2 (2d Cir. Sept. 21, 2005)("The district court's
factual finding that the Genovese crime family routinely employs
violence to further its interests was . . .  amply supported.").
Indeed, some of the individuals that the defendant helped convict
held leadership positions within their respective criminal
organizations.  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

While the presence of sealed docket entries may
implicitly convey to a knowledgeable observer that the defendant
cooperated, there is a significant difference between such
speculation and actual government confirmation of that fact.[5]  In

---

[5] In a similar context, courts have recognized a difference
in kind between media reports asserting a fact and government
documents confirming that fact.  <u>See</u>, <u>e.g.</u>, <u>Aref</u>, 533 F.3d at
76-78, 81-83 (denying media request to unseal order related to
allegedly illegal government surveillance despite anonymous
statements regarding that surveillance in a *New York Times*
article); <u>Afshar v. Department of State</u>, 702 F.2d 1125, 1130-31

6

**A89**

addition, if the defendant's cooperation were to be explicitly revealed, it would hinder the government's efforts to obtain future cooperation. See United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("[I]f . . . informants in the present or future cases anticipate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease."). This concern is especially salient here, as the defendant engaged in pro-active cooperation that at times placed him in danger and concerned matters of national security.

Accordingly, the following documents should remain sealed: 1) those scheduling, travel and other like requests that refer to the defendant's cooperation;[6] 2) the government's letter requesting that the case be related to another existing criminal case, which also explicitly mentions the defendant's cooperation; 3) the minutes of the October 23, 2009 sentencing proceeding; 4) the government's letter submitted pursuant to Section 5K1.1 of the United States Sentencing Guidelines; and 5) the Statement of Reasons, which refers to the fact that the Court issued a sentence below the Guidelines based on Section 5K1.1. With respect to the three items concerning the sentencing, each, if disclosed, would conclusively reveal the defendant's cooperation. The 5K letter and the sentencing minutes in particular would prove most dangerous, as they would specifically identify the individuals the defendant helped convict. Further, both would also reveal matters that impact national security that have not heretofore been disclosed.

**Conclusion**

For the reasons mentioned above, the Court should unseal those docket entries and documents that do not refer to the defendant's cooperation but maintain the rest of the documents under seal. The facts set forth above provide the

---

(D.C. Cir. 1983) ("[E]ven if a fact . . . is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security.")

[6] Some scheduling requests submitted by previous defense counsel refer to the fact that counsel consulted with and received consent from a law enforcement agent, rather than or in addition to an AUSA, before seeking permission from the Court allowing the defendant to travel. In light of the fact that such an arrangement makes the defendant's cooperation plain, we also request that such documents remain sealed.

Court with an ample basis to make the necessary on-the-record findings supporting the continued sealing. <u>See</u> <u>Lugosch</u>, 435 F.3d at 120. Any such findings should likely themselves be filed under seal. <u>Aref</u>, 533 F.3d at 82. In light of the fact that the docket is currently entirely under seal and inaccessible to Mr. Lerner, the government is submitting a separate letter, available to the defendant but not to the intervenors or the public, discussing each docket entry and the reason that each one should be unsealed or remain sealed.

Because this letter mentions specific facts that, if revealed, could prejudice the defendant's safety, we request that this letter remain under seal. <u>See</u> <u>United States v. Alcantara</u>, 369 F.3d 189, 200 (2d Cir. 2005) (stating that a motion in support of sealing can itself be kept under seal).

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By: _____/s_____
Todd Kaminsky
Elizabeth J. Kramer
Assistant United States Attorneys

cc : Counsel for Richard Roe
Richard Lerner, Esq.

Counsel for John Doe
Michael Beys, Esq.

8

**A91**

# Exhibit 6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, | **10 CIV 9658 (NRB) ECF** |
| Plaintiff, | **AFFIDAVIT** |
| v. | |
| JOSHUA BERNSTEIN | |
| Defendant. | |

STATE OF NEW YORK    )
                           )   ss.:
COUNTY OF NEW YORK  )

Joshua Bernstein being duly sworn, deposes and says that:

1.      This affidavit is based on personal knowledge, unless stated otherwise, and it is provided voluntarily in connection with a settlement of the claims against me in the action captioned: *John Doe v. Bernstein*, Index No. 10 Civ. 09658 (S.D.N.Y.).

2.      I was employed by Bayrock Group LLC ("Bayrock" or the "Company"), a real estate development company, from November 2006 to September 2008.

3.      During my employment at Bayrock, John Doe instructed me to maintain a back-up copy of all Bayrock files from the servers.  Mr. Doe instructed me to purchase whatever equipment was necessary, including an external hard drive, and to back up all Bayrock files, including emails, on the backup drive.

4.      I purchased an external hard drive with my personal funds and began to periodically back up Bayrock's email server onto the external hard drive (the "backup hard drive").  I then copied all the data from the back-up hard drive onto multiple DVDs and maintained hard copies of some of the data.  Subsequently, the original hard drive I

had purchased broke and I disposed of it prior to the *John Doe v. Bernstein* action.
However, I still possessed multiple DVDs containing data from the hard drive and hard
copies of some of the data (hereinafter, also referred to as the "back-up hard drive").

     5.     Unbeknownst to me until after my employment Bayrock's corporate email
system and - by extension the back-up hard drive – contained documents concerning the
federal criminal prosecution of Mr. Doe ("Doe's Documents"), including:

        a)  A Cooperation Agreement, dated December 10, 1998;

        b)  A United States Department of Justice Financial Statement, dated
             December 10, 1998;

        c)  A Pre-Sentence Investigation Report, dated June 18, 2004;

        d)  A proffer agreement, dated October 2, 1998; and

(the foregoing documents being defined as the "Confidential Doe Documents").

     6.     The back-up hard drive also contained communications between Doe and
his counsel, and communications between Bayrock and its counsel.

     7.     In or about September, 2008, I ceased working for the Company.

     8.     After my employment ended, Bayrock sent me a letter requesting that I
return "[my] blackberry and all other company property in [my] possession or control,
including the hard drives which were removed from the computer in [my] office." *See*
Exhibit ("Ex.") 1. Similarly, in an email dated in or about October 3, 2008, John Doe
wrote, "Josh you had downloaded all emails on to a hard drive I ask you to get I would
like to get that please." [sic] *See* Ex. 2. Although Bayrock and John Doe asked me to
return the back-up hard drive, I kept it anyway. I believed I was entitled to do so because
Bayrock and John Doe had failed after numerous requests to reimburse all of my

outstanding business expenses, including my personal expense of purchasing the back-up hard drive.

9. In or about February 2009, I sued Bayrock in New York State Supreme Court, Westchester County, for, among other things, unpaid wages, bonuses, and reimbursements, including for the back-up hard drive (the "Westchester Action"). I learned that Jody Kriss, my former colleague at Bayrock who was primarily responsibly for the finances of the firm, was also suing Bayrock in an action in Delaware (the "Delaware Action"). Frederick Oberlander, Esq. was the attorney representing him in the Delaware Action.

10. After my employment with Bayrock ended, I informed Mr. Kriss that I possessed Bayrock's backup hard drive. I also showed Mr. Kriss the letter that Bayrock had sent me requesting that I return Bayrock's property. *See* Ex. 1.

11. Mr. Kriss told me that if I cooperated with him and helped him in the pursuit of his claims against Bayrock and other related parties, he would give me a piece of whatever he recovered from them. I understood this to mean that he wanted me to share the data on the back-up hard drive, or any other information I possessed, with him to assist him.

12. Mr. Kriss told me that his lawyer was Frederick Oberlander. When Mr. Oberlander and I spoke, we discussed the facts and circumstances of my case and his client's case.

13. At a later date, Mr. Oberlander and I discussed the fact that I possessed the back-up hard drive. Initially, I had assumed that Mr. Kriss had already informed Mr. Oberlander that I had obtained the back-up hard drive as part of my duties as an

employee at Bayrock. Mr. Oberlander assured me that the documents on the hard drive were not stolen and that as a legal matter I had every right to possess the back-up hard drive. He further sent me emails containing legal authority indicating that, even if the documents were stolen, they could still be used in court. *See* Ex. 3

14.  Mr. Oberlander told me that he would like to review the back-up hard drive, along with other related evidence for my case against Bayrock, because he had reason to believe that bad things happened at Bayrock. Mr. Oberlander also told me that Mr. Kriss and I may have a common interest against Bayrock.

15.  After apprising me of our common interest, Mr. Oberlander then volunteered to represent me in the Westchester Action for free. He also convinced me that, because of his representation of Mr. Kriss and Eugene Borokovich, an associate of Tevfik Arif, one of Bayrock's principals at the time, he had extensive knowledge of all the events that had taken place at Bayrock and was familiar with all of the key individuals at Bayrock, including John Doe.

16.  Mr. Oberlander provided me a retainer agreement, dated February 28, 2010 (the "Retainer Agreement"), in which he attempted to explain the nature of the "Common Interest Privilege." *See* Ex. 4, Retainer Agreement. The Retainer Agreement was a 7-page document, much of which I did not understand. Mr. Oberlander also attempted to orally explain the privilege to me.

17.  According to the Retainer Agreement, "Jody [and I] share a common interest in enforcing rights to money due each of [us] pursuant to contractual or equity or similar interests in Bayrock companies…" *Id.*, at pg. 2, ¶ 4, and that "a fundamental purpose for this common interest agreement is the pooling and free use of such

information without resort to compelled disclosure or production or resistance or

hostility." *Id.* at pg. 3, ¶ 2.

18.     Furthermore, based on the Retainer Agreement, I believed that Mr.

Oberlander acknowledged that Mr. Kriss already knew that I possessed the back-up hard

drive with the documents on them. Specifically, he wrote:

> So for example, none of the disk with Bayrock server files, its existence, its
> contents, and your knowledge or possession thereof are privileged, or for that
> matter confidential with respect to Jody, **who obviously knows all about it, as**
> **we have already discussed**, and all are subject to Mr. Kriss's and others'
> subpoena, use, and production, and you may not assume, and have no reasonable
> expectation of, confidentiality or privilege as to the disk and your possession or
> knowledge of it and its contents.

*Id.* at pg. 3, ¶ 1 (emphasis added).

He also wrote:

> We have agreed that the disk and files are not confidential. Therefore, whatever's
> on [the hard drive] Jody gets to know and vice versa.

*Id.* at pg. 5, ¶ 8.

19.     On or about February 28, 2010, I signed the Retainer Agreement. I did so

because I believed that Mr. Oberlander's extensive knowledge of Bayrock and its

principals and could assist me in my claims against Bayrock. Specifically, Mr.

Oberlander had told me that he could favorably settle the Westchester Action on my

behalf and he was to depose Bayrock's General Counsel, Julius Schwartz, Esq. Mr.

Oberlander signed the Retainer Agreement "on behalf of Jody Kriss by his attorney, who

may as set forth herein above also be at some immediately future time the special, limited

attorney of Josh Bernstein". *Id.* at pg. 7.

20.     I did not pay Mr. Oberlander any legal fees for his representation of me. Mr. Oberlander told me he was volunteering his services for free because Mr. Kriss and I had a "common interest" against similar defendants.

21.     Accordingly, after I signed the Retainer Agreement, I provided Mr. Oberlander with unfettered access to the information from the back-up hard drive. One night in late February 2010, Mr. Oberlander came over to my apartment in New York City to review the evidence on the hard drive. Mr. Oberlander and I were the only ones in the room, and he sat at my desk and used the search function on my computer to search for relevant documents that originated from the back-up hard drive. He searched for several hours. He printed documents and emailed files, which I believe may have gone directly to his personal email address. At one point, Mr. Oberlander asked me if I had a "keystroke logger," which tracks what someone types on a keyboard. I told him I did not have such a program.

22.     I was unaware of all the search terms Mr. Oberlander used to retrieve documents. However, I recall some search terms he used, including at least one law firm "Roberts & Holland" (which was counsel to Bayrock); "Elizabeth Theiriot;" the "FL Group;" and "Alex Salomon" (whose accounting firm represents Bayrock). As he was doing these searches, he would ask if I heard of these names and what I knew about them. On other occasions, names such as Duval & Stachenfeld, Nixon Peabody and other law firms representing Bayrock were also brought up.

23.     Oberlander told me that, with his knowledge of the actors in the case, he could settle the Westchester Action for me on very favorable terms. Mr. Oberlander said that he could either obtain the documents as he was doing, or via subpoena. Mr.

Oberlander again explained to me that the documents from the hard drive were not privileged and confidential. He later said they were exempt because of the "crime fraud exception". He also told me that, as a member of Bayrock, Mr. Kriss was entitled to all the documents on the back-up hard drive.

24.     I now realize that, by giving Mr. Oberlander access to the back-up hard drive, I provided him access to Doe's Confidential Documents. However, at the time, I was not aware of, nor did I believe, that these documents were privileged or confidential, or that there could be any limitation or restrictions to me disseminating them to my legal counsel. I believed that, because Mr. Oberlander was an attorney, he was complying with the law.

25.     Subsequently, on or about March 5, 2010 and March 9, 2010, Mr. Oberlander deposed Julius Schwarz in the Westchester Action.

26.     To date, I have not paid Mr. Oberlander for any legal work that he performed for me, nor do I owe him any money.

27.     Five months later, in or about August 2010, Mr. Oberlander and Mr. Richard Lerner, his counsel, asked me to provide them with a Declaration, stating that the court needed one.

28.     I complied with their request and assisted in preparing the Declaration, which essentially stated the facts and circumstances of how Mr. Oberlander came to represent me and how Mr. Oberlander came to possess Doe's Confidential Documents., which were contained on the hard drive . *See* Ex. 5.

29.     After listening to Mr. Oberlander's deposition of Mr. Schwartz, it occurred to me that many of his questions did not seem directly related to the

Westchester Action for which I had retained him but may have related to the lawsuit that

Mr. Kriss had against Bayrock.

    30.    Aside from the deposition he took in the Westchester action, Mr.

Oberlander has not provided me any other legal representation.

 

                                    Joshua Bernstein

Sworn to Before me

This 19th Day of September , 2011

Notary Public

DAVID C. WROBEL
NOTARY PUBLIC, State of New York
No. 02WR6086511
Qualified in Westchester County
Commission Expires January 21, 2015

# Exhibit 7

| from | **fred55@aol.com** |
| to | joshsemail@gmail.com, |
| | tenslaw@aol.com, |
| | arnoldbernstein@gmail.com |
| date | Thu, Mar 4, 2010 at 7:13 PM |
| subject | further clarity |
| mailed-by | aol.com |

all i want is the minimal possible answer which is

"felix satter"

i will mark and introduce them tmw. if martin objects
i will go right up his butt with every federal crime that
the emails are evidence of (not all of them) and the
privilege exceptions and waivers get it all down on that
transcript on the record

i am so not kidding this is not a game this is not a $150,000
case anymore and DO NOT READ THIS WRONG this is a team
and my job is to shake the living daylights out of them and it
starts NOW

as i said stolen emails are admissible, period. end of story.
i mean admissible into evidence let alone discovery.

and these arent stolen.

# Exhibit 8

**From:** fred55@aol.com [mailto:fred55@aol.com]
**Sent:** Wednesday, May 12, 2010 12:33 PM
**To:** Kriss, Ronald (Sh-Mia); Kriss, Ronald (Sh-Mia)
**Subject:** Fwd: complaint, sdny, salomon, weinrich, & salomon & co.

Ron --

I recommend you forward this to Julius with the comment from me that there are three alternatives here:

(a) I file publicly today.

(b) I file under seal today.

(c) He arrange a tolling agreement with EVERY defendant but nixon peabody.

I don't care how many people he has to get on the phone and how fast he has to work. He had years to give back the money and now it's over. He can get Brian Halberg to help him.

I believe it's possible to get this in under seal if Bayrock joins in a joint motion in part 1 to seal the complaint pending a redaction agreement with the assignedm judge. but there are never any guarantees.

Thanks,

FMO

# Exhibit 9



10-2905-cr
Roe v. United States

**MANDATE**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to summary orders filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 29th day of June, two thousand eleven.

PRESENT:

> JOSÉ A. CABRANES,
> ROSEMARY S. POOLER,
> DENNY CHIN,
>
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RICHARD ROE, an attorney,

> *Appellant,*

JANE DOE AND JOHN DOE II, clients of Richard Roe,

> *Pro Se Appellants,*

v.

UNITED STATES OF AMERICA,

> *Appellee,*

JOHN DOE,

> *Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Nos. 10-2905-cr, 11-479-cr, 11-1408-cr, 11-1411-cr, 11-1666-cr, 11-1906-cr, 11-2425-cr

**FOR APPELLANT RICHARD ROE:**

Richard E. Lerner, Wilson Elser Moskowitz Edelman & Dicker LLP (David A. Schulz and Jacob P. Goldstein, Levine Sullivan Koch & Schulz LLP; Paul G. Cassell, S.J. Quinney College of Law at the University of Utah, *on the brief*), New York, NY and Salt Lake City, UT.

1

## MANDATE ISSUED ON 12/20/2011

**FOR APPELLEE UNITED STATES OF AMERICA:**    Todd Kaminsky, Assistant United States Attorney (Peter A. Norling and Elizabeth J. Kramer, Assistant United States Attorneys; Loretta E. Lynch, United States Attorney, *on the brief*), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY.

**FOR DEFENDANT-APPELLEE JOHN DOE:**    Nader Mobargha, Beys, Stein & Mobargha LLP, New York, NY.*

Appeal from a May 18, 2010 temporary restraining order, a June 21, 2010 permanent injunction, a July 20, 2010 temporary restraining order, and a March 23, 2011 scheduling order issued by the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*); appeal also from orders of April 1, 2011, April 4, 2011, and May 13, 2011 of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court permanently enjoining the dissemination of John Doe's Pre-Sentence Report is **AFFIRMED**.

The appeal in Docket No. 10-2905-cr is **DISMISSED** in part, and the appeal in Docket No. 11-1408-cr is **DISMISSED** in full, insofar as they challenge the District Court's temporary restraining orders of May 18, 2010 and July 20, 2010 and insofar as they challenge any related orders that may have been entered or re-affirmed on May 28, June 11, June 14, or June 28, 2010.

The appeal in Docket No. 11-1411-cr is **DISMISSED** because appellant has waived his opportunity to challenge Judge Brian M. Cogan's orders of April 1, 2011 and April 4, 2011.

The appeal in Docket No. 11-1906-cr is **DISMISSED** for want of jurisdiction.

With respect to Docket No. 11-2425-cr, the order of Judge Cogan is **AFFIRMED**.

The appeal in Docket No. 11-1666-cr by *pro se* appellants is **DISMISSED** in all respects except insofar as it challenges the District Court's permanent injunction against the dissemination of Doe's PSR; with respect to that claim, the judgment of the District Court is **AFFIRMED**.

The Clerk of Court is **DIRECTED** to close Docket Nos. 11-1408-cr, 11-1411-cr, 11-1906-cr, and 11-2425-cr upon entry of this order. The Clerk of Court is also **DIRECTED** to close Docket No. 11-479-cr to the extent it was not already closed upon entry of our February 14, 2011 order. *See* Order, *Roe v. United States*, Docket Nos. 10-2905-cr, 11-479-cr (2d Cir. Feb. 14, 2011).

The remainder of this cause (Docket Nos. 10-2905-cr, 11-1666-cr) is **REMANDED** to the District Court (I. Leo Glasser, *Judge*) for proceedings consistent with this order and with instructions (i) to rule upon the government's unsealing motion of March 17, 2011, (ii) to issue a final determination regarding whether the dissemination of the other (non-PSR) sealed documents in John Doe's criminal case, particularly those that refer to Doe's cooperation, should be enjoined, and (iii) in the event that a final determination regarding

---

* Pursuant to our order of February 14, 2011, John Doe was not invited to brief this appeal, nor has he moved to submit a brief. However, Doe has filed various letters and opposition papers in response to Roe's motions throughout the course of the appeal.

2

Case 1:13-cv-03905-LGS-FM Document 23-9 Filed 08/21/13 Page 46 of 10
Case 1:98-cr-01101-ILG Document 125 *SEALED* Filed 12/20/11 Page 3 of 9 PageID #:
1481

the dissemination of the other sealed documents does not result in an injunction against the dissemination of documents referring to Doe's cooperation, to enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court. In the event that the government elects not to appeal the unsealing of any documents that may be unsealed by the District Court, the government is **ORDERED** to notify the District Court and our Court of its decision not to pursue the appeal within the otherwise applicable time for taking the appeal.

It is further **ORDERED** that, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), this panel shall retain jurisdiction over any further appeals from proceedings in the District Court, including any further petitions for extraordinary writs.

It is hereby **ORDERED** that Judge Cogan shall retain jurisdiction for the limited purpose of enforcing our February 14, 2011 mandate—that is, to ensure the parties' compliance with the orders of this Court and any that have been, or may hereafter be, entered by Judge Glasser. Our panel retains jurisdiction pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), over any appeals from any orders or judgments entered by Judge Cogan.

Finally, it is **ORDERED** that appellant Richard Roe is hereby warned that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute—including the filing of an appeal from a March 23, 2011 scheduling order that obviously was not a final order nor subject to any of the exceptions to the "final judgment rule," *see* Part (iv), *post*—and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions, including the imposition of leave-to-file restrictions, requirements of notice to other federal courts, and monetary penalties.

The Clerk of Court is **DIRECTED** to transmit a copy of this order to Judge Cogan.

## INTRODUCTION

Appellant Richard Roe ("Roe"), an attorney, and two of his clients, *pro se*, appeal from a May 18, 2010 temporary restraining order, a June 21, 2010 permanent injunction, a July 20, 2010 temporary restraining order, and a March 23, 2011 scheduling order entered by Judge Glasser. Because the *pro se* appellants incorporate Roe's arguments as their own and make no other independent legal claims, our legal conclusions apply to all appellants, though our order refers principally to Roe.

## BACKGROUND

### A. The SDNY Complaint and Judge Glasser's Initial Rulings

On May 10, 2010, Richard Roe publicly filed a civil RICO complaint against John Doe ("Doe") and other defendants in the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*). Attached to the complaint were exhibits that included sealed materials from Doe's criminal case in the Eastern District of New York. The complaint itself explicitly referenced the confidential information in the exhibits, including the fact that Doe had cooperated with the government.

On May 18, 2010, upon an application by Doe, Judge Glasser issued an order to show cause why a preliminary injunction should not be entered against Roe's dissemination of the sealed materials from Doe's criminal case. He also temporarily restrained Roe and his clients from "disseminating the Sealed and Confidential Materials or [the] information therein." The materials in Roe's possession included a 2004 Pre-Sentence Report ("PSR"), two proffer agreements, Doe's cooperation agreement, a criminal complaint, and a criminal information. The TRO was later extended multiple times without objection (and, on some occasions, at Roe's request) until a hearing could be held on June 21, 2010.

3

At the June 21, 2010 hearing, Judge Glasser heard testimony from Roe before issuing a permanent injunction against dissemination of the 2004 PSR, pursuant to *United States v. Charmer Industries, Inc.*, 711 F.2d 1164 (2d Cir. 1983). He also directed Roe to return the PSR to the United States Attorney's Office (Roe eventually returned the PSR directly to the court). With respect to the other sealed documents, Judge Glasser extended his temporary restraining order until July 20, 2010, with Roe's consent, and requested that the parties brief whether the court had the authority to permanently enjoin the dissemination of those documents.

On July 9, 2010, Roe filed a notice of appeal concerning Judge Glasser's May 18, 2010 and June 21, 2010 orders.

On July 20, 2010, Judge Glasser held another hearing at which he recited his factual findings, including: (1) that Roe knew the documents at issue were sealed prior to his public filing of those documents; (2) that one of Roe's clients had "wrongfully taken" and had "no legal right to those documents"; and (3) that dissemination of the documents would cause "irreparable harm, which is imminent to Mr. John Doe . . . [and] would put Mr. John Doe's safety at risk." Over Roe's objection, Judge Glasser re-affirmed his ruling of June 21, 2010 regarding the permanent injunction against dissemination of the PSR and extended his TRO with respect to the other sealed documents for another 10 days. He further ordered that the permanent injunction and TRO should cover all copies of the documents at issue, and that all originals and copies of such documents were to be returned or destroyed until Roe met his "burden with respect to whether or not there is some need to maintain those documents or to keep them." The TRO was subsequently extended to August 13, 2010, by request of the parties, while they negotiated a possible settlement.

On August 10, 2010, Roe filed a notice of appeal concerning the July 20, 2010 order that re-affirmed the permanent injunction and extended the TRO.[1] Judge Glasser has not since issued a final ruling regarding the disclosure of the non-PSR sealed documents.

### B. Our February 14, 2011 Order and Judge Cogan's Assignment to Enforce Our Mandate

On February 14, 2011, we heard oral argument on the government's motion for a temporary stay of the unsealing of the appeal. In an order issued that day orally and later in written form, we granted the government's request to keep the appeal under seal and temporarily enjoined Roe and his associates from distributing or revealing in any way any documents or contents thereof subject to sealing orders in Doe's criminal case or on appeal. *See* Order, *Roe v. United States*, Docket Nos. 10-2905-cr, 11-479-cr (2d Cir. Feb. 14, 2011). We also remanded the cause to the District Court for the Eastern District of New York for the limited purpose of allowing the Chief Judge to assign a District Judge to "implement[ ] and oversee[ ] compliance with our orders and the orders previously entered by Judge Glasser." *Id.* Pursuant to our order, then-Chief Judge Dearie referred the case to Judge Brian M. Cogan for enforcement of this limited mandate.

---

[1] On February 7, 2011, Roe also filed a petition for a writ of mandamus requesting that we order the District Court to withdraw its various injunctive and temporary restraining orders and publicly docket Doe's criminal case. We denied this petition in our order of February 14, 2011. *See* Order, *Roe v. United States*, Docket Nos. 10-2905-cr, 11-479-cr (2d Cir. Feb. 14, 2011).

4

On March 1, 2011, Roe submitted a letter requesting "clarification" from Judge Cogan that, notwithstanding our order of February 14, 2011, he was permitted to disseminate certain information within the sealed documents because that information was allegedly public knowledge. On April 1, 2011, Judge Cogan held a hearing regarding Roe's request. At that hearing Judge Cogan learned that Roe had not yet destroyed or returned certain electronic and paper copies of the original PSR and other sealed documents, in violation of Judge Glasser's July 20, 2010 order. Accordingly, by oral order on April 1, 2011, and by a subsequent written order of April 4, 2011, Judge Cogan ordered Roe to destroy or return any remaining electronic or paper copies of the PSR and other sealed documents, without prejudice to his ability to seek the documents if any of the various sealing orders were vacated by our Court. *See* Order, *United States v. Doe* (E.D.N.Y. Apr. 4, 2011).

On April 8, 2011, Roe filed a notice of appeal with respect to Judge Cogan's orders of April 1 and April 4, 2011.

On May 13, 2011, Judge Cogan issued a written order denying Roe's March 1, 2011 request to release certain information contained within the sealed documents. After opining that information "available to the public" was not covered by our injunction, Judge Cogan nevertheless ordered that Roe could not "extrapolate from sealed documents . . . [which] could easily be combined with and thereby tainted by Roe's knowledge of non-public sealed information." Order, *United States v. Doe* (E.D.N.Y. May 13, 2011). Upon a review of the specific statements and information that Roe intended to release, Judge Cogan further concluded that "[i]t seems obvious that Roe is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective." *Id.*

On June 15, 2011, Roe filed a notice of appeal with respect to Judge Cogan's order of May 13, 2011.

### C. Recent Events before Judge Glasser

On March 17, 2011, after learning that Doe's criminal conviction had been disclosed in a press release by the U.S. Attorney's Office for the Eastern District of New York, the government moved before Judge Glasser for a limited unsealing of the docket and certain documents in Doe's underlying criminal case. The government explicitly sought to unseal only those docket entries and documents that did not refer to Doe's cooperation with the government.

On March 23, 2011, Judge Glasser issued a scheduling order in which he stated that he was "uncertain of [his] continuing jurisdiction to address the controversy presented by [Roe's February 4, 2011 'demand' that the case be docketed and the government's March 17, 2011 motion for a limited unsealing of the case]." Scheduling Order, *United States v. Doe* (E.D.N.Y. March 23, 2011). Accordingly, he requested that "the government, Richard Roe and John Doe [ ] brief the issue of the Court's jurisdiction and submit their briefs simultaneously on April 8th, 2011." *Id.*

In addition to setting the briefing schedule, the order reflected Judge Glasser's factual finding that Roe had "knowingly and intentionally flouted a Court order" by "unilaterally deciding" to disclose information in Doe's sealed criminal case. *Id.*

5

Case 1:13-cv-03905-LGS-FM Document 83-9 Filed 08/21/13 Page 76 of 10
Case 1:98-cr-01101-ILG  Document 125 *SEALED*  Filed 12/20/11  Page 6 of 9 PageID #:
1484

On May 11, 2011, Roe filed a notice of appeal concerning Judge Glasser's March 23, 2011 order.

On April 19, 2011, upon requests from both Roe and the government, we issued an order confirming that Judge Glasser retained jurisdiction "to decide the government's motion to unseal, as well as to decide any other pending or future motions to unseal that would not result in the public disclosure of docket entries or underlying documents that reference John Doe's cooperation with the government." Order, *Roe v. United States*, Docket Nos. 10-2905-cr, 11-479-cr (2d Cir. Apr. 19, 2011) (emphasis in original).

Judge Glasser has not yet acted on the government's March 17, 2011 motion to unseal.

We assume the parties' familiarity with the remaining facts and procedural history of the case.

## DISCUSSION

### (i)

On appeal, Roe argues that the District Court violated his First Amendment rights in permanently enjoining the dissemination of Doe's PSR and requiring him to return it to the government. We review a district court's grant of a permanent injunction for abuse of discretion. *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining "abuse of discretion").

Under *United States v. Charmer Industries, Inc.*, 711 F.2d 1164 (2d Cir. 1983), third parties must satisfy a heightened standard in order to obtain access to a PSR, which is a sealed "court document designed and treated principally as an aid to the court in sentencing." *Id.* at 1176. Specifically, a third party seeking access to a PSR bears the burden of making a "compelling demonstration that disclosure of the report is required to meet the ends of justice." *Charmer Indus., Inc.*, 711 F.2d at 1175.

Here, Judge Glasser, who had presided over Doe's criminal case and was therefore familiar with the extent of Doe's cooperation and his assistance in obtaining the convictions of myriad violent criminals, explicitly entered a finding that releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk.

Judge Glasser also found that Roe had improperly refused to submit an application to the Court to unseal the report, despite his knowledge that the report was sealed and came from a sealed criminal case. *See id.* at 1170 ("[T]he presentence report is a court document and is to be used by nonjudicial federal agencies and others *only with the permission of the court*." (emphasis supplied)); *see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007) (enforcing a preliminary injunction requiring the return of sealed documents pursuant to the court's "inherent authority to enforce [its] orders"), *aff'd*, 617 F.3d 186 (2d Cir. 2010). Judge Glasser found, instead, that Roe had determined unilaterally that he was entitled to publicly disclose the report.

Judge Glasser balanced his findings of physical danger to Doe and the intentional defiance of a sealing order by Roe—findings that we hold were not clearly erroneous—against Roe's asserted need to use the PSR in the SDNY civil case to establish that Doe had defrauded investors and others by not revealing his

6

conviction. Because proof of Doe's conviction (as opposed to his cooperation) remains available from other public documents—including a press release by the United States Attorney's Office for the Eastern District of New York—and because the PSR is an incomplete and ultimately inadmissible document to which neither Doe nor the government will ever have the opportunity to object, *see Charmer Indus., Inc.,* 711 F.2d at 1170–71, the PSR is of dubious utility in the civil case except as a tool to intimidate and harass Doe by subjecting him to danger. Accordingly and in sum, disclosure of the report is not "required to meet the ends of justice," *id.* at 1175—indeed, quite the opposite. The District Court did not err, much less abuse its discretion, in imposing a permanent injunction against dissemination of the PSR. *See, e.g., United States v. Charmer Indus., Inc.,* 711 F.2d at 1177 (stating that a "central element in the showing required of a third person seeking disclosure is the degree to which the information in the [PSR] cannot be obtained from other sources").

(ii)

Doe argues that the District Court violated his First Amendment rights by temporarily restraining his continued possession and dissemination of the other sealed documents from Doe's criminal case.

A TRO, which is appropriate when "speed is needed . . . to prevent irreparable harm," *Garcia v. Yonkers Sch. Dist.,* 561 F.3d 97, 106 (2d Cir. 2009) (internal quotation marks omitted), is not a final judgment and is not ordinarily appealable. *See Gen. Motors Corp. v. Gibson Chem. & Oil Corp.,* 786 F.2d 105, 108 (2d Cir. 1986). To the extent we may, in our discretion, exercise pendent jurisdiction over the order pursuant to *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 45 (1995), we decline to do so here. Accordingly, Roe's appeal is dismissed insofar as it challenges the District Court's temporary restraining orders of May 18, 2010 and July 20, 2010.

(iii)

On April 8, 2011, Roe filed a notice of appeal with respect to Judge Cogan's orders of April 1 and April 4, 2011. Roe did not raise any arguments with respect to that appeal in his reply brief of April 18, 2011, nor has he filed a motion for leave to submit supplemental briefing.[2] Accordingly, we hold that Roe has waived his right to challenge Judge Cogan's orders of April 1 and April 4, 2011. *See, e.g., In re Wireless Data, Inc.,* 547 F.3d 484, 492 (2d Cir. 2008) (deeming arguments not raised on appeal waived).

His appeal from those orders is hereby dismissed.

(iv)

Roe appeals from Judge Glasser's scheduling order of March 23, 2011, insofar as it reflects Judge Glasser's factual finding that Roe "knowingly and intentionally flouted" a court order. Scheduling Order, *United States v. Doe* (E.D.N.Y. Mar. 23, 2011).

---

[2] Although arguments raised for the first time in a reply brief are generally deemed waived, *see Connecticut Bar Ass'n v. United States,* 620 F.3d 81, 91 n.13 (2d Cir. 2010), Roe's opening brief was filed on March 28, 2011, and therefore could not have raised any arguments with respect to Judge Cogan's orders of April 1 and April 4, 2011. Accordingly, we do not base our finding of waiver on Roe's failure to discuss Judge Cogan's orders in his opening brief; rather, our holding is based on his failure to discuss them in his reply brief or in a motion for leave to submit supplemental briefing.

7

We do not have jurisdiction over Roe's claim because the March 23, 2011 order was not a final order pursuant to 28 U.S.C. § 1291, nor are any of the exceptions to the "final judgment rule" applicable in the circumstances presented. *See generally Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 745 (2d Cir. 2000) (discussing the "final judgment rule" and its exceptions).

Accordingly, Roe's appeal from the March 23, 2011 order is dismissed.

(v)

On June 15, 2011, Roe filed a notice of appeal with respect to Judge Cogan's order of May 13, 2011. We review Judge Cogan's interpretation of our February 14, 2011 order and his interpretation of the sealing orders of Judge Glasser *de novo*.

After an item-by-item review of the specific information that Roe wished to publicly release—including (a) John Doe's real name, linked with his criminal docket number, (b) the specific nature of the predicate acts leading to his criminal conviction, and (c) the sentence imposed by the District Court—Judge Cogan concluded that the information either was not public at all or was not public to the extent and with the level of detail that Roe intended to disclose. Accordingly, he denied Roe's request for permission to release the information. Order, *United States v. Doe* (E.D.N.Y. May 13, 2011). Upon our own independent review, we agree with Judge Cogan that Roe's proposed disclosures would have violated our temporary injunction of February 14, 2011 and the sealing orders of Judge Glasser. Judge Cogan's order of May 13, 2011 is affirmed.

## CONCLUSION

To summarize:

(1) The judgment of the District Court permanently enjoining the dissemination of John Doe's Pre-Sentence Report is **AFFIRMED**.

(2) The appeal in Docket No. 10-2905-cr is **DISMISSED** in part, and the appeal in Docket No. 11-1408-cr is **DISMISSED** in full, insofar as they challenge the District Court's temporary restraining orders of May 18, 2010 and July 20, 2010 and insofar as they challenge any related orders that may have been entered or re-affirmed on May 28, June 11, June 14, or June 21, 2010.

(3) The appeal in Docket No. 11-1411-cr is **DISMISSED** because Roe has waived his opportunity to challenge Judge Brian M. Cogan's orders of April 1, 2011 and April 4, 2011.

(4) The appeal in Docket No. 11-1906-cr is **DISMISSED** for want of jurisdiction.

(5) With respect to Docket No. 11-2425-cr, the order of Judge Cogan is **AFFIRMED**.

(6) The appeal in Docket No. 11-1666-cr by *pro se* appellants is **DISMISSED** in all respects except insofar as it challenges the District Court's permanent injunction against the dissemination of Doe's PSR; with respect to that claim, the judgment of the District Court is **AFFIRMED**.

(7) The Clerk of Court is **DIRECTED** to close Docket Nos. 11-1408-cr, 11-1411-cr, 11-1906-cr, and 11-2425-cr upon entry of this order. The Clerk of Court is also **DIRECTED** to close Docket No. 11-479-cr to the extent it was not already closed upon entry of our February 14, 2011 order. *See* Order, *Roe v. United States*, Docket Nos. 10-2905-cr, 11-479-cr (2d Cir. Feb. 14, 2011).

(8) The remainder of this cause (Docket Nos. 10-2905-cr, 11-1666-cr) is **REMANDED** to the

8

**A113**

District Court (I. Leo Glasser, *Judge*) for proceedings consistent with this order and with instructions (i) to rule upon the government's unsealing motion of March 17, 2011, (ii) to issue a final determination regarding whether the dissemination of the other (non-PSR) sealed documents in John Doe's criminal case, particularly those that refer to Doe's cooperation, should be enjoined, and (iii) in the event that a final determination regarding the dissemination of the other sealed documents does *not* result in an injunction against the dissemination of documents referring to Doe's cooperation, to enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court. In the event that the government elects not to appeal the unsealing of any documents that may be unsealed by the District Court, the government is **ORDERED** to notify the District Court and our Court of its decision not to pursue the appeal within the otherwise applicable time for taking the appeal.

(9) It is further **ORDERED** that, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), this panel shall retain jurisdiction over any further appeals from proceedings in the District Court, including any further petitions for extraordinary writs.

(10) It is hereby **ORDERED** that Judge Cogan shall retain jurisdiction for the limited purpose of enforcing our February 14, 2011 mandate—that is, to ensure the parties' compliance with the orders of this Court and any that have been, or may hereafter be, entered by Judge Glasser. Our panel retains jurisdiction pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), over any appeals from any orders or judgments entered by Judge Cogan.

(11) Finally, it is **ORDERED** that appellant Richard Roe is hereby warned that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute—including the filing of an appeal from a March 23, 2011 scheduling order that obviously was not a final order nor subject to any of the exceptions to the "final judgment rule," *see* Part (iv), *ante*—and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions, including the imposition of leave-to-file restrictions, requirements of notice to other federal courts, and monetary penalties.

(12) The Clerk of Court is **DIRECTED** to transmit a copy of this order to Judge Cogan.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

**True Copy**
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

# Exhibit 10



# LAW OFFICE OF FREDERICK M. OBERLANDER

**FREDERICK M. OBERLANDER**
ATTORNEY-AT-LAW

fred55@aol.com

28 SYCAMORE LANE (PO BOX 1870)
MONTAUK, NEW YORK 11954
TELEPHONE 212.826.0357
FAX 212.202.7624

November 9, 2010

**CANCELLATION OF STIPULATED STANDSTILL**
**COMMUNICATION IN CONTEMPLATION OF SETTLEMENT**

Brian Herman, Esq.
Morgan Lewis
(by email, facsimile, and Fedex)

Re: *Kriss et al. v. Bayrock Group LLC et al.*    SDNY 10 CIV 3959
      *United States v. John Doe*                        EDNY 98 CR 1101

Dear Mr. Herman:

Please take note that I myself in my own behalf, and as counsel for and in behalf of my clients Mr. Kriss and Mr. Ejekam, declare the stipulated standstill agreement of August 12, 2010 in re EDNY 98 CR 1101 to be cancelled as to all three of us, as of right, such cancellation to be effective Tuesday, November 16, 2010. I and my clients reserve all other rights thereunder, including without limitation all other rights to cancellation as may exist.

As you know, Plaintiffs have determined that dozens of copies of the complaint and exhibits were sent out by third parties acting on their own, primarily by Mr. Schwarz, prior to any court ever ruling on anything, and then circulated by them and those who received them. There isn't anything you can do about it. There is no legal recourse to anyone.

If you wish Mr. Sater's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public. The only way to try to prevent worldwide notoriety will be a globally stipulated sealed confidentiality order accompanying a global settlement. No prior restraint ever was possible and thanks to your litigation in EDNY and what it revealed and the transcripts thereof, all you have accomplished now is to guarantee massive public interest in the cover-up not only of the Sater conviction but the super sealed files and the evasion of mandatory restitution of the $10,000,000 (give or take) that Plaintiffs can allege Mr. Sater took out of Bayrock and the wrongful concealment of the $600,000,000 RICO chose in action available against Mr. Sater, concealments themselves RICO predicates, which by definition make all these matters of public interest so beyond any First Amendment threshold as to make silly any attempt to enjoin.

I am sending separately a litigation standstill agreement for the SDNY matter, which is in everyone's interest and which matches in substance and duration the standstill the Bayrock defendants (including Mr. Schwarz) all signed two weeks ago. It includes a stipulation as to serving the original complaint as filed.

If you don't stipulate I'll get it so ordered anyway because (as Judge Glaser himself pointed out) the issue of dissemination is moot, but you'll have wasted more time and be that much closer to the time when Judge Buchwald orders this public and your client finds this on the front pages everywhere, including New York, Iceland, Turkey, and Kazakhstan, and all the other plaintiffs worldwide, including Glitnir (which already knows of the EDNY criminal matter from public filings but not yet about your client), join the party.

I can with confidence predict from the settlement discussions I've had that all the defendants will be delighted to keep this quiet, if it is in Plaintiffs' interests to ask them to do so and if such can be done while allowing Judge Buchwald to respect the presumptive common law right of access to civil litigation filings.

You have two friends, Plaintiffs and the Second Circuit, where it is Holy Grail to protect sealed and stipulated confidential civil settlement agreements even against grand jury subpoena. But first there has to be such a settlement agreement. And that lies in the discretion of Plaintiffs. If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain.

No power on this earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies. You already saw what *Courthouse News* thought of it, and everything else I file about Bayrock, entirely without my or my clients' involvement. Only a stipulated sealed confidential settlement agreement Plaintiffs find acceptable, executed very soon, can stop that.

You claim to be worried about Mr. Sater's notoriety yet all you managed to do is get back to where we were in May with the decidedly non-trivial addition of a preclusive judicial determination that I and my clients did nothing wrong and can disseminate at will. You've handed my clients preclusive judicial affirmation of what they already had, the First Amendment right to disseminate, created worldwide front page news value based on what was revealed about what went on here, and intentionally interfered with their ability to settle the case by adopting the ridiculous argument that serving a complaint on someone who already had it was wrongful, as a result practically guaranteeing loss of time needed to settle and an ensuing public disaster for your client who by your own admission is the most exposed to publicity of all.

You say his safety is threatened. My clients are not endangering it. They are endangering his economics. Ask the Sapirs and iStar how happy they'll be when Trump SoHo sales are shut down, the money refunded, and the offering plan voided and they possibly face bar from further development in New York because your client was concealed from disclosure in the offering documents. I think they have $120,000,000 in the project behind iStar, which has $300,000,000. That's $420,000,000 riding on a project worth now I think $240,000,000. And I believe the Sapirs guaranteed at least some of the loan. Kramer Levin will be overjoyed, all the more since Steptoe already found their connection with FL while litigating FL's fraud on Glitnir depositors and would love to connect your client, all of which is in the Complaint (ask him about his dealings with Kramer Levin), and you better believe if this blows up I'm inviting them in through their counsel, as well as all the buyers now suing before Judge Wood, who will be delighted to know that while they don't have securities fraud, they have RICO, with far bigger value. I look forward to your client's testimony that he didn't own much of Bayrock, owned no membership interests, while he tries to explain why Akerman Senterfitt drafted a trust for his wife and children for the express, stated purpose of assigning his Bayrock membership interests to the trust, which my clients alleged he executed as part of the cover-up.

He's going to be an awfully popular fellow. Always remember, if I can't settle this in time now, you will have brought this about by your decisions, taking the tactical nuclear device I filed in SDNY and enhancing it beyond what even I could have, magnifying its yield to that of a strategic thermonuclear weapon by dragging in EDNY and that disaster. You say you did this to protect Mr. Sater? I don't get it. I really don't.

**Sign the litigation standstill and get out of the way.** You have seven days to seek further relief from Judge Glasser. If you do, if you don't standstill, if you continue to interfere with service or dissemination, if I see letters, motions, or anything else, I will instruct counsel to seek emergency relief. And I'll get it. And you'll get the inevitable, concomitant global public news and media coverage of everything everywhere.

You and Ms. Moore may meet with me any time this week. Do not mistake the tone of this letter. It is not arrogant. It is, "What were they thinking?" Listen to me. I see legal ways out for your client which are in my clients' interests to facilitate. You won't see them. You need my help. Take it. Fast. Or Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal.

Sincerely yours,

Frederick M. Oberlander
Attorney-at-Law

**A117**

# Exhibit 11

1    10-2905-cr, 11-479-cr
2    USA v Doe
3
4                  UNITED STATES COURT OF APPEALS
5                    FOR THE SECOND CIRCUIT
6
7                       **SUMMARY ORDER**
8
9        Rulings by summary order do not have precedential effect. Citation to summary orders
10   filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate
11   Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document
12   filed with this court, a party must cite either the Federal Appendix or an electronic database
13   (with the notation "summary order"). A party citing a summary order must serve a copy of it
14   on any party not represented by counsel.
15
16        At a stated term of the United States Court of Appeals for the Second Circuit, held at the
17   Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York,
18   on the _____ day of _____, two thousand and eleven.
19
20   PRESENT:
21
22       JOSE A. CABRANES,
23       ROSEMARY S. POOLER
24       DENNY CHIN,
25            *Circuit Judges.*
26
27   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
28   RICHARD ROE,
29
30            *Appellant,*
31
32              v.                    Nos. 10-2905-cr, 11-479-cr
33
34   UNITED STATES OF AMERICA,
35
36            *Appellee,*
37
38   JOHN DOE,
39
40            *Defendant-Appellee.*
41   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
42
43   **FOR RICHARD ROE:**           RICHARD E. LERNER, Wilson, Elser, Moskowitz,
44                                 Edelman & Dicker LLP, New York, NY..
45
46   **FOR APPELLEE:**             TODD KAMINSKY, Assistant United States Attorney,
47                               United States Attorney's Office for the Eastern District
48                               of New York, Brooklyn, NY.

UNITED STATES COURT OF APPEALS
FILED
FEB 1 4 2011
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

2:45 PM

1

FOR DEFENDANT-APPELLEE:     KELLY ANNE MOORE, Morgan, Lewis & Bockius LLP,
                            New York, NY.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED, following a hearing on the record on February 14, 2011, that an injunction *pendente lite*

shall enter to prevent the dissemination by an party, their officers, servants, employees and attorneys,

and all who are in active concert or participation with them, of materials placed under seal by orders of

this Court or of the United States District Court for the Eastern District of New York (I. Leo Glasser,

*Judge*) .

Richard Roe ("Roe") is an attorney at law whose identity is known to all participants in this

litigation and who has been given the name "Richard Roe" as a legal placeholder because the disclosure

of his true identity in this litigation context may, for the time being, lead to the improper disclosure of

the materials at issue here.

Roe appeals from orders of the District Court permanently enjoining distribution of a

Presentence Investigation Report ("PSR") prepared for sentencing purposes in a criminal proceeding

before Judge Glasser and temporarily enjoining Roe and his clients from further disseminating other

sealed documents filed in Doe's criminal proceedings before the District Court (Docket No. 10-2905-

cr).

We also have before us a separately docketed but consolidated petition for a writ of mandamus

directing the District Court to make public the docket of the criminal case in question (Docket No. 11-

479-cr). In turn, the United States (the "government") seeks a temporary injunction, pending the

disposition of this appeal, to restrain Roe and his counsel and clients, and all persons acting in concert

with them, from the threatened dissemination of the sealed materials at issue here by (1) filing and

pursuing civil actions in other federal or state courts in which the sealed materials are annexed to

pleadings or otherwise referred to or made public, and (2) by conveying copies of these materials or the

contents thereof to third-parties, including the media.

We assume the parties' familiarity with the remaining facts and procedural history of the case.

2

**A120**

1                                              (i)

2          We turn first to Roe's petition for a writ of mandamus. The All Writs Act empowers us to

3    "issue all writs necessary or appropriate in aid of [our] respective jurisdiction[ ] and agreeable to the

4    usages and principles of law." 28 U.S.C. § 1651(a). One such writ is the writ of mandamus, an

5    "extraordinary remedy" that has been used "both at common law and in the federal courts . . . to

6    confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction."

7    *Cheney v. U.S. Dist. Crt. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (brackets and internal quotation

8    marks omitted). We issue a writ of mandamus only in "exceptional circumstances amounting to a

9    judicial 'usurpation of power' or a 'clear abuse of discretion.'" *Id.* (citations and some internal quotation

10   marks omitted); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir.2008) ("A district court has abused its

11   discretion if it [has] based its ruling on an erroneous view of the law or on a clearly erroneous

12   assessment of the evidence or [has] rendered a decision that cannot be located within the range of

13   permissible decisions." (brackets, citations, and internal quotation marks omitted)).

14          Roe falls well short of his heavy burden to secure a writ of mandamus directed to the District

15   Court. Here, the District Court reviewed the sealed documents and the voluminous submissions by the

16   parties, conducted four days of hearings inquiring into how Roe had obtained the documents and how

17   he intended to use them, and explained in detail and on the record its well-reasoned decision to issue a

18   permanent injunction against further distribution of the PSR and a temporary injunction against further

19   distribution of the other sealed documents. Under the circumstances, we see no basis upon which to

20   conclude that the District Court in any way usurped its power or clearly abused its discretion. *See Cheney*,

21   542 U.S. at 380. Accordingly, the petition for a writ of mandamus (Docket No. 11-479-cr) is DENIED.

22          Our decision to deny the petition for a writ of mandamus may be further elaborated in due

23   course in a published opinion.

24          The docket in this proceeding (Docket No. 11-479-cr) and all documents referenced therein

25   shall remain SEALED until further order of this Court.

26

27

                                               3

(ii)

Pending a full review of the merits of Roe's appeal by a panel of this Court, the government, by a sealed motion of January 26, 2010 and accompanying affidavit, requests a _temporary stay_ of the unsealing of Docket No. 10-2905-cr and of the materials placed under seal by Judge Glasser pending the appeal of this matter. In light of the serious, indeed grave, concerns expressed by the United States regarding the possible consequences of unsealing these documents, and the absence of any sufficiently persuasive countervailing considerations expressed by Roe, the government's motion is hereby GRANTED.

Accordingly, pursuant to this order and to our orders of January 28, 2011 (granting government's motion for an emergency stay of unsealing the docket in No. 10-2905); February 9, 2011 (granting government's motion for an emergency stay of unsealing the docket in No. 11-479 and ordering Roe not to publicly file any additional documents or cases that referred to matters subject to sealing orders in Nos. 10-2905-cr and 11-479-cr); February 10, 2011 (re-emphasizing, _inter alia_, that Roe was not to reveal or distribute sealed documents, nor contents thereof, to any third-parties, including members of the public or the media); and February 11, 2011 (re-emphasizing, _inter alia_, that all previous orders of this Court and of the United States District Court for the Eastern District of New York with respect to the documents at issue remained in full force and effect until further order of this Court), we hereby ORDER that ALL PARTIES, THEIR OFFICERS, AGENTS, SERVANTS, EMPLOYEES, AND ATTORNEYS, AND ALL OTHER PERSONS WHO ARE IN ACTIVE CONCERT OR PARTICIPATION WITH THEM, _see_ Fed. R. Civ. P. 65(d)(2), are TEMPORARILY—and WITHOUT PREJUDICE to any claims or arguments that may be asserted by the parties on the merits of these appeals or on the orders in effect during the consideration of the appeals—ENJOINED from publicly distributing or revealing in any way, to any person, or in any court, proceeding or forum, except to those persons directly involved in the parties' own legal representation, any documents or contents thereof subject to sealing orders in Docket No. 10-2905-cr or in any related proceedings before the District Courts for the Eastern District of New York and Southern District of New York.

For the purpose of enforcing this Court's orders and those of the District Court for the Eastern District of New York during the panel's consideration and adjudication of the pending appeal, we

4

1    REMAND the cause (Docket No. 10-2905-cr) to the District Court for the Eastern District of New

2    York with instructions to the Chief Judge of that Court to assign a United States District Judge from

3    that Court with the limited mandate of implementing and overseeing compliance with our orders and

4    the orders previously entered by Judge Glasser. Of course, Judge Glasser, an experienced and able jurist

5    who has shown admirable patience and forbearance in the face of extraordinary provocations, shall

6    retain jurisdiction over the underlying (and long-lived) criminal proceeding involving John Doe.

7           Furthermore, in all other respects and pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir.

8    1994), this panel shall retain jurisdiction over (1) the pending appeal, both for the disposition of the

9    appeal on the merits as well as with respect to any further motions practice; (2) any other appeals from

10   the District Court's order granting the permanent and temporary injunctions at issue; and (3) any

11   appeals arising from any further proceedings in the District Court, including any further petitions for

12   extraordinary writs, including the writ of mandamus.

13

14                                              (iii)

15          Without in any way limiting the effect of this summary order and the Court's previous orders,

16   we further ORDER:

17          (1) This appeal (Docket No. 10-2905-cr) will be EXPEDITED.

18          (2) The briefing schedule will be as follows:

19                      a. Roe's opening brief shall be filed no later than Monday, February 28, 2011.

20                      b. The government's opening brief shall be filed no later than Monday, March

21                      14, 2011.

22                      c. Roe's reply brief shall be filed no later than Monday, March 21, 2011.

23                      d. The government's sur-reply brief shall be filed no later than Thursday, March

24                      24, 2011.

25

## CONCLUSION

To summarize:

(1) the petition for a writ of mandamus in Docket No. 11-479 is DENIED, and the docket of that case shall remain SEALED pending further order of our Court;

(2) the government's motion for a temporary stay of unsealing of the docket in No. 10-2905-cr pending full review of the merits of Roe's appeal is GRANTED;

(3) the parties and all who are in active concert or participation with them are TEMPORARILY ENJOINED, pursuant to the terms of the order stated above;

(4) we REMAND the cause to the United States District Court for the Eastern District of New York for a limited purpose and under the terms noted above.

The limited mandate described above shall issue forthwith.

FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court

6

**A124**

# Exhibit 12


Advertise on NYTimes.com

# By Revealing Man's Past, Lawyer Tests Court Secrecy

By BENJAMIN WEISER
Published: February 5, 2012

**In May 2010, a civil racketeering lawsuit was filed accusing a group of people associated with a New York investment firm of stealing millions of dollars from investors.**



Richard Perry/The New York Times
Frederick Oberlander, right, filed a lawsuit against a businessman called John Doe in records. At left is his lawyer, Richard Lerner.

**Connect With NYTMetro**
Follow us on Twitter and like us on Facebook for news and conversation.



The allegation was almost commonplace; the response was anything but.

The lawsuit was hurled into secretive chaos, largely because it disclosed the hidden past of one of the businessmen being sued. The man, according to documents attached to the lawsuit, had not only pleaded guilty in an organized crime case in Brooklyn, but had also become a cooperating witness for prosecutors, helping them put away dangerous criminals — something neither he nor the government had ever meant to reveal publicly.

Judges reacted quickly. In Manhattan, where the complaint was filed, a federal judge ordered the documents placed under seal. And in Federal District Court in Brooklyn, where the businessman's criminal case was already secret, Judge I. Leo Glasser held hearings to investigate how the materials had been obtained, and imposed a strict order barring further dissemination of their contents.

"Something very bad and perhaps despicable was done by the use of those documents," Judge Glasser said at a court hearing in mid-2010. Divulging their contents, he added in a

different hearing, could seriously endanger the cooperating witness and "significantly affect" matters of national security.

The dispute is considered so sensitive that courts have substituted the name John Doe for the businessman, and Richard Roe for the lawyer who filed the case, Frederick M. Oberlander.

The case has spurred a strenuous debate among the lawyers and judges involved. Some believed that Mr. Oberlander was being reckless and unethical, while others cast him as an aggressive advocate on behalf of fraud victims.

Mr. Oberlander said the information about the businessman, which he said he had received from a "classic whistleblower," was evidence that he had concealed his criminal record, violating his fiduciary obligation to investors.

Records show that a federal appeals court panel also reviewed the matter and, after receiving sealed legal briefs and holding a closed oral argument, strongly affirmed the secrecy: "Judge Glasser, who had presided over Doe's criminal case and was therefore familiar with the extent of Doe's cooperation and his assistance in obtaining the convictions of myriad violent criminals, explicitly entered a finding that releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk."

Details of the dispute between John Doe and Richard Roe were pieced together through a review of public documents, including appellate orders and a transcript of the 2010 hearings before Judge Glasser. The judge said in the proceeding that the transcript was not sealed, but he agreed to a request by the businessman's lawyer that a pseudonym be used.

Because of safety concerns raised in the case, John Doe is not being identified in this article. His lawyers declined to comment, as did prosecutors. Mr. Oberlander agreed to be interviewed, although he would not discuss sealed aspects of the case.

Mr. Oberlander, 56, said he had been preparing the lawsuit on behalf of two clients who had financial interests in the firm where John Doe worked. Mr. Oberlander testified before Judge Glasser that the firm's principals, including John Doe, had stolen millions of dollars from Mr. Oberlander's clients and millions more from others, through embezzlement and fraud. John Doe has denied the allegations.

In early 2010, Mr. Oberlander testified, a former employee of the firm provided him materials, saying that he had obtained them lawfully while working there.

The materials included John Doe's cooperation agreement with prosecutors and a document known as a presentence report, which may include personal data, like names and addresses of a defendant's family members.

Mr. Oberlander said the former employee told him, "Use this information — make it public."

The former employee has written that he obtained the materials from a computer server the businessman had asked him to copy and not a court file, and that he was unaware of any order barring him "from disseminating the documents to anyone."

But the businessman has offered a sharply different version of events. In his own lawsuit, filed under the same Doe pseudonym, he charged that the former employee, whom he characterized as a disgruntled junior analyst who had been fired, stole "private and confidential documents" that contained "highly sensitive information," placing him "at great personal risk."

Although the businessman did not describe the sensitive information, he stressed that its value was "measured not in dollars but in the amount of harm" that disclosure would cause.

Mr. Oberlander contended in interviews that the court secrecy had kept investors from learning about the businessman's criminal record, which he said should have been disclosed. The secrecy also kept any victims of the businessman's earlier criminal activity from obtaining restitution, Mr. Oberlander said.

Paul G. Cassell, a former federal judge who teaches law at the University of Utah and specializes in victims' rights, contributed to a legal brief in support of the lawyer's position.

He said the secrecy of the businessman's conviction was "a huge issue for victims," in part because it prevented them from even knowing they might have a right to restitution.

Professor Cassell said of Richard Roe: "He's challenging the power and ability of the courts to run a secret criminal docket. I think he's stumbled onto something here that raises profound issues about how crime victims and cooperators are going to be treated in our federal criminal justice system."

But the businessman charged in his suit that Mr. Oberlander had tried to extort a settlement by "threatening to go public with everything" if a deal was not reached.

The businessman contended that Mr. Oberlander had e-mailed a former counsel to the investment firm, attaching copies of the materials, and offering choices like "I file publicly today" or "I file under seal today." Mr. Oberlander denied before Judge Glasser that the e-mail was a demand for money in exchange for not filing publicly.

Judge Glasser ultimately concluded that Mr. Oberlander "knowingly and intentionally flouted" a court order by "unilaterally deciding" to disclose the information in the businessman's sealed case, according to the account given in the appellate orders.

The appeals panel, citing what it called Mr. Oberlander's "extraordinary provocations," also took the unusual step of having a second judge appointed to oversee compliance with secrecy orders in the case, and it has suggested that one of the sealed documents was of "dubious utility" to Mr. Oberlander except as a "tool to intimidate and harass Doe by subjecting him to danger."

A complicating factor in the case has been a somewhat haphazard approach to secrecy. Some years ago, for example, prosecutors issued a news release disclosing the businessman's guilty plea under his actual name. And his cooperation with the government has been cited in a news report.

"This is a case unlike any I've ever been in," said David A. Schulz, a leading First Amendment lawyer who said his firm was retained for a time by Richard Roe after the appeals panel issued its broad secrecy order.

The order effectively "barred our client from disclosing information in his possession to anyone, even in a court pleading," Mr. Schulz said. He added, "Our client believed the order raised significant First Amendment concerns, and we agreed."

Two legal ethics professors suggested that the courts' reaction to Mr. Oberlander's approach was not surprising. Stephen Gillers of New York University said Mr. Oberlander had used "Rambo tactics," and could have cited the Doe conviction without mentioning his cooperation or attaching the sealed materials.

Steven Lubet of Northwestern University said he saw "a clash of values."

"The government obviously wants to keep its cooperators safe, and other people want to be able to assert their claims in court," he said. But, he added, the courts were "very concerned about the nature of the information, and in the age of the Internet, partial disclosure is risky in ways that it was not before."

Mr. Oberlander, who said he had consulted with his own ethics expert, asserted that he was ethically obligated to use the material on behalf of his clients once it came into his possession.

In the 2010 hearings, Mr. Oberlander's lawyer, Richard E. Lerner, argued before Judge Glasser that the secrecy order on his client was an unconstitutional prior restraint. "We will fight this to the end," he said.

But the businessman's lawyer, Kelly A. Moore, dismissed the idea that free speech was at issue. She told the judge that Mr. Oberlander should have known that the documents had been part of a sealed court file.

He had no "greater First Amendment right to put a man's life in danger by publishing stolen and sealed confidential documents than if he walked into a crowded theater and shouted fire," she said.

A version of this article appeared in print on February 6, 2012, on page A16 of the New York edition with the headline: By Revealing Mafia Past, Lawyer Tests Court Secrecy.

 SAVE    E-MAIL    ⊞ SHARE

Try unlimited access to NYTimes.com for just 99¢. SEE OPTIONS »

# Exhibit 13

Case 1:13-cv-03905-LGS-FM  Document 32-13  Filed 08/20/13  Page 2 of 6
Case 1:98-cr-01101-ILG  Document 104 *SEALED*  Filed 03/23/11  Page 1 of 6 PageID #:
1355

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x

UNITED STATES OF AMERICA,                           FILED UNDER SEAL

               Plaintiff,                           SCHEDULING ORDER
                                                    98 CR 1101 (ILG)
    -against-

JOHN DOE,

               Defendant.
----------------------------------------------x

GLASSER, United States District Judge:

On February 4th, 2011, Richard Roe, by his counsel, "demanded" that the Court "immediately docket all events that have occurred in this case from its inception."

In a letter dated March 17th, 2011, the government responded.

In this letter, the government presented its analysis of the public's right of access to judicial proceedings pursuant to principles of Common law and as may be required pursuant to the First Amendment.  In a separate letter, the government briefly summarized every docket entry and stated its position as to whether the entry should remain sealed, be partially unsealed or entirely unsealed.

The Court did not respond to Richard Roe's demand when it was made and defers acting further on both submissions given a question as to its continuing jurisdiction.

On May 18th, 2010, this Court issued an Order (TRO) temporarily restraining Richard Roe and others from disseminating Sealed and Confidential materials pertaining to the above captioned case.

That TRO was extended until June 21, 2010 when, in proceedings on that day, Richard Roe was ordered to return certain sealed documents to the United States Attorney's Office.

On July 9th, 2010, Richard Roe filed a Notice of Appeal from "that aspect of the May 28, 2010 TRO (including all of the subsequent versions, extensions and renewals of this order) issued by the Honorable District Judge Israel Leo Glasser, which — by operation of law – may have converted to a preliminary injunction on or after the hearings which were held on June 11, 14, and 21, 2010." In the Notice he also appealed from the permanent injunction issued on June 21, 2010.

On August 9, 2010, Richard Roe filed another Notice of Appeal from a TRO directed to him, issued on July 20, 2010.

Following a hearing of those appeals on February 14, 2011, the Court of Appeals, in a Summary Order issued that day, Docket No. 10-2905-cr, directed in relevant part:

> Pending a full review of the merits of Roe's appeal by a panel of this Court, the government, by a sealed motion of January 26, 2010 and accompanying affidavits, requests a temporary stay of the unsealing of Docket No. 10-2905-cr and of the materials placed under seal by Judge Glasser pending the appeal of this matter. In light of the serious, indeed grave, concern expressed by the United States regarding the possible consequences of unsealing these documents, and in the absence of any sufficiently persuasive countervailing considerations expressed by Roe, the government's motion is hereby GRANTED. (emphasis mine),

It is Hornbook law that the filing of a notice of appeals confers jurisdiction on the Court of Appeals and divests the district court of its control over those aspects of the

2

case involved in the appeal. <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982).

I note at the outset that read literally, Richard Roe's demand letter of February 4th, 2011, if regarded as a motion, is not a motion to unseal anything. Rather, it is a motion that matters be docketed.

In <u>Cabell v. Markham</u>, 148 F.2d 737, 739 (2d Cir. 1945), Judge Learned Hand wrote "'It is not an adequate discharge of duty for courts to say: We see what you are driving at but you have not said it, and therefore we shall go on as before,'" quoting from <u>Johnson v. United States</u>, 163 F. 30, 32 (Holmes, J.). He then went on to write the oft-quoted words: "But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary." The teachings of those Masers leads me to regard the demand to docket as one to unseal which is what I "see that he is driving at."

My circumspect uncertainty concerning my jurisdiction to address the issue presented in the letters alluded to is based upon the following. My orders enjoining Roe to do and refrain from doing what was proscribed was a judicial response to his publication of sensitive, confidential information contained in court files, the docket of which was plainly marked "Sealed Case." All filings in that case were thereafter sealed whether or not any given documents also bore the legend "Filed Under Seal."

In addition, his unilateral determination of entitlement to disclose that information, given the context in which it was disclosed – a complaint filed by Roe in a civil action in the Southern District of New York – made it far from certain whether the disclosure was made exclusively for his own benefit rather than to vindicate a right of

3

public access.

Neither a case nor a filed document can be sealed without a court order, United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995); R&G Mortgage Corp. v. Federal Hme Loan Mortgage Corp, 584 F.3d 1, 12 (1st Cir. 2009), and it must be presumed, therefore, that such an Order existed, explicitly or implicitly. In unilaterally deciding that such an order did not exist, or, it if did exist, it was binding on court personnel only; or in any event, he had a First Amendment right to publish that which was sealed, he knowingly and intentionally flouted a Court order. It is a fundamental principle that court orders carry an initial presumption of validity and must be obeyed even if it is later shown to be erroneous. McDonald v. Head Crim. Ct. Superior Officer, 850 F.2d 121, 124 (2d Cir. 1988). If a person believes an order to be erroneous, he must establish that through established procedures and not by unilaterally deciding that it can be ignored. Manness v. Meyers, 419 U.S. 449, 458 ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person . . . believes that order is incorrect, the remedy is to appeal, but absent any stay, he must comply with the order.") The procedure that Roe was required to have followed, given any one of his assumptions, was to move the Court for an Order unsealing the document providing the reasons and the authority for granting the relief sought.

The injunctions issued by the Court were deemed compelled by Roe's ignoring of the sealing directives; the danger to the life of John Doe by publishing the sealed matter and for his possession of and threatened publication of information in a presentence report which is not a Court document In re Siler, 571 F.3d 604, 610 (6th Cir. 2009); United States v. Corbitt, 879 F.2d 224, 239 (7th Cir. 1989); United States v. McKnight,

4

Case 1:13-cv-03905-LGS-FM Document 23613 7 Filed 08/21/13 Page 6 of 6
Case 1:98-cr-01101-ILG Document 104 *SEALED* Filed 03/23/11 Page 5 of 6 PageID #:
1359

771 F.2d 388, 391 (8th Cir. 1985), and the confidentiality of which is sedulously guarded. United States v. Charmer Industries, 711 F.2d 1164 (2d Cir. 1983).

Regarding Roe's demand letter of February 4th, 2011, as a motion to unseal "all events that have occurred in this case" and the government's motion requesting a "temporary stay of the unsealing of the materials placed under seal by Judge Glasser pending the appeal of this matter," which the Court of Appeals granted, it would appear that the issues of sealing and unsealing are the "aspects of the case involved in the appeal."

It is for those reasons that the Court is uncertain of its continuing jurisdiction to address the controversy presented by the letters referenced above. Accordingly, I request the government, Richard Roe and John Doe to brief the issue of the Court's jurisdiction and submit their briefs simultaneously on April 8th, 2011.

SO ORDERED.

Dated:      Brooklyn, New York
            March 23, 2011

I. Leo Glasser

5

**A135**

# Exhibit 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- X

UNITED STATES OF AMERICA,

          Plaintiff,

      - against -

JOHN DOE,

          Defendant.

---------------------------------------------------- X

**ORDER**

98 Cr. 1101 (ILG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 13 2011 ★
BROOKLYN OFFICE

      Richard Roe is an attorney who seeks to use documents and information from this sealed criminal case against John Doe in public discourse and unrelated civil litigation. Judge Glasser, who presided in the underlying criminal case which culminated in a 2009 sentencing of John Doe, has permanently enjoined Roe from possessing, distributing, or using in any way the Presentence Investigation Report ("PSR") and other documents prepared for this case (the "sealed documents"). Roe has filed several civil cases alleging Doe's involvement in fraudulent business practices, and objects to the continued sealing of Doe's criminal case. The Government has asserted that maintenance of the sealing orders for at least part of the criminal docket is necessary to maintain the personal safety of Doe and national interests in law enforcement and security.

      On February 14, 2011, the Second Circuit issued an order addressing Richard Roe's appeal from Judge Glasser's injunction, Roe's petition for a writ of mandamus directing Judge Glasser to allow public access to the case docket, and the Government's request for a temporary injunction to restrain Roe from dissemination of any sealed materials. The Circuit denied Roe's petition and granted the Government's motion for an emergency stay in unsealing the docket and

a temporary injunction prohibiting Roe from "distributing or revealing in any way . . . any documents or contents thereof" from this case or any related sealed cases. Roe's appeal of Judge Glasser's injunction is pending.

In connection with the February 14 Order, the Circuit remanded the case to the Eastern District with instructions for the Chief Judge to assign a District Judge "with the limited mandate of implementing and overseeing compliance with our orders and the orders previously entered by Judge Glasser." By Order of February 15, 2011, then-Chief Judge Dearie referred the case to me for enforcement of this limited mandate.

In the exercise of my limited jurisdiction, I held a hearing on April 1, 2011, to address Roe's request for clarification of the Second Circuit's Order. This Memorandum Decision and Order addresses his question as to whether he may disseminate information available in public records. Roe has brought to the Court's attention several instances of publication of information contained in the sealed documents at issue, including newspaper and magazine articles describing Doe's past and particulars of the case, and a press release from the U.S. Attorney stating that Doe had pleaded guilty to RICO charges.

At the April 1 hearing, I opined that information available to the public was not covered by the Second Circuit's injunction, but emphasized that extrapolation from sealed documents would not be permitted because it could easily be combined with and thereby tainted by Roe's knowledge of non-public, sealed information. I suggested that insofar as Roe sought a more specific interpretation of the Second Circuit's orders, he might submit a chart that listed single sentence statements juxtaposed with their sources, which he has done. Doe has objected to the use each of the three proposed statements, and I evaluate them in turn.

2

The first fact upon which Roe has requested clarification is: "98-CR-1101 is . . . [the] criminal case [of John Doe's real name] and John Doe is [John Doe's real name]." The specific sources listed for this statement are that the caption for the case once included John Doe's real name rather than "Doe," a magazine article, more than a decade old, which noted that a "sealed" complaint existed, and a newspaper article, nearly five years old. Roe also cites an unsealed recent hearing associated with the case's docket number.

Roe lists no source that refers to "Doe" by his real name and includes docket number 98-CR-1011. Roe argues that because the case was once accessible on PACER under the caption that included Doe's real name along with the docket number, the information is in the public domain. The Second Circuit's Order does not permit dissemination of such material because Roe has not pointed to a source currently available to the public that contains the same information.

The remaining public sources cited in support of this statement simply do not link John Doe, by his real name, with the docket number. Instead, in making the statement, Roe adds his knowledge of the docket number to public information that a sealed case exists, which is exactly what the injunction seeks to prevent. Roe makes the frivolous argument that because Judge Glasser did not explicitly reiterate the prohibition on disclosing Doe's real name at this unsealed hearing, Doe's name may be made public. However, Doe's real name was intentionally never mentioned at the hearing. Thus, just as in the instant Order, the prohibition against revealing Doe's real name is implicit based on the sealing of the case as a whole and the use of "Doe" at that hearing. Doe's identity cannot be discerned from that hearing and the Second Circuit's Order staying an unsealing of the docket enjoins Roe from revealing such information.

3

The second statement combines the public information that Doe was convicted of RICO charges – accessible to the public in a press release published by the U.S. Attorney – with non-public information regarding the nature of the predicate acts underlying the RICO charges. It does not appear that the names and descriptions of the predicate acts are publicly available from any source other than a letter in a related case that Roe downloaded from PACER in 2010, but is now under seal and thus subject to the Second Circuit's injunction. Roe's distribution or revelation of the information contained in the letter would violate court orders.

Finally, Roe seeks to make a third statement: "On October, 23, 2009," John Doe, by his real name, "was sentenced to probation and a $25,000 fine." The Government's request to unseal certain information about Doe's sentence is currently pending before Judge Glasser. Unless and until Judge Glasser orders this information unsealed, it remains subject to the Second Circuit's injunction.

It seems obvious that Roe is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective. Roe therefore may not issue any of the three statements submitted in his April 14 letter.

**SO ORDERED.**

S/BMC

U.S.D.J.

Dated: Brooklyn, New York
May 13, 2011

4

# Exhibit 15

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA      :    98-CR-1101
 4
          -against-                     U.S. Courthouse
 5                                 :    Brooklyn, New York
     JOHN DOE,
 6
               DEFENDANT,          :
 7                                      April 1, 2011
     - - - - - - - - - - - - - - X      11:00 o'clock a.m.
 8
               TRANSCRIPT OF HEARING
 9             BEFORE THE HONORABLE BRIAN M. COGAN
               UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12   For the Government:          LORETTA LYNCH
                                  United States Attorney
13                                147 Pierrepont Street
                                  Brooklyn, New York   11201
14                                BY:  TODD KAMINSKY
                                  Assistant U.S. Attorney
15

16   For John Doe:               MICHAEL BEYS, ESQ.
                                  NADER MOBARGHA, ESQ.
17

18   For Mr. Roe:                RICHARD LERNER, ESQ.
                                  DAVID SCHULZ, ESQ.
19

20

21   Court Reporter:             SHELDON SILVERMAN
                                  Official Court Reporter
22                                225 Cadman Plaza East
                                  Brooklyn, New York 11201
23                                (718) 613-2537

24

25   Proceedings recorded by mechanical stenography. Transcript
     Produced By Computer Aided Transcription.
```

SS     OCR     CM     CRR     CSR

Case 1:13-cv-03905-LGS-FM Document 232-1517 Filed 08/21/14 Page 7 of 17
Case 1:98-cr-01101-ILG   Document 107 *SEALED*   Filed 04/08/11   Page 6 of 26 PageID #:
1372

2

1          THE CLERK:  United States versus John Doe.

2          (Appearances noted).

3          THE COURT:  Good morning.

4          THE COURT:  Who is in the back?

5          MR. KAMINSKY:   Kevin Lee, an intern in the Columbia

6   Law School, intern law program assisting with this case.

7          THE COURT:  I'll note the record of these

8   proceedings will remain sealed, although depending on what's

9   discussed, I or the circuit may choose to unseal it after.

10          I've reviewed all the papers.

11          Does anyone have anything they want to add to the

12   papers?

13          MR. BEYS:  Yes, your Honor.  There are two matters,

14   one of which the court may already have on behalf of John Doe.

15   Judge Glasser's scheduling order dated March 23rdrd, I'll pass

16   a copy to your Honor's deputy and also a case we did not cite

17   but is virtually tracking the language of Judge Glasser's

18   order.  It's In Re criminal contempt proceedings against

19   Gerald Crawford, Second Circuit 2003 case; the cite, 329 F.3d

20   131, stands for the proposition under the collateral bar

21   doctrine, a party may not challenge a district court's order

22   by violating it, which is closely related to what Judge

23   Glasser stated in his order.  I pass that to your Honor's

24   deputy as well.

25          THE COURT:  Anything else?

SS     OCR     CM     CRR     CSR

3

```
 1              MR. LERNER:   This decision was just handed up.
 2              THE COURT:   I haven't read it anymore than you
 3    have.  You dispute the fact that he cannot challenge a sealing
 4    order by violating it?
 5              MR. LERNER:   I denied the premise there is a
 6    sealing order --
 7              THE COURT:   I didn't ask you that, sir.  If there
 8    is a sealing order, do you think you can challenge it by
 9    violating it?
10              MR. LERNER:   A sealing order is binding on the
11    court staff.
12              THE COURT:   You're just not going to answer my
13    question, are you?
14              Is it your position a sealing order can be
15    challenged by the party who is enjoined from violating it to
16    violate?
17              MR. LERNER:   As stated, the answer is no.  If there
18    However --
19              THE COURT:   That's all I'm asking you.
20              MR. LERNER:   I would like to ask your Honor if
21    you've seen the government's letter of March 17th that was
22    directed to Judge Glasser which moves for the unsealing of the
23    docket.
24              THE COURT:   That's the one with the grid that
25    refers to certain documents, a chart or grid?
```

SS    OCR    CM    CRR    CSR

**A144**

Case 1:13-cv-03905-LGS-FM Document 232-1517 Filed 08/21/13 47 Page 5 of 17
Case 1:98-cr-01101-ILG Document 107 *SEALED* Filed 04/08/11 Page 8 of 26 PageID #:
1374

4

1    MR. KAMINSKY:   Yes, two letters that Mr. Roe did

2  not receive the grid that actually reveals what they are, but

3  received the overall argument in terms of what would be in the

4  grid.

5    THE COURT:   Yes, I've seen that.

6    Let me start with that.  I don't think you can do

7  that.  The circuit has entered an order.  It's on appeal.

8  Judge Glasser's decision is on appeal.  I don't think he has

9  jurisdiction to go ahead, modify now.  I'm sure if you want to

10 unseal certain documents and you have the agreement of

11 Mr. Doe's counsel and, Mr. Learner, I can't imagine why he

12 objects to any unsealing, do a consent motion to the circuit,

13 refer to me -- they may decide it themselves but the notion

14 suggested in a footnote in your letter Judge Glasser still has

15 jurisdiction to modify his orders that are on appeal, he'll

16 determine that ultimately.

17    MR. KAMINSKY:   That's fine.  It was important to

18 the government that it alert --

19    THE COURT:   Appear reasonable in saying certain

20 things don't have to be sealed?

21    MR. KAMINSKY:   Yes.

22    THE COURT:   I understand that.  You have to do it

23 the right way.

24    MR. KAMINSKY:   We appreciate that, your Honor.

25 It's certainly we take what you say to heart, also let you

SS     OCR     CM     CRR     CSR

5

1   know we did not cavalierly send the letter to whatever judge
2   was closest. We talked about it and after our understanding
3   of how the case unfolded, we did think it was appropriate,
4   although certainly after speaking with Mr. Doe's counsel, we
5   understand there are arguments against that.
6           One of the reasons we forwarded to your Honor
7   yesterday our letter to the Second Circuit was a bit more of
8   an explanation as to why we did what we did. Of course,
9   hopefully, now the Second Circuit and we would be happy if it
10  were the case, would tell us, the government to hold your
11  horses, you'll get to the unsealing when we say you do.
12          THE COURT: As I say, I suspect without knowing if
13  everyone is consenting, the circuit will allow modification of
14  its order or Judge Glasser's order. You're divested by the
15  notice of appeal if Judge Glasser's injunction and interim
16  injunction from the circuit. I don't think there's power of
17  the district court to go ahead and decide that.
18          The other point I will dispose of quickly. With
19  regard to Mr. Beys's argument, one of the things the circuit
20  intended me to do was to remedy or conduct hearings on prior
21  violations. I don't see that at all. That is not part of the
22  implementation directive I see from the circuit. That I think
23  is not going to happen as to past violations until the circuit
24  resolves the appeal. If you feel differently, you want my
25  mandate to be expanded, you could make a motion to the circuit

SS      OCR      CM      CRR      CSR

**A146**

6

1  to do that and the circuit will determine that how far it

2  thinks best.

3          Mr. Beys?

4          MR. BEYS:  Nothing, thank you.

5          THE COURT:  With regard to Mr. Lerner's

6  application, there are two problems.  Number one, still much

7  too amorphous to lead me to any other conclusion you're

8  looking advisory opinions that could be used to gradually wear

9  away at the injunctive orders in place.  No need to bother to

10 deny that.  I will tell you it is sufficiently vague that I'm

11 unable to give you the advice you're looking for.

12         Mr. Roe says he's going to commence a lawsuit.  I

13 won't know whether it violates the injunction the circuit has

14 entered until he goes ahead and commences that lawsuit.  I

15 think there's a very good chance, depending on what he puts in

16 there, that it will.

17         There are numerous, very vague references to matters

18 in the public record.  Some of the public record, you tell me

19 matters are discussed.  They're not discussed.  The press

20 release, for example that was issued in 2000, at least the

21 copy I've been given does not refer by name to Mr. Doe at all,

22 anyone.

23         MR. LERNER:  It does.

24         THE COURT:  My copy doesn't.  I'll tell you, I've

25 been through it with a fine-toothed comb.  Maybe I have a

SS     OCR     CM     CRR     CSR

7

1   redacted copy.

2          MR. LERNER:   Footnote, if you're looking at the

3   press release, JA1153, footnote number 2 on the bottom of that

4   page.

5          THE COURT:   The press release had footnotes?

6          MR. KAMINSKY:   The government can concur with that

7   fact.

8          MR. BEYS:   As does Doe, your Honor.

9          MR. LERNER:   Doe's counsel agreed in their letter

10  that Roe has the knowledge in his letter that Roe may

11  disseminate documents that are already in the public domain.

12  Therefore, we would like a declaration by this court that he

13  may do so.

14         MR. BEYS:   We would object, Judge.

15         THE COURT:   I'm not doing that.  What you can do,

16  if you want me to make a ruling, to give me specifically the

17  documents that you say are in the public domain and then we'll

18  have a hearing as to whether everyone agrees those are in the

19  public domain.

20         MR. LERNER:   Your Honor, I provided the court with

21  the joint appendix with tabbed documents that we contend are

22  already in the public domain.

23         THE COURT:   Your request was not phrased just in

24  terms of distributing those documents.  It was phrased in

25  terms of extrapolating from it, allowed that possibility.  I'm

SS      OCR      CM      CRR      CSR

Case 1:13-cv-03905-ILG-FM Document 232-1 Filed 08/21/13 Page 7 of 17
Case 1:98-cr-01101-ILG   Document 107 *SEALED*   Filed 04/08/11   Page 12 of 26 PageID
#: 1378

8

1    not going to allow you to extrapolate from that.  What you're

2    going to have to do, if you want any kind of advisory opinion

3    from me, is to get preclearance of exactly what it is you're

4    going to say.

5              What I suggest to you, you submit a chart.  The

6    chart has a left column of single-sentenced statements.  It

7    has a right column of where those statements are in the public

8    domain.  If that's the case, then I may approve that.

9              Mr. Beys, why would I not approve that?

10             MR. BEYS:   We would like the opportunity to speak

11   to the question of inadvertent disclosure.  What we said in

12   our papers, we don't think we can stop Mr. Roe from talking

13   about or disseminating what's already out there.  We could be

14   wrong.  The Second Circuit could have a different view of it

15   and, moreover, we would like the opportunity to brief the

16   issue of whether the government did it inadvertently 11 years

17   ago when it spent 13 years trying to conceal that fact.

18             THE COURT:   But if it's in the public domain, isn't

19   it already out there?

20             MR. BEYS:   Like I said, your Honor, we think that's

21   the case.  We wrote that.  We could be wrong.  But yes, it's

22   already out there, names Mr. Sater by name in one line.

23             THE COURT:   Right.  That's what I'm concerned about

24   the tone and nature of Mr. Learner's paper, that you will take

25   one small reference, combine it with other things you know

SS     OCR     CM     CRR     CSR

9

1   from documents that were not in the public domain and give

2   that public domain statement of a minor nature a whole new

3   life and that you will not be permitted to do.

4           I'll be glad to consider specific statements that

5   you wanted to make with sources and then I'll determine if you

6   can make those statements.

7           I also have to tell you, Mr. Learner, I thought your

8   papers were absurd.  It was like a comic book characterization

9   of what legal papers are supposed to look like.  When you have

10  Mr. Roe talking about engineering decompensation, I just can't

11  imagine any federal judge finding that the least bit

12  persuasive.  I'm looking for facts in here.  I've got an

13  affidavit, reads similarly to some of the pro se affidavits I

14  get.  I don't understand what you're trying to achieve.

15          Is this the way you write in all your cases?

16          MR. LERNER:  This is not an ordinary case.  We felt

17  it was warranted.

18          THE COURT:  I think it's not.  No case is ordinary.

19  Every case is entitled to particular special attention and

20  effective advocacy is effective advocacy no matter what the

21  context is.  If you want to get to me, at least, or any other

22  judge that's going to touch this case, let's do legal papers

23  the way legal papers are normally done, not like a comic book.

24          Anything further?

25          MR. BEYS:  One question.  This is what I meant to

SS      OCR      CM      CRR      CSR

**A150**

Case 1:13-cv-03905-LGS-FM Document 32-15 Filed 08/21/13 Page 14 of 17
Case 1:98-cr-01101-ILG   Document 107 *SEALED*   Filed 04/08/11   Page 14 of 26 PageID
#: 1380

10

1  ask before, your Honor.  Regarding our contempt motion, in
2  addition to writing to the Second Circuit for clarification,
3  would your Honor have a problem with us bringing an order to
4  show cause to Judge Glasser who does still retain jurisdiction
5  over the underlying case?  We believe, as we've written --

6          THE COURT:   Don't you want to wait for the circuit
7  to affirm or reject those injunctions?

8          Why do you need to do that now?

9          MR. BEYS:   For one reason, your Honor.  There is a
10 statement that he's going to file a lawsuit in state court.

11         THE COURT:   That won't be addressed.  If he does
12 that and he has to be put in jail because he does something
13 like that, that will not be addressed by your order to show
14 cause for past violations.

15         MR. BEYS:   That's true.  That is our one concern.

16         THE COURT:   As I said, I'm not advisory opinions.
17 The next thing Mr. Roe may hear from me is why he shouldn't be
18 put in the MDC for violating the Second Circuit's injunction.
19 That's all there is to it.  There's nothing more that we can
20 do at this point.

21         MR. BEYS:   Thank you.

22         THE COURT:   I will tell you, Mr. Learner, the
23 threats, they fall on deaf ears.  I have no investment in this
24 case.  If Mr. Roe doesn't violate the injunction, I don't have
25 anything to do.  If he does, I have something to do.  That's

SS      OCR     CM      CRR     CSR

Case 1:13-cv-03905-LGS-FM Document 32-15 Filed 08/21/13 Page 12 of 17
Case 1:98-cr-01101-ILG  Document 107 *SEALED*   Filed 04/08/11   Page 15 of 26 PageID
#: 1381

11

1   it.

2           Anything else?

3           MR. BEYS:   No, your Honor, thank you.

4           THE COURT:   Mr. Kaminsky?

5           MR. KAMINSKY:   Very briefly.   The Second Circuit

6   mandate does specifically entrust your Honor with enforcing

7   the district court's orders.   One such order that still has

8   not been complied with -- it is baffling -- they still

9   maintain the very orders that are subject to the injunction

10  and the TRO.   The case that was handed up to your Honor

11  earlier before by Mr. Beys, the in re contempt proceedings of

12  Gerald Crawford, specifically state that a litigant does not

13  have the ability to say "I'm going to violate the order, hold

14  on to this stuff and wait for the circuit to prove I'm right."

15  He must hand over and/or place those documents in some type of

16  transitory place and wait for the circuit to rule, but he

17  still has them, in direct contravention of the court's order

18  saying give them back, give them to the U.S. Attorney's

19  Office.   No one gave anything.

20          THE COURT:   The directive to give them back is in

21  Judge Glasser's order, not the circuit, right?

22          MR. KAMINSKY:   Right.

23          MR. LERNER:   I would like to object to that

24  statement, your Honor.   There is no order directing the

25  destruction of electronic copies or return of photocopies.

12

1  The original that was provided to Mr. Roe by Mr. Bernstein,

2  lawfully, at that, was handed up to court.  It is in the

3  court's possession.  It was stated at the hearings that the

4  original has been returned.  Therefore, there is no further

5  original to be returned and there are only electronic copies.

6          THE COURT:  Mr. Kaminsky, quote for me the portion

7  of the order upon which you are relying.  Direct me to that.

8          MR. KAMINSKY:  The Second Circuit mandate of yours

9  or Judge Glasser's order to them?

10          THE COURT:  I assume you will agree with me the

11  Second Circuit's order in and of itself does not require the

12  return of either originals or copies, right?  It incorporates

13  Judge Glasser's orders?

14          MR. KAMINSKY:  That's correct.  It says you have

15  the limited mandate of implementing and overseeing compliance

16  with our orders and the previous orders entered by Judge

17  Glasser.  That's a quote.  One of those orders, your Honor,

18  because I'm currently immersed in drafting the appeal, I have

19  two hearings singed into my head and at the end of the

20  July 20th proceeding, Mr. Doe's counsel at the time,

21  Ms. Moore, says specifically to Judge Glasser we would like

22  you to include in the TRO copies of the documents because

23  although Mr. Roe is telling you he's given them back to you,

24  what good is that if he has the copies?  The judge said I

25  agree.  Mr. Learner's response is are you issuing a further

SS      OCR      CM      CRR      CSR

13

1  TRO?  The judge says I am.

2         THE COURT:  I need to see that.  I'm sure you're

3  not misrepresenting that but I need to see it.

4         MR. LERNER:  There's no specific directive by the

5  court --

6         THE COURT:  I'll look at it and then I'll see.

7         MR. BEYS:  If the government doesn't submit it,

8  we'll gladly submit it to your Honor.

9         THE COURT:  Does anybody have it here?

10        MR. BEYS:  We don't have the transcript here.  We

11 have a joint appendix.

12        MR. KAMINSKY:  I point you to, beginning on line 4

13 of page 706 of the transcript.

14        THE COURT:  Mr. Learner, you want to respond to

15 what the transcript says?

16        MR. LERNER:  May I take my copy?

17        THE COURT:  Sure.  That's our copy but you can look

18 at ours or we can trade, whichever you prefer.

19        (Pause.)

20        MR. LERNER:  Page 706 of the joint appendix?

21        THE COURT:  Correct, line 4.

22        (Pause.)

23        MR. LERNER:  There's no specific directive by Judge

24 Glasser to destroy the electronic copies of the document and

25 there's been no dissemination of the document.  Therefore,

SS     OCR     CM     CRR     CSR

Case 1:13-cv-03905-DGS-FM Document 6 Filed 07/22/15 Filed 08/21/13 Page 16 of 17
Case 1:98-cr-01101-ILG Document 107 *SEALED* Filed 04/08/11 Page 18 of 26 PageID
#: 1384

14

1    there's been no violation of any TRO and we would request
2    further briefing before you wish to entertain this issue.
3            THE COURT:   No, it's absolutely clear on its face
4    Judge Glasser intended you to destroy electronic copies and to
5    return any photocopies.  If that is not done by the end of
6    Monday, I will hold your client in contempt.
7            MR. LERNER:   We would need to brief that.  I would
8    like the court to be aware it is actually impossible to purge
9    electronic files.
10           THE COURT:   I understand.  They can always be dug
11   up by a technician, that the most you can do is overwrite
12   them.  You can also remove from the first level of the
13   recording media those documents so that they cannot be
14   accessed by anyone but a technician.  That's fairly easy to
15   do.
16           Mr. Learner, are you playing games with me?
17           MR. LERNER:   No.
18           THE COURT:   You think I don't know how these things
19   work?
20           MR. LERNER:   No, I don't know what your Honor
21   knows.
22           THE COURT:   They're stored on files, on the
23   C drive.  You find the copies, you delete them.  I understand
24   that doesn't mean a technician couldn't unpeel the layers of
25   data written over them and find them at some point.  I'm not

SS      OCR      CM      CRR      CSR

**A155**

Case 1:18-cv-03905-LGS-FM Document 101-5 Filed 04/08/21 Page 16 of 17
Case 1:96-cr-01101-ILG Document 107 Filed 04/08/14 Page 16 of 17 PageID
#: 1385

15

1   requiring you to do that at this point but I am requiring you

2   to delete them.  Don't tell me that can't be done, sir.

3           MR. LERNER:   Your Honor, these files are backed up

4   every night on the computers.  They're on an off-site service.

5   That is the problem.

6           THE COURT:   The backups?

7           MR. LERNER:   Yes.

8           THE COURT:   Mr. Kaminsky, what's your view as to

9   backup tapes?

10          MR. KAMINSKY:   Your Honor, I'm actually trying to

11  process this.  I think, programs -- the best thing to do is to

12  possibly get an affirmation from someone that works at the

13  company that that backup will be kept in a certain place by a

14  certain proprietor, will not be able to be accessed.

15          There is the possibility the circuit will disagree

16  with Judge Glasser and then that document may need to be

17  accessed.  We just don't think they should have access to it

18  at this time.

19          THE COURT:   I think, for that reason, it's good

20  enough for now to have no accessible copies from any desktop

21  computer.  The fact that they're in backup tapes, we might

22  require a purging of those later, but we will not require it

23  now.  If they're on backup tapes, that's fine.  I don't want

24  anyone with access to the network that your client uses to be

25  able to get into that network from a desktop or laptop

SS     OCR     CM     CRR     CSR

Case 1:13-cv-03905-LGS-FM Document 20 00407/32115 1 Filed 07/03/21/13 15 age 17 of 17
Case 1:98-cr-01101-ILG   Document 107 *SEALED*   Filed 04/08/11   Page 20 of 28 PageID
#: 1386

16

1    computer and access those documents, but solely resident on

2    the backup tapes.

3              Anything else?

4              (No response.)

5              THE COURT:   Thank you all.

6              This transcript is available to both sides if they

7    wish to order it.

SS     OCR     CM     CRR     CSR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/25/2014

---------------------------------------------------------------X
                                         :

JODY KRISS, et al.,                    :

                   Plaintiffs,   :

                                   :          13 Civ. 03905 (LGS)

          -against-          :

                                   :         OPINION AND ORDER

BAYROCK GROUP LLC, et al.,     :

                    Defendants.  :

                                   :

-------------------------------------------------------- :
                                   X

LORNA G. SCHOFIELD, District Judge:

      Before the Court is Plaintiffs' motion to remand the instant action ("*Kriss II*") to state

court. For the reasons stated below, Plaintiffs' motion to remand is denied.

### I.  Background

      On December 10, 1998, Felix Sater ("Sater"), one of the defendants in *Kriss II*, pleaded

guilty to participating in a racketeering enterprise in violation of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"). Sater's plea was pursuant to a written cooperation

agreement with the United States Attorney's Office for the Eastern District of New York

("Cooperation Agreement"). The Cooperation Agreement required that Sater not reveal his

cooperation with federal authorities to anyone without the prior consent of the Government.

Judge Glasser, who accepted Sater's guilty plea, ordered that Sater's entire criminal case,

including the docket sheet, be sealed. Sater was referred to in court paperwork as "John Doe."

      For over ten years after his guilty plea, Sater worked with federal law enforcement agents

and prosecutors in both the Eastern and Southern Districts of New York, providing information

on organized crime. The Government has characterized the information provided by Sater as "of

an extraordinary depth and breadth, almost unseen." The specific information provided by Sater remains under seal.

On October 3, 2009, Sater was sentenced to probation and a $25,000 fine. Sater claims that his agreement with the Government to keep his cooperation secret also required him to keep his conviction and sentencing secret because "[a]nyone with rudimentary knowledge of the criminal justice system would know that a person who has been convicted but not sentenced until eleven years later was almost certainly a cooperating witness."

Frederick Oberlander ("Oberlander"), counsel for the plaintiffs in *Kriss II*, obtained some of the information about Sater's criminal case and cooperation with the Government by convincing Joshua Bernstein ("Bernstein"), a former employee of the Bayrock Group, of which Sater was also a former employee, to allow Oberlander access to a back-up hard drive containing information that Bernstein had saved at Sater's direction many years earlier (the "Confidential Information"). Oberlander and his co-counsel then disclosed some of the Confidential Information in a complaint they filed in another matter currently before this Court, 10-cv-03959 ("*Kriss I*"). For example, the Cooperation Agreement was attached to the complaint in *Kriss I* as an exhibit.

On May 14, 2010, Judge Buchwald, the judge then presiding over *Kriss I*, issued orders sealing the complaint and prohibiting its further dissemination. On May 18, 2010, Judge Glasser, who had originally sealed the Confidential Information, issued a temporary restraining order preventing its further dissemination. On June 21, 2010, Judge Glasser permanently enjoined dissemination of the Confidential Information, and on July 20, 2010, Judge Glasser re-affirmed his ruling, finding that dissemination of the Confidential Information would put Sater's

2

**A159**

safety at risk.  Oberlander appealed the permanent injunction to the Second Circuit Court of Appeals, which affirmed Judge Glasser's ruling.

On May 10, 2013, Plaintiffs commenced *Kriss II* by filing a Summons with Notice in the Supreme Court of the State of New York.  On June 21, 2013, Sater filed a Notice of Removal, removing *Kriss II* to the Southern District of New York pursuant to 28 U.S.C. § 1442(a)(1), commonly referred to as the "Federal Officer Removal Statute."  On July 22, 2013, Plaintiffs filed an interim Motion to Remand, and on August 2, 2013, Plaintiffs filed a final Motion to Remand.

## II. Discussion

Sater removed *Kriss II* to this Court pursuant to the Federal Officer Removal Statute, which provides:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).  The Federal Officer Removal Statute is an exception to the general rule that "an anticipated or actual federal defense generally does not qualify a case for removal"; it allows federal officers and those acting under them to remove actions to federal court "despite the nonfederal cast of the complaint" because "the federal-question element is met if the defense depends on federal law."  *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

The purpose of the Federal Officer Removal Statute has been described by the Supreme Court as giving federal officers, or persons acting under them, the "protection of a federal

3

**A160**

forum" in which to have any defenses "arising out of their duty to enforce federal law" heard. *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969); *see also Gurda Farms, Inc. v. Monroe Cnty. Legal Assistance Corp.*, 358 F. Supp. 841, 843 (S.D.N.Y. 1973) ("The purpose of [the Federal Officer Removal Statute ], whose ancestry is venerable, is to prevent federal officers or those acting at their direction from being held accountable in state courts for acts done within the scope of their federal duties.").

The Supreme Court has also held that the Federal Officer Removal Statute is to be liberally construed in favor of removal to federal court in order to enforce this stated purpose. *See Willingham*, 395 U.S. at 406-07 ("The federal officer removal statute is not narrow or limited . . . [the] policy [behind the statute] should not be frustrated by a narrow, grudging interpretation") (citation omitted) (internal quotation marks omitted)).

A private party, not employed by a government agency, may invoke the Federal Officer Removal Statute if three conditions are met: (1) he "acted under" the direction of a federal officer or agency; (2) he took the actions for which he is being sued "under color of federal office" – also known as the "causation requirement"; and (3) he has raised a "colorable federal defense." *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (citing *Jefferson Cnty.*, 527 U.S. at 431).

Regarding the first requirement, the Second Circuit has held that the "words 'acting under' are to be interpreted broadly." *Id.* at 136. While a private party "'simply *complying* with the law'" may not properly invoke the Federal Officer Removal Statute, a person who has a "'special relationship'" with the Government and who "'assist[s]'" or "'help[s] carry out'" the "'duties or tasks of the federal superior'" may do so. *Id.* at 136-37 (alterations in original) (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151-57 (2007)).

4

**A161**

Persons cooperating with and providing confidential information to federal law enforcement are an example of private parties courts have found to be acting under the direction of a federal officer or agency for the purpose of invoking the Federal Officer Removal Statute. *See*, *e.g.*, *Reiser v. Fitzmaurice*, No. 94 Civ. 7512, 1996 WL 54326, at *6-7 (S.D.N.Y. Feb. 8, 1996) (denying a motion to remand on the grounds that the Federal Officer Removal Statute applied to the defendants, who were "federal informants working as part of an FBI sting operation" with "written cooperation agreements to prove it").

Regarding the second requirement, known as the "causation requirement," the Second Circuit has held that the "hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. Parties invoking the Federal Officer Removal Statute "must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Id.* However, in determining whether the party has established a causal connection, the court "credit[s] [the removing party's] theory of the case." *Id.* This means that a removing party "does not have to prove at the outset that the acts sued upon were *actually* taken under official authority." *Reiser*, 1996 WL 54326, at *6. "Rather, that authority must simply be 'asserted' at the removal stage." *Id.*

Regarding the third requirement, the Second Circuit has held that there are "few limitations on what qualifies as a colorable federal defense." *Isaacson*, 517 F.3d at 138. A colorable federal defense is one that is "defensive," "based in federal law," and "aris[es] out of" the removing party's "official duties" or assistance therewith. *Id.* (internal quotation marks omitted).

"To be 'colorable,' the defense need not be 'clearly sustainable.'" *Id.* at 139 (quoting *Willingham*, 395 U.S. at 407). The Supreme Court reasoned that "allowing removal only when

5

**A162**

the officers had a clearly sustainable defense" would be "anomalous" with the "primary purpose" of the Federal Officer Removal Statute, which is to "have such defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407. Consequently, a defense may be colorable even if it is ultimately rejected by the court. *See Jefferson Cnty.*, 527 U.S. at 431 (holding that the defense presented was a colorable federal defense for purposes of removal even though the Court ultimately rejected the merits of the defense).

Here, removal of this case was proper under the Federal Officer Removal Statute because Sater meets all three of the requirements discussed above.

First, Sater was clearly acting under the direction of the Government. Sater was a cooperating witness, with whom the Government entered into a written Cooperation Agreement, and who worked with federal law enforcement agents and prosecutors for over ten years, providing information the Government considered extraordinary in volume. Plaintiffs concede that Sater entered into the Cooperation Agreement with the Government.

Second, Sater has met the causal requirement because he asserted in his removal notice that the act complained of, specifically the concealment of his conviction, was undertaken pursuant to the direction of the Government, which is all that is required at the removal stage.

Plaintiffs argue that the Summons with Notice does not actually state any claims, therefore is too vague to create a nexus between Sater's cooperation with the Government and the acts complained of by Plaintiffs. This argument fails. While the Summons with Notice does not list formal claims, it nevertheless contains sufficient information to demonstrate causation and support removal under the Federal Officer Removal Statute.

"A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading." *Whitaker v. American Telecasting, Inc.*,

6

**A163**

261 F.3d 196, 205-06 (2d Cir. 2001) (internal quotation marks omitted). "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support [the] removal petition." *Id.* at 206 (alteration in original) (internal quotation marks omitted).

 The Summons with Notice summarizes the instant case as follows:

> Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud *based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing*, as well as related and other unrelated relief, and declaratory relief against those persons, primarily financial institution[s], insofar as to affix by liquidating judgment thereof such liability is owed to them.

The Summons with Notice also states that the plaintiffs "were defrauded of their rights to restitution, and *because the government illegally concealed Sater's entire case*, their rights to sue him." These statements in the Summons with Notice provide adequate information for Sater to "intelligently ascertain removability" under the Federal Officer Removal Statute and reasonably assert that the acts complained of were undertaken pursuant to his cooperation with the Government.

 Third, Sater has raised a colorable federal defense of immunity. Private parties who are confidential informants working with the Government pursuant to a written cooperation agreement may invoke the federal defense of immunity. *See*, *e.g.*, *Reiser*, 1996 WL 54326, at *4 (denying a motion to remand on the grounds that the Federal Officer Removal Statute applied to the defendants, who "have raised a colorable federal defense of immunity . . . despite the fact that they are not federal officers").

 Plaintiffs argue in various ways that the federal defense asserted by Sater is not sufficient for purposes of removal because it is not meritorious. These arguments fail. As discussed above, the removing party is not required to prove the merits of its defense at the removal stage. *See Willingham*, 395 U.S. at 407 ("The officer need not win his case before he can have it

7

removed."); *see also Reiser*, 1996 WL 54326, at *4 ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made." (internal quotation marks omitted)).

Accordingly, removal of this case was proper under the Federal Officer Removal Statute, and Plaintiff's motion to remand is denied.

### III. Conclusion

For the reasons set forth above, Plaintiffs' motion to remand is DENIED. The Clerk of Court is directed to close the motions at docket numbers 21 and 25.

Plaintiffs are ordered to file their complaint in this case by March 26, 2014.

SO ORDERED.

Dated: February 24, 2014
     New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

8

**A165**

# LAW OFFICE OF FREDERICK M. OBERLANDER P.C.

**FREDERICK M. OBERLANDER**
ATTORNEY-AT-LAW

Fred55@aol.com

28 SYCAMORE LANE (PO BOX 1870)
MONTAUK, NEW YORK 11954
TELEPHONE 212.826.0357
FAX 212.202.7624

April 7, 2014

***Kriss v. Bayrock Group LLC*** 13 CV 3905 ("Kriss II")
***Kriss v. Bayrock Group LLC*** 10 CV 3959 ("Kriss  I")

Hon. Lorna G. Schofield
United States District Court, SDNY
New York, New York 10007
(by email)

**EMERGENCY *EX PARTE* REQUEST
TO STAY PROCEEDINGS PENDING
INVESTIGATION OF CRIMINAL
CONTEMPT AND OBSTRUCTION
BY WITNESS INTIMIDATION**

Dear Judge Schofield:

Undersigned counsels make ***ex parte*** request for emergency relief because of the obstructive intimidations and threats our clients and their families, partners, investors, and customers have received from defendant Sater, in concert with defendant Lauria and counsels Beys and Mobargha. The most recent was this morning, when plaintiff Ejekam was told that as a complaint was due to be filed today in 3905 if he did not remove his name from it he would be subjected to economic ruin and warned that what was happening to Kriss, *infra*, would happen to him next. Please preserve this confidential letter in the record for appeal.

There is no question this originated from Sater ***et al.*** in view of the prior similar threats and other acts of obstruction, which we outline below, and they are now escalating.

**We expressly accuse Sater *et al.* of violations of 18 U.S.C. §402 and 18 U.S.C. §1512 and relatedly 18 U.S.C. §371 and in the interest of our clients' economic and personal safety we must respectfully decline to file any further pleadings or other documents pending consideration by this court and, we hope, immediate coordinated action by the United States Attorney's Office, FBI, and Interpol (Ejekam works in Lagos) upon this court's referral. Accordingly we request formal emergency stay *sine die*.**

We remind the court that these defendants are multiply convicted felons, in Sater's case including a conviction and incarceration for assault with a deadly weapon, and members of organized crime and unless dealt with immediately and severely we have every reason to be concerned that this may escalate from economic to physical intimidation if not worse. If the court doubts that for one second we ask the court take note that three separate persons in three separate actions in three separate fora have each given sworn testimony within the last few years that Sater threatened to kill them if they ever revealed the truth of the crime at Bayrock, which Sater must expect will be revealed in the pending complaint[1], and counsel Mr. Oberlander also has received a threat on his life, which he formally reported to the FBI.

---

[1] In Arizona, case CV2007-117 (Maricopa), Bayrock partner Ernie Menes filed a verified complaint asserting that Sater threatened to have him tortured to death and dismembered if he complained that Sater was skimming from a Bayrock project. Bayrock paid him $500,000 to stay silent and agree to seal the record. In New York State Supreme Court case 09-2579 (Westchester), Joshua Bernstein testified in deposition that Sater twice threatened to kill him and his family if he ever revealed what happened at Bayrock. Bayrock paid him, too, even though they had sued him for theft of documents, in settlement negotiated before Magistrate Maas, presumably requiring him to stay secret. And in the verified complaint in 10-CV-3959, Kriss describes Sater's threat to have Ernest Montevecchi, Genovese soldier and partner with the Sater family in a 10-year extortion ring (see 00-CR-1005, EDNY) kill him if he complained that Sater and others at Bayrock had stolen some $5M or more from him.

As you may have seen in the *New York Law Journal*, the *New York Post* and elsewhere, Messrs. Beys and Mobargha, counsels for defendants Sater and Lauria, embarked on a public campaign against our client Kriss including by filing a New York State Supreme Court action accusing him of conspiring with his father, managing partner at Stroock, and Winston & Strawn partner Gerry Shargell to have members of organized crime murder Sater and Lauria in a scheme to extort $100,000,000 from the other defendants by means of the suits before you. It also accuses Kriss and his father of being members of the Russian mafiya and of secretly controlling Bayrock to launder their proceeds. **And as it quotes from the sealed complaint in 3959, *with specific attribution to it,* is that or is that not defiance of your sealing order?**

They then hired private detectives, some of them impersonating government officials, to visit Kriss's investors, partners, employees, and tenants warning them that they were under investigation, too, because of Kriss's federal suit here and that they could "expect to be next."

And they bought up domains and email id's in permutations of our client's name, for example "jodykriss.com" and "jodykrissthief.com" and used them to describe Mr. Kriss's alleged Russian mafiya ties, and hired public relations firms to blanket the Internet with copies.

Then this morning they emailed our client Ejekam at his work in Lagos, Nigeria where he runs a real estate fund and warned him explicitly that as the complaint in 3905 is due today if he did not take his name off it he would be ruined, that they would forever make his online reality that of an extortionist, and attached the Lauria complaint and a list of all the places their PR firm had republished the Kriss libels and told him see what they had done to Kriss as if he didn't listen and walk away they'd do the same thing to him, and copied everyone at his firm.

And they sent a similar email this morning to every single attorney at Stroock so they too would be warned that if the suit weren't withdrawn they would continue to savage the firm and Kriss's father as involved with Russian organized crime.

This was not an accident, it was planned long in advance, which is clear from the fact that some of the web sites they're using were bought in 2010 during hearings before Judge Glasser and from the fact that in early 2011 at a settlement conference in the presence of AUSA Todd Kaminsky Beys and Mobargha threatened that if any complaints against Sater ever moved forward they would contrive to accuse Kriss and his father of having known all along about Sater's supposedly secret conviction and receiving millions of dollars to front for him.

Besides contempt and obstruction this is of concern to the court as it isn't possible for one to be in fear for his life and not tell anyone about his conviction while at the same time claim he told the Krisses, yet that's the position they've taken by removing 3905 to this court on the ground that Sater was under orders not to reveal it so has sovereign immunity while now publicly claiming he told the Krisses. Worse, on the docket of 3959 is an affidavit of Joshua Bernstein they themselves obtained and which Bayrock introduced without their objection, which has Bernstein's sworn statement that everyone at Bayrock knew of their secret convictions and that Sater and Lauria used to brag about getting away with it. Under no theory of coherence can "federal officer" Sater be claiming on one docket – before you – he had to keep his conviction secret and impliedly did while in connection with another docket he or his counsel claim he told the Krisses and on yet another docket – also before you – they allow evidence he told everyone at Bayrock. If this is not fraud on the court, what is? Nor do we believe "federal officer" Sater has a sovereign immunity defense to his current obstruction, and we remind the court §1512 is a RICO predicate so this is due for supplemental pleading.

Their defilement of the courts is accelerating and we ask emergency *ex parte* conference and *sine die* stay or leave to withdraw without prejudice (as of right per FRCP 41) so we may request appointment of trustees or guardians *at litem* to protect the rights of the defendants and those they represent in these derivative actions without our clients having to be subject to such risks.

/s/ Frederick M. Oberlander         /s/ Richard E. Lerner
Counsel for Plaintiffs               Co-Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/8/14
```

-------------------------------------------------------------X
                  :

JODY KRISS, *et al.*,              :

               Plaintiffs,  :

                  :        13 Civ. 03905 (LGS)

        -against-       :

                  :          ORDER

BAYROCK GROUP LLC, *et al.*,   :

             Defendants. :

                  :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      WHEREAS, on April 8, 2014, the Court received an *ex parte* letter from Plaintiffs seeking emergency relief.

      It is hereby **ORDERED** that the deadline to file a complaint in this action is adjourned *sine die*, pending the Court's resolution of the issues raised in Plaintiffs' *ex parte* letter.

      It is further **ORDERED** that Plaintiffs shall immediately serve a copy of the *ex parte* letter upon Defendants. Within five days of receipt, Defendants shall file a letter response addressing the issues raised in Plaintiff's letter.

Dated: April 8, 2014
      New York, New York

                      LORNA G. SCHOFIELD
                 UNITED STATES DISTRICT JUDGE

**A168**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                        :

JODY KRISS, *et al.*,                      :

                             Plaintiffs,   :

                                            :

                  -against-             :

                                          :

BAYROCK GROUP LLC, *et al.*,           :

                         Defendants.  :

                                          :
------------------------------------------------------------ X

13 Civ. 03905 (LGS)

ORDER

LORNA G. SCHOFIELD, District Judge:

       WHEREAS, the Court has reviewed Plaintiffs' ex parte letter of April 7, 2014; Plaintiffs'

publicly filed letter of April 7, 2014 (Dkt. No. 42); Defendants' letter of April 14, 2014;

Plaintiffs' letter of April 14, 2014; and Defendants' letter of April 15, 2014.

       It is hereby **ORDERED** that the allegations raised in Plaintiffs' ex parte letter shall be

raised, if at all, with the appropriate authorities, and not with the Court.

       It is further **ORDERED** that Plaintiffs' request for a further stay *sine die* is DENIED.

       It is further **ORDERED** that Plaintiffs shall file a complaint in this action no later than

**April 23, 2014**. Should Plaintiffs fail to do so, the Court will entertain any motions to dismiss

for failure to prosecute, which Defendants may file without exchanging letters with Plaintiffs

pursuant to the Court's Individual Rule III.A.3.

       It is further **ORDERED** that the parties shall file all future written communications with

the Court via ECF. They are not to exceed two pages, and shall be double-spaced, in 12-point

font, and have one-inch margins. Any communications submitted in violation of this paragraph

will be rejected unread.

Dated: April 17, 2014
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/17/14

**A169**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                          5/8/14
------------------------------------------------------------X
                                                     :
JODY KRISS, et al.,                                  :
                                    Plaintiffs,      :
                                                     :              13 Civ. 03905 (LGS)
                         -against-                   :
                                                     :                   ORDER
BAYROCK GROUP LLC, et al.,                           :
                                    Defendants.  :
                                                     :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        At issue is Plaintiff's Amended Motion for Reconsideration of an April 17, 2014, Order.

(Dkt. No. 59).  The April 17 Order denied Plaintiffs' request to stay this action *sine die* and

conduct an investigation into Plaintiffs' allegations of criminal misconduct by Defendants.  (Dkt.

No. 49).  In the April 17 Order, the Court referred counsel to the appropriate authorities for any

investigation and ordered Plaintiffs to file a complaint in this action no later than April 23, 2014.

(Although the case was removed in June 2013, as of the April 17 Order, no complaint had yet

been filed in federal or state court).  On April 23, 2014, Plaintiffs filed the Class Action

Complaint.  (Dkt. No. 52).  On May 2, 2014, Plaintiffs filed the instant motion and Defendants

filed a letter raising certain issues with the Complaint.  (Dkt. No. 58).  On May 5, 2014, Plaintiffs

filed a letter in further support of their motion for reconsideration.  (Dkt. No. 60).  The Court

hereby denies Plaintiffs' motion for reconsideration, because they have not pointed to any

authority compelling a different result.

        "The standard for granting . . . a motion [for reconsideration] is strict, and

reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked – matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Both of the cases cited by Plaintiffs in support of their claim that the Court has a duty to investigate Defendants' alleged criminal misconduct are inapposite here. Both concern the trial court's responsibility to ensure a fair trial. *See Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003) (reversing judgment for the plaintiff because *inter alia* the court did not permit cross-examination of a trial witness about whether he had caused an adverse witness to become unavailable; and reversing denial of the defendant's Rule 60(b)(3) motion to vacate the judgment on the basis of witness tampering where the district court did not hold a hearing to determine why the witness had become unavailable); *Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) (reversing judgment for the defendant and remanding for a new trial where the defense counsel had caused both adverse expert witnesses to become unavailable).

Here, the proceedings are at a very different stage. Before the April 17 Order, no complaint had yet been filed following the removal of the case from state court in June 2013, and Plaintiffs sought an indefinite stay of their obligation to file a complaint, pending an investigation to be conducted by the Court. At the pleadings stage, the court's role and responsibility is to ensure that the case is maintained only on the basis of a complaint that is sufficiently pleaded and states proper claims against the defendants. The court's role is not to become in effect prosecutor, grand jury and law enforcement to investigate Plaintiffs' claims of criminal misconduct by Defendants. Plaintiffs have cited no authority in this Circuit or elsewhere to suggest otherwise.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Reconsideration is **DENIED**. The Clerk of the Court is directed to close the motion at Docket Nos. 53 and 59.

Plaintiffs assert that the Complaint they filed to comply with the April 17 Order is not the complaint they would have filed, but for Defendants' alleged criminal misconduct. It is **ORDERED** that no later than **May 21, 2014**, Plaintiffs shall file either: (i) an amended complaint that Plaintiffs believe is sufficient for purposes of Rules 8 and 9(b) of the Federal Rules of Civil Procedure; or (ii) a letter advising the Court of their intent to stand by their currently operative Complaint at Docket No. 51.

It is further **ORDERED** that Defendants' application for the June 10, 2014, conference to be advanced to an earlier date is **DENIED**. Counsel are directed to confer with each other prior to the conference regarding each of the matters to be considered at a Fed. R. Civ. P. 16 conference. Additionally, in accordance with the Court's Individual Rules, the parties are hereby **ORDERED** to file via ECF a Joint Proposed Civil Case Management Plan and Scheduling Order in PDF format no later than **June 3, 2014**, using the form available at the Court's website (http://nysd.uscourts.gov/judge/Schofield).

The Court declines Plaintiffs' suggestion that it *sua sponte* recuse itself.

Dated: May 8, 2014
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                            :

JODY KRISS, et al.,                      :

                        Plaintiffs,   :

                                          :

                  -against-        :

                                          :

BAYROCK GROUP LLC, et al.,     :

                       Defendants.  :

                                          :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/16/15

13 Civ. 03905 (LGS)

ORDER

LORNA G. SCHOFIELD, District Judge:

      WHEREAS, by Order dated June 23, 2015, Plaintiffs Jody Kriss and Michael Ejekam voluntarily dismissed this action ("*Kriss II*") without prejudice and were terminated as parties;

      WHEREAS, by Order dated July 13, 2015, the remaining plaintiffs voluntarily dismissed their claims against all defendants without prejudice, and the case was terminated;

      WHEREAS, on October 9, 2015, pursuant to Federal Rules of Civil Procedure 60(b) and 41(b), Defendant Sater moved to vacate Plaintiffs' notices of voluntary dismissal without prejudice and to dismiss the action with prejudice;

      WHEREAS, the parties subsequently filed papers in support of and in opposition to the motion, including a request by Plaintiff for leave to seek Rule 11 sanctions against Defendant Sater;

      WHEREAS, on November 9, 2015, in the related case 10-cv-3959, *Kriss et al. v. BayRock Group LLC et al.* ("*Kriss I*"), the Court ordered the filing of the Second Amended Complaint; it is hereby

      **ORDERED** that *Kriss II* is dismissed with prejudice, but without prejudice to the continued litigation of *Kriss I*.  It is further

**A173**

**ORDERED** that Plaintiffs' request for leave to seek Rule 11 sanctions is DENIED without prejudice to renewal at the conclusion of *Kriss I*.

The Clerk of Court is directed to close the motion at Dkt. No. 129.

Dated: November 16, 2015
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**A174**